# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STATE OF WASHINGTON; STATE OF OREGON; STATE OF MINNESOTA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; DISTRICT OF COLUMBIA; STATE OF HAWAI'I; STATE OF ILLINOIS; STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF NEW JERSEY; STATE OF NEW YORK; STATE OF RHODE ISLAND; STATE OF WISCONSIN,<br><br>  *Plaintiffs*,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; ROBERT F. KENNEDY, JR., in his official capacity as Secretary of U.S. Department of Health and Human Services; UNITED STATES HEALTH AND HUMAN SERVICES ADMINISTRATION FOR CHILDREN AND FAMILIES; and ANDREW GRADISON, in his official capacity as Acting Assistant Secretary of U.S. Health and Human Services Administration for Children and Families,<br><br>  *Defendants*. | Case No. 6:25-cv-01748-AA<br><br>**DECLARATION OF LAURIE DILS** |

## DECLARATION OF LAURIE DILS

I, Laurie Dils, pursuant to 28 U.S.C. § 1746 declare as follows:

1. I am a resident of Washington State. I am over the age of 18, competent to testify as to the matters herein, and make this declaration based on my personal knowledge, and the records of the Washington State Office of the Superintendent of Public Instruction (OSPI) to which I have access.

2. I am the Associate Director for Content, Health & Sexual Health, in the Washington State Office of the Superintendent of Public Instruction (OSPI). I have held my position for 13 years. Previously, I worked in the non-profit sector. I have a Masters in Social Work from the University of Washington.

3. I submit this declaration in connection with Plaintiff States' Motion for Preliminary Injunction and Complaint for Injunctive and Declaratory Relief pertaining to the August 6, 2025 Notice of Award (NOA) from the United States Department of Health and Human Services (HHS) Administration for Children and Families (ACF) regarding state Personal Responsibility Education Program (PREP) grants; the August 7, 2025 PREP Supplemental Terms and Conditions (Supplemental T&Cs), and the August 26, 2025 directive letter from ACF to grantees (the PREP Directive).

**History and Role of PREP Grant Funding in Washington State**

4. I was hired in 2012 as a half-time PREP coordinator for OSPI. My office had a different relationship with the PREP grant at that time. My predecessor at OSPI co-wrote the application to the federal government for PREP funding for Washington State. My role on hiring was to recruit schools to participate in the PREP program. OSPI had a receivables contract with DOH, which ended in 2019.

5. Today, I perform some informal recruiting of schools to participate, sometimes referring school districts to the PREP Program, or to DOH's contractor, Cardea. I perform "temperature checks" concerning sex education around Washington State, to identify school districts that are having trouble meeting state law requirements, based on my interactions with schools. However, I do not co-coordinate the PREP Program in Washington now, as I did in the past.

6. Beginning in 2012, OSPI subcontracted with DOH and acted as a liaison to recruit schools to participate in PREP. Washington State has nine Educational Service Districts (ESD) that provide services to schools regionally. OSPI recruited local school district partners through ESD to get the word out about the PREP Program. Our office worked with school nurses, counselors, and teachers. We also placed notices in official agency communications that PREP funding was available to support sexual health and personal responsibility education. I personally performed site visits to several local partner schools. I also recruited PREP Program participants through institutional education programs, for example county-level juvenile justice programs that educate youth. I then fed the resulting contacts to Cardea, which engaged partners and did the bulk of the work to get sites up and running, ready to deliver sexual health and personal responsibility education to students.

7. State statute mandates that OSPI must review sexual health instructional materials to make sure the instructional materials used by schools are consistent with state requirements. At the time (2012), there was a restricted list of curricula states could choose from for use in the PREP program. It was a lengthy list, but states were required to choose from that list. Today there is no such list, but states and their local partners must identify and use curricula that comply with PREP Program requirements. In Washington, these must also comply with state law and state learning

standards. Currently there are five curricula approved by the PREP program for use in Washington that comply with applicable requirements. If for some reason new materials were being considered today, OSPI would be required to perform the same state compliance review.

