NICHOLAS W. BROWN
Attorney General for the State of Washington
Kelly Paradis
William McGinty
Deputy Solicitors General
Lucy Wolf
Molly Powell
Alexia Diorio
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744
kelly.paradis@atg.wa.gov
william.mcginty@atg.wa.gov
lucy.wolf@atg.wa.gov
molly.powell@atg.wa.gov
alexia.diorio@atg.wa.gov
*Counsel for Plaintiff State of Washington*

[Additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STATE OF WASHINGTON, et al., | No. 6:25-cv-01748-AA |
| Plaintiffs, | PLAINTIFF STATES' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., | |
| Defendants. | |

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................ 1

II.  FACTS ...................................................................................................................... 2

   A.   Congress Created and Funded PREP and SRAE to Reduce Teen Pregnancy and STIs and to Prepare Youth for Adulthood .................................................................. 2

   B.   Plaintiff States Have Successfully Implemented PREP and SRAE For Many Years ......... 4

   C.   Plaintiff States Are Home to Many Transgender, Gender Diverse, and DSD Youth, and Strive to Ensure that Education Includes Those Students .................................. 5

   D.   HHS Abruptly Reversed its Position and Now Seeks to Prohibit PREP and SRAE Grant Recipients from Including "Gender Ideology" in State Curricula ...................................... 7

   E.   This Court Enjoined the Gender Conditions After Recognizing They are Unlawful, Unconstitutional, and Will Inflict Irreparable Harms ....................................... 10

III.  ARGUMENT .......................................................................................................... 10

   A.   The Gender Conditions Are Contrary to Law ............................................... 10

      1.   The conditions are incompatible with Congress's intent to reduce teen pregnancy and STIs and to prepare youth for adulthood ...................................... 11

      2.   The conditions conflict with the enabling statutes' requirement that grant programming be "culturally appropriate" ............................................ 15

      3.   The conditions conflict with the enabling statutes' requirement that grant programming be "medically accurate and complete" .......................................... 17

   B.   Defendants' Actions Are Arbitrary and Capricious ........................................ 18

      1.   Defendants failed to engage in reasoned decisionmaking ............................. 19

      2.   Defendants' abrupt change in policy was not reasonably explained and failed to consider significant reliance interests ........................................ 22

      3.   Defendants' actions discriminate on the basis of sex .................................. 26

      4.   Defendants' actions are pretextual ......................................................... 27

   C.   Defendants' Actions Are Contrary to Constitutional Right ............................. 29

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

D.  The Gender Conditions Violate the Spending Clause........................................................ 29

    1.  The conditions are impermissibly retroactive.................................................. 30

    2.  The conditions are impermissibly vague and ambiguous ............................. 31

    3.  The conditions fail the Spending Clause's "relatedness" requirement ........................ 33

E.  The Gender Conditions Violate the Separation of Powers Doctrine ............................... 35

IV.  CONCLUSION......................................................................................................... 36

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

# TABLE OF AUTHORITIES

## Cases

*Al Otro Lado v. Exec. Off. for Immigr. Rev.*,
 138 F.4th 1102 (9th Cir. 2025) ................................................................ 29

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*,
 548 U.S. 291 (2006) ................................................................ 30, 31

*Bennett v. Kentucky of Educ.*,
 470 U.S. 656 (1985) ................................................................ 33

*City & County of San Francisco v. Trump*,
 897 F.3d 1225 (2018) ................................................................ 35

*City of Arlington v. FCC*,
 569 U.S. 290 (2013) ................................................................ 11

*City of Chicago v. Barr*,
 961 F.3d 882 (7th Cir. 2020) ................................................................ 35

*Clinton v. City of New York*,
 524 U.S. 417 (1998) ................................................................ 35

*Cnty. of Amador v. Dep't of the Interior*,
 872 F.3d 1012 (9th Cir. 2017) ................................................................ 22

*Cowpasture River Pres. Ass'n v. Forest Serv.*,
 911 F.3d 150 (4th Cir. 2018) ................................................................ 27

*Ctr. for Biological Diversity v. Fish & Wildlife Serv.*,
 67 F.4th 1027 (9th Cir. 2023) ................................................................ 20

*Dep't of Com. v. New York*,
 588 U.S. 752 (2019) ................................................................ 27

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
 591 U.S. 1 (2020) ................................................................ 19, 22

*Drs. for Am. v. Off. Of Pers. Mgmt.*,
 No. 25-322 (JDB), 2025 WL 1836009 (D.D.C. July 3, 2025) ................................................................ 11

*Encino Motorcars, LLC v. Navarro*,
 579 U.S. 211 (2016) ................................................................ 22

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

iii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

*FCC v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009) ................................................................... 19

*FCC v. Prometheus Radio Project*,
   592 U.S. 414 (2021) ................................................................... 19

*FDA v. Wages & White Lion Invs.*,
   145 S. Ct. 898 (2025) ................................................................ 22

*Jacobellis v. Ohio*,
   378 U.S. 184 (1964) ................................................................... 31

*Kalispel Tribe of Indians v. Dep't of Interior*,
   999 F.3d 683 (9th Cir. 2021) .................................................... 18

*Kaweah Delta Health Care Dist. v. Becerra*,
   123 F.4th 939 (9th Cir. 2024) .................................................. 10

*King County v. Turner*,
   785 F. Supp. 3d 863 (W.D. Wash. June 3, 2025) ................... 36

*La. Pub. Serv. Comm'n v. FCC*,
   476 U.S. 355 (1986) ................................................................... 11

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
   591 U.S. 657 (2020) ................................................................... 20

*M.S.L. v. Bostock*,
   No. 6:25-cv-01204-AA, 2025 WL 2430267 (D. Or. Aug. 21, 2025) ... 26

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 43 (1983) .............................................................. 19, 20

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
   567 U.S. 519 (2012) ...................................................... 29, 30, 31

*Or. Council for Humanities v. United States DOGE Serv.*,
   794 F.Supp.3d 840 (D. Or. 2025) ............................................ 25

*Or. Nat. Res. Council v. Thomas*,
   92 F.3d 792 (9th Cir. 1996) ...................................................... 20

*Pennhurst State Sch. & Hosp. v. Halderman*,
   451 U.S. 1 (1981) ............................................... 29, 30, 31, 32, 33

*PFLAG, Inc. v. Trump*,
   769 F. Supp. 3d 405 (D. Md. 2025) ........................................ 36

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

iv

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*Planned Parenthood of Greater Wash. & N. Idaho v. Dep't of Health & Hum. Servs.*,
   946 F.3d 1100 (9th Cir. 2020) .................................................................................... 15

*R.I. Coalition Against Domestic Violence v. Kennedy*,
   No. 25-cv-342-MRD-PAS, 2025 WL 2988705 (Oct. 23, 2025) ....................................... 25, 32

*Saget v. Trump*,
   375 F.Supp.3d 280 (E.D.N.Y. 2019) ............................................................................ 27

*South Dakota v. Dole*,
   483 U.S. 203 (1987)...................................................................................................... 30, 33

*Thompson v. Dep't of Labor*,
   885 F.2d 551 (9th Cir. 1989) ........................................................................................ 8

*United States v. Chem. Found.*,
   272 U.S. 1 (1926)......................................................................................................... 27

*United States v. Skrmetti*,
   145 S. Ct. 1816 (2025).................................................................................................. 18

*Util. Air Reg. Grp. v. EPA*,
   573 U.S. 302 (2014)...................................................................................................... 35

*Washington v. Dep't. of Health & Human Servs.*,
   No. 25-8077 (9th Cir. Jan. 23, 2026) ............................................................................ 10

*Washington v. Trump*,
   768 F. Supp. 3d 1239 (W.D. Wash. 2025)..................................................................... 35

*Youngstown Sheet & Tube Co. v. Sawyer*,
   343 U.S. 579 (1952)...................................................................................................... 35

## Constitutional Provisions

N.Y. Const. art. I, § 11............................................................................................................ 6

U.S. Const. art. I, § 1.............................................................................................................. 35

U.S. Const. art. I, § 8, cl. 1..................................................................................................... 35

## Statutes

42 U.S.C. § 300z..................................................................................................................... 3

42 U.S.C. § 710..................................................................... 2, 3, 4, 8, 11, 12, 13, 15, 16, 17, 26

42 U.S.C. § 713..................................................................... 1, 3, 4, 8, 11, 13, 15, 16, 17, 26

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

v

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

45 C.F.R. § 75.300 ................................................................................................ 26

5 U.S.C. § 706 ................................................................................................. 10, 18

775 Ill. Comp. Stat. 5/1-103(O-1) ........................................................................ 6

775 Ill. Comp. Stat. 5/1-103(Q) ............................................................................ 6

Colo. Rev. Stat. § 22-1-128 ................................................................................... 6

Colo. Rev. Stat. § 24-34-601 ................................................................................. 6

Haw. Rev. Stat. § 368D ......................................................................................... 6

Mass. Gen. Laws ch. 151B, § 4 ............................................................................. 6

Mass. Gen. Laws ch. 272, § 92A .......................................................................... 6

Mass. Gen. Laws ch. 272, § 98 ............................................................................. 6

Me. Stat. tit. 5 § 4602 ............................................................................................ 6

Mich. Comp. Laws § 37.2302(a) ........................................................................... 6

Minn. Stat. § 24-34-601 ........................................................................................ 6

Minn. Stat. § 363A.13 ........................................................................................... 6

N.J. Stat. Ann. §§ 10:5-12(f) ................................................................................. 6

N.Y. Civ. Rights Law § 40 .................................................................................... 6

N.Y. Civ. Rights Law § 40-c ................................................................................. 6

N.Y. Comp. Codes R. & Regs. tit. 8, § 100.2(l)(2) .............................................. 6

N.Y. Comp. Codes R. & Regs. tit. 9, § 466.13 .................................................... 6

N.Y. Educ. Law § 11-12 ........................................................................................ 6

N.Y. Educ. Law § 3201-a ...................................................................................... 6

N.Y. Educ. Law § 801-a ........................................................................................ 6

N.Y. Exec. Law § 291 ............................................................................................ 6

N.Y. Exec. Law § 292 ............................................................................................ 6

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

vi

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

N.Y. Exec. Law § 296 ........................................................................................ 6

N.Y. Exec. Law § 300 ........................................................................................ 6

Or. Admin. R 581-022-2050 ............................................................................... 6

Or. Rev. Stat. § 336.455 ..................................................................................... 6

Wash. Rev. Code § 28A.300.475 ....................................................................... 6

Wash. Rev. Code § 49.60.030 ............................................................................ 6