8. I understand that today, the only materials developed by Cardea are the training materials provided to local partners. These materials may be general, or specific to curriculum. For example, if a school district partner is struggling with instruction on gender identity or affirmative consent, Cardea may develop training on that topic. In other instances, Cardea provides training materials from publishers. Otherwise, the instructional materials come from the publishers, which operate nationwide.

9. Historically, Washington State has had a positive partnership with the federal government in administering the PREP Program, because the program provided support to implement sexual health and personal responsibility education consistent with Washington law, in particular the requirement that public schools provide comprehensive sexual education that is medically accurate, inclusive of all students, age-appropriate, and consistent with state learning standards (Wash. State Rev. § 28A.300.475). This requirement was passed by the Washington legislature and state voters in 2020, and has been in effect since December 3, 2020.

**Communications from Federal Government**

10. I understand that on or about April 14, 2025, DOH received via email a letter from ACF's Family and Youth Services Bureau (FYSB)'s Division of Positive Youth Development indicating that ACF was performing a "medical accuracy review" and requesting submission of "any current curricula and programmatic materials" related to state PREP grants. FYSB stated that the "purpose for the medical accuracy review of program materials is to ensure the information being shared with program participants is medically accurate and complete."

11. I understand that on August 6, 2025, DOH received a Notice of Award (NOA) describing the financial information associated with Washington State's PREP grant award funds. The NOA states, "[t]he use of Federal funds from this award constitutes the grantee's acceptance of the listed terms and conditions." In the Remarks section, the NOA states, "Recipients are prohibited from including gender ideology in any program or service that is funded with this award." The Terms and Conditions section states, in part, "[t]he statutory authority for the PREP Program under which this grant has been awarded, at 42 U.S.C. § 713, does not authorize teaching students that gender identity is distinct from biological sex or boys can identify as girls and vice versa, or that there is a vast spectrum of genders that are disconnected from one's sex. Therefore, gender ideology is outside of the scope of the statutory authority for this award. In addition, any costs associated with gender ideology are not allowable expenditures of federal grant funds or maintenance-of-effort funds for this grant because they are not necessary, reasonable, or allocable for the performance of this award. See 45 C.F.R. §§ 75.403-405."

12. I understand that on August 7, 2025, ACF published Supplemental T&Cs applicable to PREP awards and award modifications that add funding. The Supplemental T&Cs prohibit grant recipients from including so-called "gender ideology" in PREP-funded programs and services. Per ACF's notice, these Supplemental T&Cs are effective immediately.

13. Per the August 6, 2025 NOA and the Supplemental T&Cs, the "gender ideology" terms and conditions of the NOA and Supplemental T&Cs are not accepted until the grantee uses federal funds to which the terms and conditions apply.

14. I understand that on August 26, 2025, DOH received via email another letter from ACF (the PREP Directive) stating that Washington State's "current PREP curricula and program materials are out of compliance with the PREP statute and HHS regulations and must be modified"

because Washington State's curriculum and materials include "gender ideology." The identified content, ACF claims, is "outside of the scope of PREP's authorizing statute…and all references to it must be removed from [the] PREP curricula and program materials." ACF further instructs Washington State "**to remove all content concerning gender ideology from its curricula, program materials and any other aspects of its program delivery within 60 days of receipt of this letter.**" ACF asserts that it may take "additional enforcement action," and lists as possibilities "allowing HHS to withhold, disallow, suspend, or terminate Federal awards."

**Harms to Washington State**

15. Washington State is currently and will continue to experience harm as a result of the NOA, the Supplemental T&Cs, and the PREP Directive. The NOA, Supplemental T&Cs, and PREP Directive have created immense confusion for the state and its local partners. The state and its local partners' ability to plan for the future is severely negatively impacted.

16. Washington State previously submitted five packages of PREP Program curricula and related materials to the U.S. Department of Health and Human Services, and explained how these materials aligned with national and state sexual health education standards. Respectively, these curricula are titled "FLASH," "Rights Respect Responsibility," "Puberty the Wonder Years," "Un/Hush," and "Positive Prevention Plus." In a local control state such as Washington State, every school district has the right to select which title to use. Accordingly, schools have had the option of using any of these sexual health and personal responsibility curricula, as until now they have complied with both state and federal requirements.