Wash. Rev. Code § 49.60.040 ............................................................................ 6

## Other Authorities

DelGrosso, Schulte, and Zief, *Supporting Statewide Implementation of Evidence-Based Teen Pregnancy Prevention Programs: Findings from Four PREP Grantees*, OPRE Report No. 2016-87, (Nov. 2016) ........................................................................ 3

Exec. Order No. 14,168; 90 Fed. Reg. 8615 (Jan. 20, 2025) ............................. 7

Jody L. Herman & Andrew R. Flores, UCLA School of Law Williams Institute, *How Many Adults and Youth Identify as Transgender in the United States?* ............................... 5

Laura Kann et al, *Youth Risk Behavior Surveillance – United States, 2017*, 67 Morbidity and Mortality Weekly Report 1 (June 15, 2018) ........................................... 12

Maureen Rabbitte, *Sex Education in School, are Gender and Sexual Minority Youth Included? A Decade in Review*, Am. J. Sexual Educ. 15(4), 530-42 (Oct 13, 2020) ............................................................................. 6, 9, 12, 24

N.Y. State Dep't of Educ., *A Guidance Document for Achieving the New York State Standards in Health Education* (2005) ......................................................... 6

New York State Dep't. of Educ., *NYSED Assessment Process for Review of Local Education Agencies (LEAs) Condom Availability Plan (CAP) and Approval of the Plan for Training For School Personnel and/or Health Service Personnel Providing Personal Health Guidance to Students* (2017) ................................................................ 6

Patient Protection and Affordable Care Act, 124 Stat. 347-352, Pub. L. No. 111-148 § 2953 ...... 3

Personal Responsibility and Work Opportunity Reconciliation Act of 1996, 110 Stat. 2353-2354, Pub. L. No. 104-193 § 912 ....................................................... 3

Press Release, U.S. Dep't of Health & Hum. Servs., HHS Defunds California's Attempt to Indoctrinate Children with Gender Ideology, (Aug. 21, 2025) ............................... 28

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

vii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

Responsible Fatherhood and Healthy Families Act of 2006, S. 3607, 109th Congress ......... 26, 27

Sandra Anti Eyiah & Adrienne Duke-Marks, *Evaluating Associations of the Personal Responsibility and Education Program (PREP) with Adolescents' Sexual Health and Relationship Advocacy*, 20 Am. J. Sexuality Educ. 1 (2025) ...................................................... 4

The Trevor Project, 2023 U.S. National Survey on the Mental Health of LGBTQ Young People ............................................................................................................................... 6

Theresa Neelan et al., *The Sexual Risk Avoidance Education National Evaluation: Understanding Program Implementation Experiences*, OPRE Report 2023-307 (Dec. 2023) ......................................................................................................................... 5

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

viii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

## I.    INTRODUCTION

For decades, Plaintiff States have successfully administered two sexual health education programs created and funded by Congress—the Personal Responsibility Education Program (PREP) and the Sexual Risk Avoidance Education program (SRAE). Plaintiff States' programs include content recognizing the existence of transgender and gender diverse youth and the factors that put them at a heightened risk of unsafe sexual behavior and adverse health outcomes. Inclusion of this content is not only consistent with the enabling statutes' purpose and language, but it is in line with Plaintiff States' own antidiscrimination laws, widespread medical consensus, and prior federal government mandates *requiring* that grantees provide programing to, and be inclusive of, LGBTQ+ youth.

Ignoring all of that, the Department of Health and Human Services (HHS) abruptly reversed course and ordered Plaintiff States to remove all "gender ideology" from their programs or have their PREP and SRAE funding totally cut off. HHS makes no attempt to define "gender ideology" and instead wields it as a catch-all to impose a sweeping, discriminatory policy that mandates complete erasure of youth who are transgender, gender diverse, or have differences in sexual development (DSD). These "Gender Conditions" are egregiously broad, even demanding that States remove content instructing facilitators to create respectful educational environments. And they have devastating consequences for youth by denying them essential health information critical to accurately assessing sexual risks and making informed decisions.

The Gender Conditions violate federal law and the Constitution. They directly subvert Congress's intent to reduce teen pregnancy and sexually transmitted infections (STIs) and fly in the face of clear statutory requirements that these programs include content that is "culturally appropriate" as well as "medically accurate and complete." *See* 42 U.S.C. §§ 713(b)(2)(B)(ii), (vi);

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

*id.* § 710(b)(2)(E). HHS did not engage in reasoned decision-making, offer a reasonable explanation, or consider the States' serious reliance interests when it imposed a blanket prohibition on all "gender ideology" in PREP and SRAE programs. In fact, HHS *concedes* that it did not consider PREP and SRAE's program content requirements at all and thus acknowledges that the curricula at issue might, in fact, be culturally appropriate as well as medically accurate and complete.

This court should deny Defendants' motion for summary judgment and grant the relief requested by Plaintiff States in their concurrently filed cross-motion for summary judgment, which is expressly incorporated here. Defendants' actions are both contrary to law and arbitrary and capricious, so the Gender Conditions must be set aside under the Administrative Procedure Act (APA). Moreover, the Gender Conditions are unconstitutional under the Spending Clause because they are impermissibly retroactive, impermissibly vague and ambiguous, and are wholly untethered to the purpose of the statutes. Additionally, HHS's decision to unilaterally impose them without Congressional approval violates the separation of powers.

The Trump Administration's attempt to target and harm transgender, gender diverse, and DSD youth by insisting that Plaintiff States remove inclusive gender identity curricula cannot stand.

## II.     FACTS

### A.     Congress Created and Funded PREP and SRAE to Reduce Teen Pregnancy and STIs and to Prepare Youth for Adulthood

Teen pregnancy and STIs are major public health issues. While the teen birth rate has declined over time, teen birth rates remain higher in the United States than other high-income countries. ECF 7-1 at 2-4, 10-11. Babies born to teenagers are more likely to have lower birth

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

weights, increased infant mortality risk, and poorer cognitive development.[1] Teenage parents are less likely to graduate high school and more likely to need public assistance as adults. *Id.* at 12. STIs among young people also impose significant costs and public health concerns. STI rates in the United States reached an all-time high in 2021. ECF 7-3 at 3. Youths aged 15 to 24 have one-half of new STI infections, despite representing only one-quarter of the sexually active population. ECF 7-4 at 10.

To combat these public health issues, Congress has long exercised its spending authority to authorize federal funding for sexual health education. *See* 42 U.S.C. § 300z. In 1996, after a decade of growing concern over HIV/AIDS, Congress enacted Title V, Section 510B of the Social Security Act, which provided the framework for SRAE. Personal Responsibility and Work Opportunity Reconciliation Act of 1996, 110 Stat. 2353-2354, Pub. L. No. 104-193 § 912. In 2010, following a spike in teen birth rates (ECF 7-6 at 5), Congress authorized PREP as part of the Affordable Care Act. 124 Stat. 347-352, Pub. L. No. 111-148 § 2953 *codified as amended at* 42 U.S.C. § 713. PREP is one of the largest federally funded programs designed to address teen pregnancy.[2]

The primary goal of these programs is to educate youth on abstinence and contraception to prevent pregnancy and STIs, including HIV/AIDS. 42 U.S.C. § 713(b)(2)(A); *id.* § 710(b)(1). Another purpose is to prepare youth for adulthood by teaching subjects such as "[h]ealthy

---

[1] Donald B. Langille, *Teenage Pregnancy: trends, contributing factors and the physician's role*, Canadian Med. Ass'n J. (May 22, 2007), https://pmc.ncbi.nlm.nih.gov/articles/PMC 1867841/.

[2] DelGrosso, Schulte, and Zief, *Supporting Statewide Implementation of Evidence-Based Teen Pregnancy Prevention Programs: Findings from Four PREP Grantees*, OPRE Report No. 2016-87, (Nov. 2016), https://acf.gov/sites/default/files/documents/opre/06991_d51_prep_dis_implementation_report_final_508.pdf.

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

relationships," "[a]dolescent development," "[p]arent-child communication," and "[h]ealthy life skills[.]" 42 U.S.C. § 713(b)(2)(C); *see also id.* § 710(b) (requiring SRAE to educate students on "personal responsibility, self-regulation, goal setting, healthy decisionmaking," and [t]he foundational components of healthy relationships"). To achieve those goals, Congress requires that PREP and SRAE reach high-risk, vulnerable, and under-represented youth. *See* 42 U.S.C. §§ 713(c)(1), (a)(1)(C)(ii)(II); *id.* § 710(b)(2)(E). The programs must also be culturally "appropriate" and "medically accurate and complete[,]" ensuring that youth of diverse backgrounds receive information that is supported by research. 42 U.S.C. § 713 (b)(2)(B)(ii), (vi), (e)(2); *id.* § 710(b)(2)(B), (E), (e)(2).

**B.    Plaintiff States Have Successfully Implemented PREP and SRAE For Many Years**

All Plaintiff States currently participate in PREP. Several Plaintiff States also participate in SRAE. Plaintiff States have dutifully complied with statutory requirements and have implemented highly successful programs.

Participation in PREP is associated with positive outcomes in adolescents' sexual health indicators, behavioral intent, and relationship advocacy.[3] Educators in Plaintiff States report that PREP-funded services are "an invaluable support" and "essential," and caregivers report that PREP-funded workshops were "informative, well-grounded, and [made] common sense." *E.g.*, ECFs 12 at 3 ¶¶ 5, 8; 13 at 2-5 ¶¶5, 11; 10 at 6-7, ¶ 14. The most recent PREP data demonstrates that during the 2020-21 reporting period, just over half of high-school-age and older youth planned to abstain from sex for at least three months because of participating in PREP. ECF 7-10 at 5.

---

[3] Sandra Anti Eyiah & Adrienne Duke-Marks, *Evaluating Associations of the Personal Responsibility and Education Program (PREP) with Adolescents' Sexual Health and Relationship Advocacy*, 20 Am. J. Sexuality Educ. 1 (2025).

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

Among those who did not plan to abstain, 41% said PREP made them less likely to have sex in the next three months, 65% said they were more likely to use condoms, and 59% said they were more likely to use other forms of birth control. *Id*. Like PREP, SRAE program participants—as well as community members—have positive perceptions of the program. Facilitators report that their SRAE programming meets the needs of most youth, and youth participants report that SRAE curricular content is relevant and engaging.[4]

## C.    Plaintiff States Are Home to Many Transgender, Gender Diverse, and DSD Youth, and Strive to Ensure that Education Includes Those Students

Plaintiff States are home to many transgender, gender diverse,[5] and DSD[6] youth. In the United States, approximately 2.8 million people aged 13 and older identify as transgender.[7] While these populations can be underreported, this number includes about 724,000 youth ages 13 to 17, representing 3.3% of all youth nationwide. Herman, *supra*, note 7. Plaintiff States deeply value diversity and strive to make education inclusive for all students. Indeed, an inclusive education is consistent with Plaintiff States' own laws and policies, is supported by experts and educators, and—until recently—was *required* by HHS.