17. To qualify for PREP funding, Washington State has been required to guarantee that schools teach with fidelity. In other words, partner schools need to deliver the instructional materials as they are presented by the publishers, if those materials are what was approved under

the PREP Program. Educators may choose to select only certain lessons, however they are not permitted to change the content.

18. These sexual health and personal responsibility titles discussed above are copyrighted by their respective publishers. Neither OSPI nor DOH has any control over their contents. Since we cannot control the publishers, we cannot know whether they will revise their content to comply with new federal demands. This leaves Washington State and its local partners in an uncertain place, just as the school year has begun. It is possible we will be left with no viable options in terms of sexual health and personal responsibility instructional materials.

19. Without using the curricula that were previously approved, or similar curricula, local school districts cannot cover some topics required by Washington law related to students' gender identity. That puts the state and its partners in a bind, because if instructional materials can no longer be inclusive of all students, school districts cannot use the materials to meet state requirements. This puts a severe burden on schools. It makes it less feasible for districts to use PREP Program material and meet applicable requirements. School district will have to jump through more hoops.

20. A major focus of the PREP Program has been preventing teen pregnancy. Washington State has focused its PREP program on populations that the federal government expected and required us to reach through the PREP Program, for example pregnant teens, rural youth, areas with significant minority populations, youth in foster care, and young people with other risk factors. Throughout years of implementing PREP grant funds, the state's goal has been to ensure that underserved communities were being served and that students at highest risk of unintended pregnancy received sexual health and personal responsibility instruction.

21.     If Washington State's local partners had to amend sexual health and personal responsibility curriculum, this would cause severe harm to local partners. In my opinion, there is essentially no way that the ACF demand could be met and allow the state's local partners to meet all applicable state and federal requirements.

22.     OSPI does not know whether publishers would modify their copyrighted curricula. However, supposing that a publisher removed portions of its curriculum, at that point OSPI would be required by law to review the curriculum in light of Washington State's law and K-12 learning standards. Curricula that did not include medically accurate lessons acknowledging diversity of gender identities would not comply with state law or learning standards. The outcome would be that a school district could not teach comprehensive sexual health lessons using that publisher's curriculum. Through that failure, the school district would violate state law.

23.     For OSPI, and for my role personally, the effect would be to reduce the technical assistance, professional development and support for comprehensive sexual health education in Washington schools. Our state has been able to provide significantly more support to schools statewide because of our partnership with DOH, Cardea, and the PREP program. While OSPI has been able to provide professional development, technical assistance and general support for the delivery of comprehensive sexual health education, with only one designated staff position, we have not been able to provide the level of personalized and targeted support that the PREP program has. PREP has supported school districts to ensure that their sexual health instruction meets both the requirements of state statutes as well as the needs of local communities.

24.     I cannot identify a way in which Washington State could effectively respond to the PREP Directive. For school districts, any effort to give effect to the PREP Directive would create

confusion and administrative burden at the beginning of the school year, when districts need it least.

25. If PREP funding is pulled from Washington State, local school district partners would still have access to curricula for the current school year, but would be deprived of training and technical support from DOH contractor Cardea. The impact of a disruption in funds and services would be devastating. OSPI has a separate, more general Cardea contract for (non-PREP) professional development, to help school districts implement state law more generally. However, these contracts cannot accommodate the services lost through withdrawn PREP Program funds. With Washington State's current state budget shortfall, the state would either be unable to replace the lost federal funding, or would be severely burdened by moving funds from another valuable program to replace the lost PREP funds.

26. Given everything I know about the delivery of sexual health and personal responsibility education by local school districts, and districts' need for ongoing professional development and other support, I can confidently state that if PREP funding were to be withdrawn or if Washington was forced to amend its curriculum in line with the PREP Directive, DOH and its partners will not be as effective in administering and providing age-appropriate and medically accurate education to youth who are at particular risk of becoming pregnant or contracting HIV and other STIs. As a result, youth in Washington State, especially high-risk youth, will suffer.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on September 23, 2025, at Olympia, Washington.

_____
LAURIE DILS
Associate Director for Content, Health & Sexual Health
Washington State Office of the Superintendent of Public Instruction