---

[4] Theresa Neelan et al., *The Sexual Risk Avoidance Education National Evaluation: Understanding Program Implementation Experiences*, OPRE Report 2023-307, at viii (Dec. 2023), https://acf.gov/sites/default/files/documents/opre/SRAENE-NWS-Implementation-2023.pdf.

[5] Plaintiffs use "transgender and gender diverse" to refer inclusively to youth who are nonbinary, two-spirit, genderqueer, and genderfluid, among others.

[6] DSD individuals have atypical combinations of factors that make up one's sex, caused by a number of conditions. ECF 8 at 6 ¶ 25. They may not fit cleanly into a binary definition of "male" or "female." *Id*. ¶ 34. The term "intersex" is sometimes used to describe individuals with DSD. *Id*. ¶ 25.

[7] Jody L. Herman & Andrew R. Flores, UCLA School of Law Williams Institute, *How Many Adults and Youth Identify as Transgender in the United States?*, https://williamsinstitute. law.ucla.edu/publications/trans-adults-united-states/ (last visited Feb. 19, 2026).

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

Numerous Plaintiff States have promulgated laws and policies specifically aimed at ensuring inclusivity in sexual health education programs.[8] Many Plaintiff States also have robust antidiscrimination laws that prohibit discrimination on the basis of sex, sexual orientation, or gender identity in places of public accommodation.[9] These laws are consistent with expert opinion and studies recognizing the importance of inclusive education, particularly sexual health education.[10] *See also* ECF 8 at 11-12 ¶ 39. For example, studies have noted a decrease in bullying with the provision of gender inclusive health education. Rabbitte, *supra*, note 10. When educators do not provide inclusive sexual health information to transgender, gender diverse, and DSD youth, "rates of suicidal ideation and suicide are higher," making provision of this information potentially "life-saving[.]" ECF 10 at 11-12 ¶ 27; *see also* 2023 U.S. National Survey on the Mental Health of LGBTQ Young People (finding that "[r]oughly half of transgender and nonbinary young people found their school to be gender affirming, and those who did reported lower rates of attempting suicide.").

---

[8] *See, e.g.*, Wash. Rev. Code §§ 28A.300.475(1)(a)(i), (c); ECF 7-12 at 37, 40; Colo. Rev. Stat. § 22-1-128(2)(c), (7)(b)(III); N.Y. State Dep't of Educ., *A Guidance Document for Achieving the New York State Standards in Health Education* (2005); New York State Dep't. of Educ., *NYSED Assessment Process for Review of Local Education Agencies (LEAs) Condom Availability Plan (CAP) and Approval of the Plan for Training For School Personnel and/or Health Service Personnel Providing Personal Health Guidance to Students* (2017); Or. Admin. R 581-022-2050(6)(q), (s); Or. Rev. Stat. § 336.455(2)(j).

[9] *See* Wash. Rev. Code §§ 49.60.030(1), .040(29); Me. Stat. tit. 5 § 4602; Minn. Stat. § 363A.13; Colo. Rev. Stat. § 24-34-601(2)(a); Haw. Rev. Stat. §§ 368D-1(a), 489-3; N.Y. Const. art. I, § 11(a); N.Y. Exec. Law §§ 291, 292(35), 296, 300 *et seq.*; N.Y. Civ. Rights Law §§ 40, 40-c; N.Y. Educ. Law §§ 11-12, 801-a, 3201-a; N.Y. Comp. Codes R. & Regs. tit. 9, § 466.13; N.Y. Comp. Codes R. & Regs. tit. 8, § 100.2(l)(2); Mass. Gen. Laws ch. 272, §§ 92A, 98; Mass. Gen. Laws ch. 151B, § 4; Mich. Comp. Laws § 37.2302(a); 775 Ill. Comp. Stat. 5/1-103(O-1), (Q); N.J. Stat. Ann. §§ 10:5-12(f).

[10] Maureen Rabbitte, *Sex Education in School, are Gender and Sexual Minority Youth Included? A Decade in Review*, Am. J. Sexual Educ. 15(4), 530-42 (Oct 13, 2020). https://pmc.ncbi.nlm.nih.gov/articles/PMC7986966/.

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

Moreover, Plaintiff States' adoption of culturally inclusive sex ed curricula was—until now—consistent with the federal government's own directives. As recently as 2024, HHS expressly *required* that States provide programs "to youth populations that are the most high-risk or vulnerable for pregnancies and sexually transmitted infections, including HIV/AIDS, or have other special circumstances including culturally underrepresented youth populations such as . . . youth who identify as lesbian, gay, bisexual, transgender, and/or questioning (LGBTQ+), and other vulnerable or underserved youth populations." ECF 7-8 at 12; *see also* ECF 7-9 at 7 (a 2024 SRAE Notice of Funding Opportunity stated that "States must ensure that SRAE projects are inclusive of youth who identify as lesbian, gay, bisexual, transgender, and/or questioning, intersex, asexual, and two-spirit (LGBTQIA2S+)").

**D.    HHS Abruptly Reversed its Position and Now Seeks to Prohibit PREP and SRAE Grant Recipients from Including "Gender Ideology" in State Curricula**

At the start of his term, President Trump issued an executive order seeking to eradicate "gender ideology," which he characterized as "permitting the false claim that males can identify as and thus become women and vice versa." Exec. Order No. 14,168; 90 Fed. Reg. 8615, § 2(f) (Jan. 20, 2025) (E.O. 14,168).

Soon after, HHS turned its focus to PREP and SRAE. In April 2025, HHS sent letters to PREP grantees requiring them to submit all approved PREP curricula and programmatic materials for a "medical accuracy review." AR ECF 90-1 at 1-2. The States complied and submitted their curricula for review. *See generally* AR ECF 90-98.

On August 6, 2025, HHS issued a series of Notices of Awards (NOAs) for the 10/1/2024-9/30/2027 PREP grant award period (*see, e.g.*, AR ECF 90-3 at 2) and the 10/1/2024-9/30/2026 SRAE grant award period (*see, e.g.*, AR ECF 90-4 at 2) prohibiting recipients from including

7

"gender ideology"—a term that was not defined—in any program or service that is funded with the award. *See* AR ECF 90-3, 90-4. The NOAs' terms and conditions repeat this prohibition, stating that "gender ideology is outside of the scope of the statutory authority for this award." *See, e.g.*, AR ECFs 90-3 at 2, 90-4 at 2 (citing 42 U.S.C. § 710 as statutory authority for SRAE and 42 U.S.C § 713 for PREP). The NOAs warned recipients that the continued use of PREP and SRAE funds "constitutes the grantee's acceptance of the listed terms and conditions." *Id.* The next day, HHS issued Supplemental Terms and Conditions (Supplemental T&Cs) for PREP and SRAE awards. The Supplemental T&Cs contained the same prohibition and conclusory explanation. ECF 7-15 at 2; 7-16 at 3.[11] The Supplemental T&Cs are "effective immediately[,]" "supersede all previous similar T&Cs[,] and will remain in effect until updated for subsequent awards." *Id.*

On August 21, 2025, HHS terminated California's PREP awards and suspended PREP funding in the state after California refused to comply with HHS's demands to remove "gender ideology" from its curricula. ECF 7-7 at 2. Five days later, HHS sent PREP grantees in Plaintiff States a letter (the "PREP Directive"), stating that the PREP curricula and program materials for fiscal years 2023, 2024, and 2025 are "outside of the scope of PREP's authorizing statute at 42 U.S.C. § 713" because they include content about "gender ideology." *See, e.g.*, AR ECF 90-2 at 1, 4. HHS acknowledged that "these curricula and other program materials were previously approved by ACF," but claimed that the "prior administration erred in allowing PREP grants to be used to teach students gender ideology" because "gender ideology is outside of the scope of the

---

[11] While the Supplemental T&Cs are not contained in the administrative record, this Court can consider them because Defendants considered them in their decision. *Thompson v. Dep't of Labor*, 885 F.2d 551, 555-56 (9th Cir. 1989) (holding letters considered by agency but not compiled into the agency record could be considered "in determining whether the Secretary's decision was 'arbitrary and capricious' or unsupported by substantial evidence").

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

authorizing statue." *See, e.g.*, *id.* at 4. It demanded that grantees "remove all content concerning gender ideology from its curricula, program materials and any other aspects of its program delivery within 60 days of receipt of this letter." *See, e.g.*, *id.*

HHS again failed to provide a definition of "gender ideology." Instead, it listed examples of "gender ideology" content. *E.g.*, AR ECF 90-2 at 4. These examples covered a range of material and were sweeping in scope. For example, they included material in teachers' manuals simply instructing educators to foster respectful educational environments. *E.g.*, AR ECF 90-2 at 7 (directing Delaware to remove information instructing facilitators to "[d]emonstrate acceptance and respect for all participants, regardless of personal characteristics, including race, cultural background, religion, social class, sexual orientation or gender identity."). And they included course material recognizing the importance of all youth knowing how to prevent pregnancy and STIs. *E.g.* AR ECF 90-2 at 73 (directing Washington to remove information from a high school curriculum stating that "[p]eople of all sexual orientations and gender identities need to know how to prevent pregnancy and STOs [sic], either for themselves or to help a friend.").

In demanding that States immediately implement these changes, HHS never considered how the inclusion of education in state curricula about gender identity furthers Congress's goals in reducing teen pregnancy and STI rates. It likewise never considered that gender and sexual minority youth tend to experience "increased sexual risk behaviors and adverse health outcomes" compared to their heterosexual and cisgender peers,[12] and that failing to provide gender-inclusive, medically accurate information to at-risk youth increases their risk of non-consensual sex, unprotected sex, sex while intoxicated, STIs, and teen pregnancies. *Id.* Nor did HHS consider the

---

[12] Rabbitte, *supra*, note 10 at 530-42.

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

numerous harms that these changes would inflict in Plaintiff States by imposing the impossible choice of losing federal funding for essential public health education programs or complying with unlawful funding conditions.

**E.    This Court Enjoined the Gender Conditions After Recognizing They are Unlawful, Unconstitutional, and Will Inflict Irreparable Harms**

In September 2025, Plaintiff States filed this lawsuit alleging that Defendants' sudden and unsupported change in sexual health curricula requirements violates the APA and the U.S. Constitution. ECF 1. Plaintiff States moved for a preliminary injunction, ECF 2, which this Court granted on October 27, 2025. ECF 81. In its Order and Opinion, this Court determined that Plaintiff States were likely to succeed on the merits on all claims, concluding in part that imposing the Gender Conditions on Plaintiff States' curricula was "'contrary to law' and '"in excess of statutory jurisdiction, authority, or limitations or short of statutory right.'" *Id.* at 39 (quoting 5 U.S.C. §§ 706(2)(A), (C)). Defendants filed a notice of appeal of this order, and their opening appellate brief is due on February 25, 2025. ECF 89; *Washington v. Dep't. of Health & Human Servs.*, No. 25-8077, Dkt. 21 (9th Cir. Jan. 23, 2026) (order granting extension of time to file opening brief).

### III.    ARGUMENT

**A.    The Gender Conditions Are Contrary to Law**

The APA prohibits agency action that exceeds statutory or constitutional authority or is otherwise contrary to law. 5 U.S.C. §§ 706(2)(A), (C); *Kaweah Delta Health Care Dist. v. Becerra*, 123 F.4th 939, 944 (9th Cir. 2024) ("[U]nder our system of separation of powers, neither good intentions nor pressing policy problems can substitute for an agency's lack of statutory authority to act."). For agencies charged with administering statutes, "[b]oth their power to act and how they

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

are to act is authoritatively prescribed by Congress[.]" *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013). An agency "literally has no power to act . . . unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). And "if an agency acts without statutory authority, then a court must set that action aside" under the APA. *Drs. for Am. v. Off. Of Pers. Mgmt.*, No. 25-322 (JDB), 2025 WL 1836009, at *17 (D.D.C. July 3, 2025).

The Gender Conditions, which seek to erase transgender, gender diverse, and DSD youth from PREP and SRAE curricula, are contrary to law for three reasons. First, they conflict with Congress's intent to reduce teen pregnancy and STIs and prepare youth for adulthood. Second, they conflict with the enabling statutes' requirement that grant programming be culturally appropriate. 42 U.S.C. § 710(b)(2)(E); *id.* § 713(b)(2)(B)(ii). Third, they conflict with the enabling statutes' requirement that grant programming be "medically[]accurate and complete." 42 U.S.C. § 713(b)(2)(B)(ii); *id.* § 710(b)(2)(B). Each of these violations requires that the Gender Conditions be set aside.

### 1. The conditions are incompatible with Congress's intent to reduce teen pregnancy and STIs and to prepare youth for adulthood

The Gender Conditions directly conflict with the purpose of the PREP and SRAE grants. It is undisputed that Congress created these programs to reduce adolescent rates of pregnancy and STIs. *See* ECF 70 at 26, 30; 99 at 17. The PREP statute provides that the purpose of an allotment is to enable the State "to carry out [PREP] programs . . . ." 42 U.S.C. § 713(b)(1). Congress defined a PREP program as "a program that is designed to educate adolescents on . . . both abstinence and contraception for the prevention of pregnancy and sexually transmitted infections, including HIV/AIDS . . . ." *Id.* § 713(b)(2)(A). Similarly, the SRAE statute provides that the purpose of an allotment is to enable the State "to implement education exclusively on sexual risk avoidance

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

(meaning voluntarily refraining from sexual activity)" and provides that states may offer some education regarding contraception. *Id.* §§ 710(b)(1), (4)(B).

Educating youth about gender identity directly furthers the statutes' purpose of reducing adolescent rates of pregnancy and STIs. The States' expert, Dr. Millington, a Board-certified Harvard-trained pediatric endocrinologist and assistant professor and clinical educator with a specialty in "assessment and treatment of transgender adolescents," opined that "[e]ducation about gender identity is integral to teaching about sexual health including abstinence and contraception." ECF 8 at 12 ¶ 39. She explained:

> Without understanding gender identity, adolescents cannot be expected to make educated choices regarding their sexual choices especially as it pertains to their risk of pregnancy. For example, if a cisgender male who is sexually and romantically interested in other men were to become sexually active with a transgender man (*e.g.*, an individual designated female at birth with a male gender identity) pregnancy could result. If sexual education does not include a discussion of gender identity, adolescents cannot adequately understand their risk for pregnancy.

*Id.* Defendants never rebut this—on preliminary injunction or on summary judgment.

Moreover, research shows that gender and sexual minority youth tend to experience increased sexual risk behaviors and adverse health outcomes compared to their heterosexual and cisgender peers, including decreased condom and contraceptive use, being twice as likely to experience sexual violence, and two to seven times higher incidence of teen pregnancy. *See, e.g.*, Rabbitte*, supra*, note 10 at 530-42; *see also* Laura Kann et al, *Youth Risk Behavior Surveillance – United States, 2017*, 67 Morbidity and Mortality Weekly Report 1 (June 15, 2018), available at https://www.cdc.gov/mmwr/volumes/67/ss/ss6708a1.htm?s_cid=ss6708a1_w.   Gender-inclusive sexual health education is essential to providing youth accurate and relevant information to make informed sexual decisions and reduce teen pregnancy and STIs. *See generally*, Rabbitte, *supra*,

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

note 10; *see also* ECF 8 at 14 ¶ 43 (if PREP and SRAE-funded programs "incorrectly insist that sex and gender are binary, they cannot adequately educate transgender and gender diverse adolescents or adolescents with DSD in accordance with the PREP and SRAE enabling statutes."). Defendants' command that PREP and SRAE programs remove all content related to gender identity is thus at odds with the core purpose of the statutes.

Additionally, the Gender Conditions conflict with Congress's expressly stated goal to prepare youth for adulthood. Congress mandated that PREP programs teach youth various "adult preparation subjects" such as "[h]ealthy relationships, including marriage and family interactions[;]" "[a]dolescent development, such as the development of healthy attitudes and values about adolescent growth and development, body image, racial and ethnic diversity, and other related subjects[;]" "[p]arent-child communication[;]" and "[h]ealthy life skills, such as goal-setting, decision making, negotiation, communication and interpersonal skills, and stress management." 42 U.S.C. § 713(b)(2)(C). SRAE similarly requires education on "[t]he holistic individual and societal benefits associated with personal responsibility, self-regulation, goal setting, healthy decisionmaking, and a focus on the future" and "[t]he foundational components of healthy relationships and their impact on the formation of healthy marriages and safe and stable families" among others. *Id.* §§ 710(b)(3)(A), (D). The unrebutted evidence is that "[t]opics of sex and gender identity are relevant to learning about adolescent development" and that "[a]n understanding of gender identity is relevant to learning about healthy relationships and parent-child communication" as "these identities can color relationships." ECF 8 at 13 ¶¶ 41-42.

Defendants baldly assert that gender identity content does "not fit within the Objectives Requirement of either statute." ECF 99 at 17. But Defendants fail to submit *any* evidence in support of this argument, and they make no attempt to grapple with the evidence cited above *directly*

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

linking inclusive curricula to reducing the risk of pregnancy and STIs, as well as several of the adult preparation subjects. And contrary to Defendants' claim, the fact that four states allegedly do not include gender identity content in their PREP and SRAE programs is of no consequence. *Id.* at 18. The vast majority of states do include gender identity in their curricula, and a state's decision not to include this information in their PREP or SRAE programming in no way proves that Congress intended to *prohibit* its inclusion.

Defendants' reliance on specific curricula examples is equally unhelpful, as Defendants fail to offer any explanation for why they allegedly fall outside the statutory scope. For example, Defendants claim without explanation that a PowerPoint slide that reads: "Sometimes, a person's inner feelings about their gender doesn't match their body parts. For example, they have a penis, and know, 'I'm female.'" is outside statutory objectives. *Id.* at 19. But this slide provides a concrete example of how pregnancy risk can arise for gender diverse youth, and it reinforces the risk-relevant lesson that pregnancy depends on anatomy—which might not align with gender identity—so that all youth can accurately assess pregnancy risks. Absent instruction distinguishing gender identity from reproductive anatomy, sexual education would fail to equip adolescents with an accurate understanding of their actual risk of pregnancy. Not to mention, the slide's content also falls squarely within several adult preparation subjects. *See* ECF 8 at 13 ¶¶ 41-42 ("[t]opics of sex and gender identity are relevant to learning about adolescent development" and "[a]n understanding of gender identity is relevant to learning about healthy relationships and parent-child communication" as "these identities can color relationships.").

Plaintiff States' inclusion of gender identity material in their PREP and SRAE curricula actively furthers Congress's goals in enacting these programs. HHS's directives to ignore gender identity are contrary to Congress's express objectives and endanger the populations Congress

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

intended to serve. For that reason, they must be set aside. *Planned Parenthood of Greater Wash. & N. Idaho v. Dep't of Health & Hum. Servs.*, 946 F.3d 1100, 1113 (9th Cir. 2020) (holding HHS's grant criterion was contrary to law because it deviated from the purpose of the authorizing statute); *see also* ECF 81 at 34 (concluding that "the PREP and SRAE statutes provide no grounds to require that Plaintiff States remove gender identity references from their PREP [curricula] and that HHS acted in excess of statutory authority to require that they do so.").

### 2.    The conditions conflict with the enabling statutes' requirement that grant programming be "culturally appropriate"

The Gender Conditions also conflict with the enabling statutes' program requirements. The PREP statute requires that programs be "provided in the cultural context that is most appropriate for individuals in the particular population group to which [the program is] directed." 42 U.S.C. § 713(b)(2)(B)(vi); *see also id.* § 713(c)(1) (reserving funds to target "high-risk, vulnerable, and culturally underrepresented youth populations"); *id.* § 713(a)(1)(C)(ii)(II) (requiring applications to describe the State's plan for meeting its goals "especially among youth populations that are the most high-risk or vulnerable"). The SRAE statute similarly requires grantees to present information that is "culturally appropriate, recognizing the experiences of youth from diverse communities, backgrounds, and experiences." *Id.* § 710(b)(2)(E).

It is clear from these statutes that Congress intended PREP and SRAE programs to reach high-risk, vulnerable, and under-represented youth. Transgender, gender diverse, and DSD youth fall squarely within these targeted populations. Indeed, HHS's own website specifically states that PREP programs target youth "from minority groups (including sexual minorities)[.]" *See* ECF 7-7 at 2. And unrebutted evidence establishes these groups' heightened vulnerability and risk. *See, e.g.*, ECF 8 at 14 ¶ 44 ("[g]ender minority youth are at increased risk for . . . decreased condom

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

use, earlier initiation into sex, more sexual partners, using drugs or alcohol prior to sex, higher burdens of [STIs], and increased risk of pregnancy in adolescence"); Rabbitte, *supra*, note 10 (noting increased sexual risk behaviors and adverse health outcomes for gender minority youth); ECF 10 at 10 at 11-12 ¶ 27 (explaining that when inclusive sexual health information is not provided to transgender, gender diverse, and DSD youth, "rates of suicidal ideation and suicide are higher[.]").

Congress also plainly intended for PREP and SRAE programs to be appropriately tailored to the specific populations they serve. Defendants do not—and cannot—dispute that the Plaintiff States' populations include transgender, gender diverse, and DSD youth. Accordingly, "the particular population group to which [the program is] directed[,]" *id.* § 713(b)(2)(B)(vi), necessarily includes youth from these populations. It is thus directly contrary to the intent of the statutes to prohibit content that would educate students from these populations about their specific risk factors, let alone prohibit educators from even acknowledging that such students exist.

Such prohibitions are likewise contrary to Congress's mandate to "recogniz[e] the experiences of youth from diverse communities, backgrounds, and experiences." *Id.* § 710(b)(2)(E). As this Court recognized, this language demonstrates Congress's plain intent to include diverse youth populations. ECF 81 at 38-39 (statutes' requirements to provide a "culturally appropriate" curricula and its attention to high-risk youth populations show "that Congress sought to expand the programs' reach, not contract it by excluding certain segments, especially high-risk segments, of a states' youth population, as HHS seeks to do"). This includes youth who are transgender, gender diverse, or DSD. *See id.* Yet the PREP Directive suggests that merely allowing transgender, gender diverse, or DSD students to attend sex education classes with their preferred name, pronouns, or physical presentation, or allowing educators to respond in an affirming manner

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

16

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

to a student's questions about their transgender, gender diverse, or DSD family members, classmates, or community members, violates the Gender Conditions. *E.g.*, ECF 90-2 at 2 (flagged prohibited content included language directing facilitators to "[d]emonstrate acceptance and respect for all participants, regardless of . . . gender identity"). The Gender Conditions require program providers to completely ignore youth from these populations and be culturally *insensitive* to their experiences.

Defendants fail to address this statutory command, instead conceding that such content may be culturally appropriate. ECF 99 at 37 ("HHS did not evaluate whether teaching on gender ideology would be 'culturally appropriate.'"). This concession is fatal. The Gender Conditions are contrary to law because they flatly prohibit the inclusion of content that the statute may compel.

### 3.    The conditions conflict with the enabling statutes' requirement that grant programming be "medically accurate and complete"

Congress also expressly required that PREP and SRAE curricula be "medically accurate and complete." 42 U.S.C. §§ 713(b)(2)(B)(ii); *id.* § 710(b)(2)(B). Both statutes define "medically accurate and complete" as that which is "verified or supported by the weight of research conducted in compliance with accepted scientific methods" and either "(A) published in peer-reviewed journals, where applicable;" or "(B) comprising information that leading professional organizations and agencies with relevant expertise in the field recognize as accurate, objective, and complete." 42 U.S.C. §§ 713(e)(2); *id.* § 710(e)(2).

As this Court previously held, imposing a blanket prohibition on "evidence-based gender identity references from PREP and SRAE curricula conflicts with the statutory requirement that curricula be 'medically accurate and complete.'" ECF 81 at 36. Indeed, the Supreme Court itself just acknowledged that "1.6 million Americans over the age of 13 identify as transgender, meaning

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

17

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

that their gender identity does not align with their biological sex." *United States v. Skrmetti*, 145 S. Ct. 1816, 1824 (2025). Further, the near unanimous consensus of the medical and scientific community is that gender identity is distinct from sex. ECF 8 at 8-9 ¶ 29. It is hardly surprising, then, that including gender identity in comprehensive sexual health education is recommended by the American Academy of Pediatrics and the American College of Obstetricians and Gynecologists. *Id.* at 12-13 ¶ 39.

Plaintiff States' unrebutted evidence confirms these points. The States' expert testified in a declaration that "[e]veryone has a gender identity." ECF 8 at 7 ¶ 26. She further testified that "[a] program that did not mention gender identity or did not teach that there is a diversity of human experience with regard to gender identity, or insisted that sex and gender are not binary, would not be medically accurate or complete[,]" *id.* at 14 ¶ 45, that the Gender Conditions "are not consistent with biological reality or the diversity of human experience[,]" *id.* at 15-16 ¶ 49, and that "[t]hey inaccurately represent human physiology and well-established scientific facts regarding the complex concepts of sex and gender." *Id.*

Defendants do not contest any of this evidence and, in fact, concede that such content may be medically accurate and complete. ECF 99 at 29 ("HHS did not conduct a medical accuracy review of Plaintiffs' curricula or otherwise take a position on whether the curricula was medically accurate."). Like its refusal to examine cultural appropriateness, HHS ignores the statutory language, and its decision to prohibit content that is within the scope of the program requirements is contrary to law.

## B.    Defendants' Actions Are Arbitrary and Capricious

The APA prohibits arbitrary and capricious action. 5 U.S.C. § 706(2)(A); *Kalispel Tribe of Indians v. Dep't of Interior*, 999 F.3d 683, 688 (9th Cir. 2021). It requires federal agencies to

18

engage in "reasoned decisionmaking," *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16 (2020), meaning an agency must offer "'a satisfactory explanation for its action'" and can neither "rel[y] on factors which Congress has not intended it to consider" nor ignore "an important aspect of the problem," *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 43 (1983) (citation modified). While agencies can change their existing policies, they must "display awareness that" they are doing so, provide "good reasons for the new policy," and demonstrate that they have taken account of "reliance interests" engendered by the prior policy. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). The APA requires a court to hold unlawful and set aside agency action that is not "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).

Defendants' actions are arbitrary and capricious for at least four reasons. First, Defendants failed to engage in reasoned decision making when they demanded that Plaintiff States remove all references to gender identity even when such content falls within the purpose and scope of the enabling statutes. Second, Defendants' policy change—which abruptly reversed HHS's prior instructions and approval of the curricula at issue—was not reasonably explained and failed to consider significant reliance interests of Plaintiff States and others. Third, Defendants' actions discriminate on the basis of sex. And fourth, Defendants' actions constitute an impermissible pretextual justification for the predetermined goal of erasing transgender, gender diverse, and DSD youth.

### 1.    Defendants failed to engage in reasoned decisionmaking

HHS failed to engage in reasoned decisionmaking when it abruptly changed its policy and demanded that Plaintiff States scrub their PREP and SRAE programs of *all* content related to gender identity, including content that simply recognizes the existence of transgender, gender

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

19

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

diverse, and DSD youth. The Gender Conditions directly conflict with the statutory criteria discussed above, undermine the programs' statutory purpose as defined by Congress, and fly in the face of medical evidence and the needs of vulnerable youth.

An agency must offer "'a satisfactory explanation for its action'" and can neither "rel[y] on factors which Congress has not intended it to consider" nor ignore "an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43 (1983) (citation modified). The information an agency should consider necessarily "turns on what a relevant substantive statute makes important[.]" *Or. Nat. Res. Council v. Thomas*, 92 F.3d 792, 798 (9th Cir. 1996) (internal quotation marks omitted); *see also Ctr. for Biological Diversity v. Fish & Wildlife Serv*., 67 F.4th 1027, 1039 (9th Cir. 2023) (evidence outside statutorily defined timeframe is not a "relevant factor"). It is arbitrary and capricious for the agency to neither "look to" nor "discuss" statutory "requirements." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 682 (2020).

HHS violated these principles when it failed to consider the purpose and language of the enabling statutes. Indeed, HHS *concedes* that it never even considered whether curricular content regarding transgender, gender diverse, and DSD youth might be necessary to meet the statutory program requirements of being medically accurate, complete, and culturally appropriate. ECF 99 at 35, 37. Nor did it consider the statutes' purpose to reduce teen pregnancy and STI rates and prepare youth for adulthood. It apparently concluded, *a priori*, that the "psychological, social, and ethical dimensions" of such youth are wholly irrelevant to sexual risk avoidance and the development of healthy adult relationships. *See id.* at 35. But the medical, scientific, and educational consensus is the exact opposite. Gender-inclusive sexual health education is widely regarded as essential to providing vulnerable youth accurate and relevant information to make

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

20

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

informed and healthy sexual decisions. *E.g.*, ECF 8 at 8-16. The administrative record contains nothing to the contrary; it instead substantiates Defendants' confession that they simply declined to analyze or even accord the plain meaning to the relevant statutory requirements. As this Court observed, "this is precisely the type of agency failure that the arbitrary and capricious standard is intended to address." ECF 81 at 42.

HHS also failed to consider the fact that transgender, gender diverse, and DSD youth are part of Plaintiff States' general population. Accordingly, Plaintiff States' PREP and SRAE programs must recognize such youth to deliver an inclusive and relevant educational program. *E.g.*, ECF 13 at 7. But the Gender Conditions would force Plaintiff States to refuse to acknowledge a student's asserted pronouns and would erode trust in the educational community. *See id.* (gender inclusive sexual health curricula "builds trust between that parent and their student's school community"). Defendants did not consider any of this and instead sought to erase transgender, gender diverse, and DSD youth and their experiences without any meaningful consideration of the medical, scientific, or educational literature. *See generally* AR.

Defendants' sole defense is its *ipse dixit* that "gender ideology content is not designed to educate students on abstinence or contraception for the prevention of sexually transmitted infections, the specified adulthood preparation subjects, or sexual risk avoidance." ECF 99 at 25. But Defendants cited no evidence in support, and the administrative record contains none. Instead, HHS's bare conclusion that transgender, gender diverse, and DSD youths' existence is irrelevant to the statutory objectives is a fig leaf to hide HHS's utter failure to engage in any reasoned decisionmaking. *See* ECF 81 at 41 ("HHS provides no factual findings or a reasoned basis for its decision.").

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

21

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

Defendants also rely on HHS's explanation that "the statutes do not explicitly mention gender ideology[.]" ECF 99 at 25. But it is unnecessary for Congress to "explicitly" reference every single topic of instruction to conclude that it falls within the statute's scope. *See Cnty. of Amador v. Dep't of the Interior*, 872 F.3d 1012, 1022 (9th Cir. 2017) ("[W]e must (as usual) interpret the relevant words [in a statute] not in a vacuum, but with reference to the statutory…history[] and purpose."). The statute does not explicitly reference teaching about anatomy and physiology, menstrual cycles, or consent, yet no one would dispute that those topics promote sexual health education and are necessary to have an effective and comprehensive program. In short, HHS's blatant failure to consider the relevant factors and data establishes that Defendants' actions are arbitrary and capricious.

**2.      Defendants' abrupt change in policy was not reasonably explained and failed to consider significant reliance interests**

Defendants' actions are also arbitrary and capricious because they failed to provide a reasoned explanation for their change in position and ignored the impact of the decision on grantees' reliance interests.

Under the change-in-position doctrine, "'[a]gencies are free to change their existing policies as long as they provide a reasoned explanation for the change, 'display awareness that [they are] changing position,' and 'consider serious reliance interests.'" *FDA v. Wages & White Lion Invs.*, 145 S. Ct. 898, 917 (2025) (quoting *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221-22 (2016)). "[A] reasoned explanation is needed for disregarding facts and circumstances that underlay or were engendered by the prior policy." *Encino Motorcars*, 579 U.S. at 222 (internal citation omitted). Such an explanation is critical because "[w]hen an agency changes course, . . . it

must be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account." *Regents of the Univ. of Cal.*, 591 U.S. at 25 (citation modified).

As recently as 2024, HHS required grantees to provide PREP programming to "to youth populations that are the most high-risk or vulnerable for pregnancies and [STIs], . . . including culturally underrepresented youth populations such as . . . youth who identify as lesbian, gay, bisexual, transgender, and/or questioning." ECF 7-8 at 12 ¶ 14c. Similarly, the 2024 SRAE Notice of Funding Opportunity provided that "States must ensure that SRAE projects are inclusive of youth who identify as lesbian, gay, bisexual, transgender, and/or questioning, intersex, asexual, and two-spirit (LGBTQIA2S+)." ECF 7-9 at 7. This longstanding policy is consistent with the overwhelming educational and medical consensus that inclusive sexual health education is crucial to reducing rates of pregnancy and STIs and that withholding inclusive sexual health education has serious negative consequences on the mental and physical health of transgender, gender diverse, and DSD youth. *See, e.g.*, ECF 8 at 8-9 ¶ 29.

Yet without notice, HHS abruptly reversed its position, now demanding that Plaintiff States scrub their PREP and SRAE programs of *all* content related to gender identity, even going so far as banning content that simply recognizes the existence of transgender, gender diverse, and DSD youth. The only explanation HHS offered was that such content was outside the scope of the enabling statutes. AR ECF 90-2 (HHS's Directive Letters to Plaintiff States). But HHS failed to make any factual findings to support its "reassessment" of the statute, and it *concedes* that it never considered the statutes' program content requirements. ECF 99 at 36-37. Nor did HHS offer any explanation for how the policy change is in line with the goals of the PREP and SRAE grants or how it will better serve the youth receiving the grant-funded education.

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

23

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

On the contrary, HHS willfully disregarded the consequences to vulnerable youth if States lose this funding or if they are forced to erase the existence of these youth from their curricula. Overwhelming evidence establishes devastating impacts on transgender and gender diverse youth from having their gender identity erased or from being deprived of essential health information. *See, e.g.*, Rabbitte, *supra*, note 10. HHS also failed to consider that many States have laws preventing the types of discrimination that would be required by the Gender Conditions. States thus may not even have the option of accepting HHS's discriminatory conditions without violating their own state laws.

HHS likewise failed to consider Plaintiff States' serious reliance interests. The States have relied upon the longstanding policy that LGBTQ+ youth should be included in—and at times even specially targeted for—PREP and SRAE programming. Accordingly, they have designed their PREP and SRAE programs with such youth in mind, selecting sub-recipients and curricula, hiring staff, and providing training for instructors in line with these goals. Many of these programs have been in place for over fifteen years and have become an embedded part of school districts' efforts to provide sexual health education services and reduce teen pregnancy and STIs for all youth. Moreover, schools, grantees, and sub-grantees typically develop their curricula far ahead of time and cannot change their curricula in the middle of a school year as HHS now demands. ECF 32 at 8 ¶ 19. In addition, school districts, especially smaller ones, lack the expertise to fill the gap created by a loss of federal funding. ECF 10 at 10-11 ¶ 24; *see also* ECF 14 at 7 ¶14 (explaining that if new curriculum is required, Oregon would need to hire an external contractor to produce the updated curriculum); ECF 19 at 9 ¶ 21 ("Discontinuation represents a substantial gap in preventative education and community engagement efforts."); ECF 22 at 6-7 ¶ 19 ("If Maine Family Planning loses PREP funding, [it] would be unable to meet its obligations to provide age-

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

24

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

appropriate and medically accurate education to youth."); ECF 34 at 7 ¶ 18 ("The absence of this funding leaves Wisconsin School districts without a specifically funded position to ensure Human Growth and Development statute compliance."); ECF 32 at 18 ¶ 48 ("[T]ermination of these awards and loss of staff would haphazardly interrupt student education and engagement.").

HHS's lack of a reasoned explanation and its failure to consider Plaintiffs' serious reliance interests easily establishes the arbitrary and capricious nature of the Gender Conditions. *See R.I. Coalition Against Domestic Violence v. Kennedy*, No. 25-cv-342-MRD-PAS, 2025 WL 2988705, at *7 (Oct. 23, 2025) (finding similar condition on grant funding arbitrary and capricious where "nothing in the Defendants' opposition articulates a 'satisfactory explanation' for their decision to implement the Challenged Conditions, let alone discusses the process they engaged in to arrive at such decision."); *Or. Council for Humanities v. United States DOGE Serv.*, 794 F.Supp.3d 840, 890 (D. Or. 2025) (holding grant terminations were arbitrary and capricious where agency failed to consider reliance interests and failed to give a reasoned explanation).

Nothing in the administrative record should change this Court's earlier conclusion that there is "no evidence that [HHS] considered any reliance interests[,]" nor do Defendants have anything to point to. ECF 81 at 43. They make only one self-serving argument that HHS's directive "does not retroactively penalize grantees" and that it instead "merely clarifies future program compliance consistent with the law." ECF 99 at 29-30. But the unrebutted evidence establishes that this is patently false. The Gender Conditions will cause widespread disruption and gaps in programming and will inflict innumerable harm on grantees and youth. Plaintiff States reasonably relied on the clear language and purpose of the enabling statutes as well as HHS's prior approval of the same curricula, and HHS's failure to consider such factors renders its actions unlawful.

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

25

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

3.      **Defendants' actions discriminate on the basis of sex**

The arbitrary and capricious nature of the Gender Conditions is likewise evident from the fact that HHS itself recognizes that gender identity discrimination is discrimination based on sex. Under their authorizing statutes, PREP and SRAE grants are both subject to 42 U.S.C. § 708 which prohibits discrimination on the basis of sex under any grant funded program. 42 U.S.C. § 713(d)(2)(B)(vi); *id.* § 710(d)(1). In its own rule, HHS has interpreted sex discrimination to include gender identity. 45 C.F.R. § 75.300(e)(8). Accordingly, the Gender Conditions contradict HHS's own position on discrimination. This is quintessentially arbitrary and capricious. *See, e.g.*, *M.S.L. v. Bostock*, No. 6:25-cv-01204-AA, 2025 WL 2430267, at *12 (D. Or. Aug. 21, 2025) (holding agency's "fail[ure] to follow its own regulations" was "arbitrary and capricious").

Defendants argue the Gender Conditions do not equate to sex discrimination because there is a difference "between participant eligibility (nondiscrimination) and curriculum content (statutory scope)." ECF 99 at 28. This Court previously (and correctly) rejected that argument as absurd. The Gender Conditions bar transgender, gender diverse, and DSD youth from participation in any meaningful sense. They not only prohibit these youth from receiving medically accurate information necessary for them to make responsible decisions; they prohibit PREP and SRAE programs and educators from even acknowledging the *existence* of those youth.

Defendants' reliance on the HHS Responsible Fatherhood program does not prove that the government has carte blanche to discriminate in programmatic content. When Congress enacted the Responsible Fatherhood and Healthy Families Act in 2006, it made detailed findings about the benefits of two-parent families, and it identified specific, well-documented challenges associated with the absence of fathers. Responsible Fatherhood and Healthy Families Act of 2006, S. 3607, 109th Congress, § 2. Against that backdrop, the Responsible Fatherhood program is a narrowly

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

26

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

targeted social services program designed to address a specific, documented problem: low parental involvement by noncustodial fathers. *See id.* The program supplements, rather than displaces, other family support services; it neither reduces benefits available to women nor stigmatizes women as a class. By contrast, the Gender Conditions functionally exclude transgender, gender diverse and DSD youth from participation in sexual health education programming designed to reach all youth. That exclusion is not a tailored response to a documented programmatic need; it is a categorial denial of access masquerading as a curricula choice.

### 4.    Defendants' actions are pretextual

Defendants' imposition of the Gender Conditions is also arbitrary and capricious because it is an impermissible pretextual justification for the predetermined goal of erasing transgender, gender diverse, and DSD individuals. *E.g.*, *Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019) ("The reasoned explanation requirement of administrative law, after all, is meant to ensure that agencies offer genuine justifications for important decisions[.]"); *Saget v. Trump*, 375 F. Supp. 3d 280, 361 (E.D.N.Y. 2019) ("An agency's actions are arbitrary and capricious under the APA if they are pretextual") (citing *Cowpasture River Pres. Ass'n v. Forest Serv.*, 911 F.3d 150, 176-79 (4th Cir. 2018)). Although courts generally "presume good faith and regularity," the presumption is unwarranted where there is "clear evidence to the contrary." *United States v. Chem. Found.*, 272 U.S. 1, 14-15 (1926).

In its April 2025 letter, HHS asked Plaintiff States to submit their curricula for a "medical accuracy review." AR ECF 90-1. But in its August 2025 PREP Directive, HHS stated that it was "changing [its] planned course of action" and refraining from conducting a medical accuracy review until *after* Plaintiff States removed "gender ideology" from their materials. AR ECF 90-2. HHS acknowledged that "these curricula and other program materials were previously approved"

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

27

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

but claimed that "the prior administration erred" in doing so. *Id.* As discussed above, the administrative record contains no data, findings, or analysis supporting this demand, and the only reason offered by HHS was that the content it was "going to review for medical accuracy is outside of the subjects that are statutorily authorized in [the] program." *Id.*

HHS's justification strains credulity when viewed in the broader context of the agency's own incendiary comments that describe gender diverse youth in inflammatory terms and threaten punitive action. Just five days before HHS sent the PREP Directive to the States—and after it terminated California's PREP grant funding for refusing to erase transgender students from its PREP curricula—HHS issued a press release declaring, "[I]n a disturbing and egregious abuse of federal funds, California has been using taxpayer money to teach curricula that could encourage kids to contemplate mutilating their genitals." Press Release, U.S. Dep't of Health & Hum. Servs., HHS Defunds California's Attempt to Indoctrinate Children with Gender Ideology, (Aug. 21, 2025), https://www.hhs.gov/press-room/hhs-defunds-californias-attempt-indoctrinate-children-gender-ideology.html (last accessed Feb. 19, 2026). The release further referred to "radical gender ideology," "egregious gender ideology," and "delusional gender ideology." *Id.* The press release warns that, "accountability is coming for every state that uses federal funds to teach children delusional gender ideology." *Id.*

These contemporaneous statements reveal the agency's true motivations and confirm that HHS's proffered justification is contrived. This conclusion is reinforced by HHS's complete disregard of the statutory purpose of these programs and the ample empirical evidence establishing that transgender, gender diverse, and DSD youth are high-risk, vulnerable, and in need of the very programs from which they are being excluded. HHS's explanation cannot withstand scrutiny. The Gender Conditions are a product of pretext, not reasoned decisionmaking.

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

28

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

## C.    Defendants' Actions Are Contrary to Constitutional Right

Because the Gender Conditions clearly violate the PREP and SRAE authorizing statutes and are arbitrary and capricious, Defendants' motion for summary judgment fails, and summary judgment should be granted to Plaintiff States on those bases alone. The Court need not consider their equally obvious constitutional deficiencies. *See Al Otro Lado v. Exec. Off. for Immigr. Rev.*, 138 F.4th 1102, 1123 (9th Cir. 2025) (reaffirming the "longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.") (internal quotation marks omitted). Regardless, HHS's imposition of the Gender Conditions also violates the APA because it is contrary to constitutional right. The APA requires a court to "hold unlawful and set aside agency action . . . found to be . . . contrary to constitutional right [or] power[.]." 5 U.S.C. § 706(2)(B). For the reasons explained below, because the Gender Conditions violate the Spending Clause and the separation of powers doctrine, they also violate the APA.

## D.    The Gender Conditions Violate the Spending Clause

Even if HHS had the authority to attach the Gender Conditions to the PREP and SRAE grants—which it does not—the conditions violate the Spending Clause. The federal government may attach conditions to the receipt of federal funds, but those conditions must comply with constitutional guardrails to ensure that States "voluntarily and knowingly" accept funding conditions. *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17, 25 (1981). Congress's power to legislate under the spending power "does not include surprising participating states with post acceptance or 'retroactive' conditions." *Id.* at 25; *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 584 (2012). The Spending Clause also requires that States have clear notice of any conditions on federal funds and that such conditions be imposed "unambiguously." *Nat'l Fed'n of*

*Indep. Bus.*, 567 U.S. at 583 (quoting *Pennhurst*, 451 U.S. at 17); *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006). And conditions must be related "to the federal interest in particular national projects or programs." *South Dakota v. Dole*, 483 U.S. 203, 207-08 (1987) (citation modified). The Gender Conditions violate each of these requirements.

### 1.       The conditions are impermissibly retroactive

The Gender Conditions first violate the Spending Clause because they are impermissibly retroactive. The subject line of the PREP Directive letter explicitly indicates that it concerns PREP grants for fiscal years 2023, 2024, and 2025. *See, e.g.*, ECF 7-21 at 2 ("RE: State Personal Responsibility Education Program grants for Fiscal Years 2023 (#2301WAPREP), 2024 (#2301WAPREP), and 2025 (#2501WAPREP)." The PREP Directive thus applies to awards from all three fiscal years, jeopardizing funding the States have already accepted and are using for programs that are well underway. And the letter's stated rationale, that "gender ideology" exceeds the authority of the authorizing statutes, is not limited to any specific grant period.

Defendants' entire defense is that, according to them, the Gender Conditions apply only prospectively. ECF 99 at 32. But they fail to identify any supporting language in the relevant documents and instead cite only to their own briefing in this litigation. *Id.* Defendants also rely on the fact that the NOAs have an award date of August 6, 2025 as proof of the Gender Conditions' alleged prospective application. *Id.* But even if those NOAs are only enforced prospectively, Defendants ignore that the PREP Directive plainly applies to awards from previous fiscal years. *See, e.g.*, ECF 7 at 21. In short, HHS imposed retroactive funding conditions on the States' preexisting programs—conditions that Congress never enacted. This is a clear violation of the Spending Clause, which prohibits Defendants from "surprising participating states with post-

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

30

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

acceptance or 'retroactive' conditions." *Pennhurst*, 451 U.S. at 25; *Nat'l Fed'n of Indep. Bus.*, 567 U.S. at 584.

###### 2. The conditions are impermissibly vague and ambiguous

The Gender Conditions next violate the Spending Clause because they are impermissibly vague and ambiguous. While the Gender Conditions prohibit content concerning "gender ideology" in PREP and SRAE programs, they do not define that term. Rather, the conditions simply state that "[r]ecipients are prohibited from including gender ideology in any program or service that is funded with this award" and that the enabling statute "does not authorize teaching students that gender identity is distinct from biological sex or boys can identify as girls and vice versa, or that there is a vast spectrum of genders that are disconnected from one's sex." ECF 7-13 at 2.

Defendants make no attempt to articulate a definition either. They claim only that since they "meticulously reviewed curricula submissions and outlined state-specific examples of impermissible teachings on gender ideology for removal" Plaintiff States should be able to intuit what HHS has prohibited. ECF 99 at 33. But this "I know it when I see it" definition (*see Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964) (Stewart J., concurring)) cannot be constitutionally applied to condition federal funds under the Spending Clause. *See Arlington*, 548 U.S. at 298 (holding that conditions under the Spending Clause must give "clear notice").

Moreover, the curricular content HHS identified as "examples" goes far beyond lessons that "teach[] students that gender identity is distinct from biological sex or boys can identify as girls and vice versa, or that there is a vast spectrum of genders that are disconnected from one's sex." ECF at 26. Indeed, the PREP Directive is egregiously broad, even demanding that States remove content instructing facilitators to create respectful educational environments. For example, HHS demanded that Washington remove information from a teacher's guide about how to support

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

31

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

transgender and non-binary youth and offering teachers a list of resources. ECF 7-21 at 4. Likewise, it demanded that Delaware and other states remove information instructing facilitators to "[d]emonstrate acceptance and respect for all participants, regardless of personal characteristics, including race, cultural background, religion, social class, sexual orientation or gender identity." ECF 19-4 at 4. And the PREP Directive admits it is "not setting forth all of the . . . language" Defendants believe constitutes "gender ideology" but is merely "providing a general description and examples" of some of the "problematic" language. ECF 7-19 at 4 note 2.

Simply put, "gender ideology" is an unscientific and "likely undefinable" term that HHS wields as a catch-all to justify sweeping and discriminatory policy changes. *See* ECF 81 at 57. Given the lack of definition, and the broad range of material deemed by HHS as "problematic[,]" States cannot reasonably determine which of their programs comply with the Gender Conditions and which do not. On the contrary, the conditions provide no intelligible standard and only raise numerous questions about what States can and cannot say in their curricula or in their classrooms. Is the word "transgender" banned? Must gender diverse instructors or program administrators conceal their identities when performing grant-related activities? Are states banned from allowing students to speak about their own experiences? Are teachers banned from offering LGBTQ+ crisis and support resources to at-risk youth? There are no clear answers to these questions, and that is precisely the problem. *See Pennhurst State Sch.*, 451 U.S. at 17 (States "cannot knowingly accept conditions of which they are 'unaware' or which they are 'unable to ascertain.'"); *see also Kennedy*, 2025 WL 2988705, at *9 (concluding plaintiffs facing similar gender ideology prohibitions were "left unsure whether . . . using preferred pronouns to refer to a non-binary person would 'promote' 'gender ideology.'").

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

32

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

Defendants claim the conditions are not ambiguous because each State can contact its FYSB Federal Project Officer for clarification. ECF 99 at 32-33. But the States' ability to seek clarification does not relieve Defendants of their obligation to provide "unambiguously" clear notice when issuing the conditions. It is the government who bears the burden of clarity—not the recipients—and such clarity must be provided *before* acceptance. *See Pennhurst*, 451 U.S. at 17. Defendants' reliance on *Bennett v. Kentucky of Education*, 470 U.S. 656 (1985) does not compel a different conclusion. *Bennett* involved a dispute about the application of an unambiguous statutory condition to a particular factual circumstance; not a dispute about whether the statutory condition was ambiguous in the first place. *See id.* at 666 ("There was no ambiguity with respect to this condition[.]"). And *Bennett* does not stand for the proposition that the government may impose substantively ambiguous conditions on the basis that recipients can later seek clarification. Quite the opposite. The *Bennett* court declined to adopt the government's argument that the Secretary could rely on "any reasonable interpretation" of the relevant grant condition and reaffirmed that compliance and liability are determined by "the legal requirements in place when the grants were made." *Id.* at 670. *Bennett* does not help Defendants escape the obvious: the Gender Conditions fail to provide clear notice and cannot be cured by post hoc rationalizations, so they are unconstitutional under the Spending Clause.

### 3. The conditions fail the Spending Clause's "relatedness" requirement

The Gender Conditions also violate the Spending Clause because they are unrelated to the programs Congress created. Spending Clause conditions must be related "to the federal interest in particular national projects or programs." *Dole*, 483 U.S. at 207-08 (citation modified). But the Gender Conditions that HHS imposed—blanket prohibitions on including "gender ideology" in any program receiving PREP or SRAE funds—directly *conflict* with the statutes' language and

purpose. As discussed above, the plain language of the enabling statutes demonstrates Congress's intent to provide youth with medically accurate, complete, and culturally appropriate information to help reduce risky sexual behavior and to prepare youth for adulthood by exploring topics like relationships, adolescent body changes, and body image.

Yet HHS's funding conditions *exclude* topics that further the statutes' objectives. For example, HHS directed Washington to remove a statement from a high school's curriculum that "[p]eople of all sexual orientations and gender identities need to know how to prevent pregnancy and STOs [sic], either for themselves or to help a friend." ECF 7-21 at 5. Minnesota was further directed to remove the following statement from a youth program facilitator's introduction, despite the statement furthering the objective of the statutes: "We know that sometimes lesbian, gay, bisexual, transgender, and queer or questioning young people don't have access to information and services that is for them. That's why we're here, to spend some time together talking about LGBTQ+ sexual healthcare in particular." ECF 16-7 at 3.

There is no plausible argument that requiring *removal* of a statement that "[p]eople of all sexual orientations and gender identities need to know how to prevent pregnancy and STOs[sic]" serves to *promote* sexual risk avoidance education. On the contrary, such a directive only serves to erase transgender, gender diverse, and DSD youth and deprive them of health information specific to their individual circumstances. Depriving youth of critical sexual health information does the exact *opposite* of what Congress intended. *See* ECF 8 at 12 ¶ 39 ("Education about gender identity is integral to teaching about sexual health including abstinence and contraception."); *see also* ECF 8 at 14 ¶ 43 ("If the educational programs funded by the PREP or SRAE grants incorrectly insist that sex and gender are binary, they cannot adequately educate transgender and gender diverse adolescents or adolescents with DSD in accordance with the PREP and SRAE enabling

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

34

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

statutes."). For these reasons, the Gender Conditions run afoul of the Spending Clause's "relatedness" requirement.

**E.      The Gender Conditions Violate the Separation of Powers Doctrine**

Defendants' attempt to impose funding conditions that are contrary to the enabling statutes also violates the Separation of Powers doctrine. Congress possesses exclusive power to legislate, and the Constitution vests Congress—not the Executive—with the spending power. U.S. Const. art. I, § 1; *id.* § 8, cl. 1. The Executive authority is limited to those powers specifically conferred by the Constitution and federal statutes. *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952). The executive power "does not include a power to revise clear statutory terms." *Util. Air Reg. Grp. v. EPA*, 573 U.S. 302, 327 (2014). There is "no provision in the Constitution" that authorizes the Executive "to enact, to amend, or to repeal statutes," or to "decline to follow a statutory mandate or prohibition simply because of policy objections." *City & County of San Francisco v. Trump*, 897 F.3d 1225, 1232 (2018) (citing *Clinton v. City of New York*, 524 U.S. 417, 438 (1998)).

Courts around the country agree that federal agencies have no power to unilaterally impose conditions on federal funding without Congressional authorization. *See City & County of San Francisco*, 897 F.3d at 1231, 1234-35 ("withhold[ing] all federal grants from so-called 'sanctuary' cities and counties" without congressional authorization violated separation of powers); *City of Chicago v. Barr*, 961 F.3d 882, 892 (7th Cir. 2020) (imposing "extra-statutory conditions on federal grant awards as a tool to obtain compliance with [the executive's] policy objectives strikes at the heart of . . . the separation of powers."). Courts have also held that funding conditions requiring compliance with the executive definitions of "gender ideology" violate the separation of powers. *Washington v. Trump*, 768 F. Supp. 3d 1239, 1261-63 (W.D. Wash. 2025) (finding that Congress

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

35

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

never conditioned federal funding on compliance with "gender ideology" funding conditions, which violated separation of powers); *King County v. Turner*, 785 F. Supp. 3d 863, 885-88 (W.D. Wash. June 3, 2025) ("gender ideology" and anti-DEI funding conditions violated separation of powers; *PFLAG, Inc. v. Trump*, 769 F. Supp. 3d 405, 431-43 (D. Md. 2025) (conditioning funding on recipients' denying gender-affirming care violated separation of powers).

Defendants attempt to distinguish these "gender ideology" funding cases on the basis that the conditions in those cases were imposed by President Trump's "gender ideology" Executive Order. ECF 99 at 34. But as this Court previously held that "is a distinction without a difference." ECF 81 at 53. Defendants fail to cite any authority that the mechanism by which the Executive attempts to impose extra-statutory funding conditions alters the constitutional analysis. Whether implemented through agency action or executive order, the result is the same—the Executive Branch asserts policymaking and spending authority that the Constitution assigns to Congress. Defendants' actions directly usurp Congress's role and violate the Separation of Powers doctrine.

## IV.    CONCLUSION

This court should deny Defendants' motion for summary judgment and grant the relief requested by Plaintiff States in their concurrently filed cross-motion for summary judgment.

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 10,994 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

36

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

DATED this 20th day of February 2026.

DAN RAYFIELD
Attorney General
State of Oregon

*s/ Brian S. Marshall*
BRIAN SIMMONDS MARSHALL #196129
LEANNE HARTMANN #T25070201, Mass.
BBO #667852
Senior Assistants Attorney General
CARTER BRACE #243828
100 SW Market Street
Portland, OR 97201
971-673-1880
Brian.S.Marshall@doj.oregon.gov
Leanne.Hartmann@doj.oregon.gov
Carter.Brace@doj.oregon.gov
*Counsel for Plaintiff State of Oregon*

NICHOLAS W. BROWN
Attorney General
State of Washington

*s/ Kelly Paradis*
KELLY PARADIS
WILLIAM MCGINTY
Deputy Solicitors General
LUCY WOLF
MOLLY POWELL
ALEXIA DIORIO
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744
kelly.paradis@atg.wa.gov
william.mcginty@atg.wa.gov
lucy.wolf@atg.wa.gov
molly.powell@atg.wa.gov
alexia.diorio@atg.wa.gov
*Counsel for Plaintiff State of Washington*

KEITH ELLISON
Attorney General
State of Minnesota

*s/ Lindsey E. Middlecamp*
LINDSEY E. MIDDLECAMP
Special Counsel, Rule of Law
Office of the Minnesota Attorney General
445 Minnesota St., Suite 600
St. Paul, MN 55101
651-300-0711
lindsey.middlecamp@ag.state.mn.us
*Counsel for Plaintiff State of Minnesota*

PHILIP J. WEISER
Attorney General
State of Colorado

*s/ Kevin G. Webster*
KEVIN G. WEBSTER
Assistant Attorney General
1300 Broadway, 10th Floor
Denver, CO 80203
720-508-6086
kevin.webster@coag.gov
*Counsel for Plaintiff State of Colorado*

WILLIAM TONG
Attorney General
State of Connecticut

*s/ Andrew M. Ammirati*
ANDREW M. AMMIRATI
Assistant Attorney General

KATHLEEN JENNINGS
Attorney General
State of Delaware

*s/ Ian R. Liston*
IAN R. LISTON
Director of Impact Litigation

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

37

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

165 Capitol Ave
Hartford, CT 06106
860-808-5090
Andrew.Ammirati@ct.gov
*Counsel for Plaintiff State of Connecticut*

VANESSA L. KASSAB
Deputy Attorney General
ROSE GIBSON
Assistant Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
302-683-8899
ian.liston@delaware.gov
vanessa.kassab@delaware.gov
rose.gibson@delaware.gov
*Counsel for Plaintiff State of Delaware*

BRIAN L. SCHWALB
Attorney General
District of Columbia

ANNE E. LOPEZ
Attorney General
State of Hawaiʻi

*s/ Jess E. Feinberg*
JESS E. FEINBERG
Assistant Attorney General
400 6th Street, NW, Suite 10100
Washington, D.C. 20001
202-735-6637
jess.feinberg@dc.gov
*Counsel for Plaintiff District of Columbia*

*s/ Kalikoʻonālani D. Fernandes*
DAVID D. DAY
Special Assistant to the Attorney General
KALIKOʻONĀLANI D. FERNANDES
Solicitor General
425 Queen Street
Honolulu, HI 96813
808-586-1360
kaliko.d.fernandes@hawaii.gov
*Counsel for Plaintiff State of Hawaiʻi*

KWAME RAOUL
Attorney General
State of Illinois

AARON M. FREY
Attorney General
State of Maine

*s/ Cara Hendrickson*
CARA HENDRICKSON
Executive Deputy Attorney General
ELIZABETH MORRIS
Deputy Chief, Special Litigation Bureau
115 S. LaSalle Street
Chicago, IL 60603
312-814-3000
cara.hendrickson@ilag.gov
elizabeth.morris@ilag.gov
*Counsel for Plaintiff State of Illinois*

*s/ Kevin J. Beal*
KEVIN J. BEAL
Assistant Attorney General
111 Sewall Street, 6th Floor
6 State House Station
Augusta, ME 04333-0006
207-626-8800
kevin.beal@maine.gov
*Counsel for Plaintiff State of Maine*

ANTHONY G. BROWN

ANDREA JOY CAMPBELL

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

38

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

Attorney General
State of Maryland

*s/ Lauren Gorodetsky*
LAUREN GORODETSKY
Assistant Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202
410-576-7057
lgorodetsky@oag.state.md.us
*Counsel for Plaintiff State of Maryland*

Attorney General
Commonwealth of Massachusetts

*s/ Allyson Slater*
ALLYSON SLATER
Director, Reproductive Justice Unit
MORGAN CARMEN
Assistant Attorney General
One Ashburton Place
Boston, MA 02108
617-727-2200
allyson.slater@mass.gov
morgan.carmen@mass.gov
*Counsel for Plaintiff Commonwealth of
Massachusetts*

DANA NESSEL
Attorney General
Michigan

*s/ Neil Giovanatti*
NEIL GIOVANATTI
DANIEL PING
*Assistant Attorneys General*
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
517-335-7603
GiovanattiN@michigan.gov
PingD@michigan.gov
*Counsel for Plaintiff State of Michigan*

JENNIFER DAVENPORT
Acting Attorney General
State of New Jersey

*s/ Farng-Yi Foo*
FARNG-YI FOO
GEOFFREY MCGEE
*Deputy Attorneys General*
124 Halsey Street, 5th Floor
Newark, NJ 07101
609-696-5279
Farng-Yi.Foo@law.njoag.gov
Geoffrey.McGee@law.njoag.gov
*Counsel for Plaintiff State of New Jersey*

LETITIA JAMES
Attorney General
State of New York

*s/ Galen Leigh Sherwin*
GALEN LEIGH SHERWIN
Special Counsel for Reproductive Justice
28 Liberty Street
New York, NY 10005
212-426-5667
galen.sherwin@ag.ny.gov
*Counsel for Plaintiff State of New York*

PETER F. NERONHA
Attorney General
State of Rhode Island

*s/ Riley M. O'Brien*
RILEY M. O'BRIEN
*Special Assistant Attorney General*
150 South Main Street
Providence, RI 02903
401-274-4400
robrien@riag.ri.gov
*Counsel for Plaintiff State of Rhode Island*

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

39

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

JOSHUA L. KAUL
Attorney General of Wisconsin

*s/ Aaron J. Bibb*
AARON J. BIBB
Assistant Attorney General
Wisconsin Department of Justice
PO Box 7857
Madison, WI 53707-7857
608-266-0810
aaron.bibb@wisdoj.gov
*Counsel for Plaintiff State of Wisconsin*

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744