NICHOLAS W. BROWN
Attorney General for the State of Washington
Kelly Paradis
William McGinty
Deputy Solicitors General
Lucy Wolf
Molly Powell
Alexia Diorio
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744
kelly.paradis@atg.wa.gov
william.mcginty@atg.wa.gov
lucy.wolf@atg.wa.gov
molly.powell@atg.wa.gov
alexia.diorio@atg.wa.gov
*Counsel for Plaintiff State of Washington*

[Additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STATE OF WASHINGTON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,<br><br>Defendants. | No. 6:25-cv-01748-AA<br><br>PLAINTIFF STATES' CROSS-MOTION FOR SUMMARY JUDGMENT |

PLAINTIFF STATES' CROSS-
MOTION FOR SUMMARY
JUDGMENT
NO. 6:25-cv-01748-AA

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................... 1

II.  ADDITIONAL FACTS.......................................................................................... 2

   A.  The Gender Conditions Inflict Irreparable Harm on Plaintiff States .................................. 2

   B.  Defendants Have Twice Violated the Preliminary Injunction and Expressed Their Intent to Reimplement the Gender Conditions Should the Preliminary Injunction Ever Dissolve ................................................................................................................................. 6

III. ARGUMENT ......................................................................................................... 7

   A.  The Court Should Vacate the Gender Conditions ............................................................ 8

   B.  The Court Should Permanently Enjoin Defendants From Imposing or Enforcing the Gender Conditions and Any Materially Similar Terms Against Plaintiffs ...................... 11

      1.  Prohibiting inclusive PREP and SRAE curricula inflicts irreparable harm upon Plaintiff States ............................................................................................................. 11

      2.  Legal remedies, including vacatur, are inadequate ...................................................... 14

      3.  The balance of equities and the public interest weigh in Plaintiff States' favor ........... 16

   C.  The Court Should Issue a Declaratory Judgment ............................................................ 16

IV.  CONCLUSION..................................................................................................... 17

PLAINTIFF STATES' CROSS-
MOTION FOR SUMMARY
JUDGMENT
NO. 6:25-cv-01748-AA

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n,*
  988 F.2d 146 (D.C. Cir. 1993) ................................................................. 9

*Amoco Prod. Co. v. Vill. of Gambell, AK,*
  480 U.S. 531 (1987) ............................................................................... 11

*Aubin v. Bonta,*
  665 F. Supp. 3d 1097 (N.D. Cal. 2023) .................................................. 16

*Bilbrey by Bilbrey v. Brown,*
  738 F.2d 1462 (9th Cir. 1984) ................................................................ 17

*Cal. Cmtys. Against Toxics v. EPA,*
  688 F.3d 989 (9th Cir. 2012) .................................................................... 9

*California v. Azar,*
  911 F.3d 558 (9th Cir. 2018) .................................................................. 16

*Cmty. Legal Servs. in E. Palo Alto v. Dep't of Health & Hum. Servs.,*
  780 F. Supp. 3d 897 (N.D. Cal. 2025) .................................................... 12

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.,*
  603 U.S. 799 (2024) ................................................................................. 8

*Doe v. San Diego Unified Sch. Dist.,*
  19 F.4th 1173 (9th Cir. 2021) ................................................................. 16

*eBay Inc. v. MercExchange,*
  *LLC,* 547 U.S. 388 (2006) ..................................................................... 11

*Griffin v. HM Fla.-ORL, LLC,*
  144 S. Ct. 1 (2023) ................................................................................... 8

*Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.,*
  736 F.3d 1239 (9th Cir. 2013) ................................................................ 11

*King County v. Turner,*
  785 F. Supp. 3d 863 (W.D. Wash. 2025) ................................................ 12

*League of Women Voters of U.S. v. Newby,*
  838 F.3d 1 (D.C. Cir. 2016) ................................................................... 16

PLAINTIFF STATES' CROSS-
MOTION FOR SUMMARY
JUDGMENT
NO. 6:25-cv-01748-AA

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

*Mont. Wildlife Fed'n v. Haaland*,
127 F.4th 1 (9th Cir. 2025) ................................................................... 8, 9, 10

*Nat. Grocers v. Rollins*,
157 F.4th 1143 (9th Cir. Oct. 31, 2025) ................................................... 9

*Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*,
145 F.3d 1399 (D.C. Cir. 1998) .............................................................. 8

*Planned Parenthood of Greater Wash. & N. Idaho v. Dep't of Health & Hum. Servs.*,
328 F. Supp. 3d 1133 (E.D. Wash. 2018) ............................................. 13, 16

*Pollinator Stewardship Council v. EPA*,
806 F.3d 520 (9th Cir. 2015) .................................................................. 9

*Sierra Club v. Dep't of Agric., Rural Utils. Serv.*,
841 F. Supp. 2d 349 (D.D.C. 2012) ........................................................ 13

*State v. Bureau of Land Mgmt.*,
286 F. Supp. 3d 1054 (N.D. Cal. 2018) .................................................. 13

*TrafficSchool.com, Inc. v. Edriver Inc.*,
653 F.3d 820 (9th Cir. 2011) .................................................................. 11

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) ................................................................................ 9

*Valle del Sol Inc. v. Whiting*,
732 F.3d 1006 (9th Cir. 2013) ................................................................ 12

**Statutes**

28 U.S.C. § 2201(a) ..................................................................................... 19

5 U.S.C. § 702 ............................................................................................. 19

5 U.S.C. § 703 ............................................................................................. 19

5 U.S.C. § 706(2) ........................................................................................ 9

Colo. Rev. Stat. § 22-1-128 ........................................................................ 6

Or. Admin. R. 581-022-2050(6)(q) ............................................................ 6

Or. Admin. R. 581-022-2050(6)(s) ............................................................. 6

Or. Rev. Stat. § 336.455(2)(j) ..................................................................... 6

PLAINTIFF STATES' CROSS-
MOTION FOR SUMMARY
JUDGMENT
NO. 6:25-cv-01748-AA

iii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

Wash. Rev. Code § 28A.300.475 ................................................... 6

**Rules**

Fed. R. Civ. P. 57 .......................................................................... 19

LR 7-1(b) ..................................................................................... 1

**Other Authorities**

Laura Baams, *Sexual and gender diversity in schools: The impact of restrictive education policies on LGBTQ+ adolescent development,* Child Development Perspectives, (January 28, 2026) ......................................................................... 5

Maureen Rabbitte, *Sex Education in School, are Gender and Sexual Minority Youth Included? A Decade in Review*, Am. J. Sexual Educ. 15(4) 530-42 (Oct 13, 2020) .................. 4

Sandra Anti Eyiah & Adrienne Duke-Marks, *Evaluating Associations of the Personal Responsibility and Education Program (PREP) with Adolescents' Sexual Health and Relationship Advocacy*, 20 Am. J. Sexuality Educ. 1 (2025) .................................................... 3

PLAINTIFF STATES' CROSS-
MOTION FOR SUMMARY
JUDGMENT
NO. 6:25-cv-01748-AA

iv

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

## LR 7-1 CERTIFICATION

Counsel for Plaintiff States certify that the parties conferred regarding this motion and were unable to resolve the need for this motion. Defendants oppose the relief sought herein.

## I.    INTRODUCTION

As argued in Plaintiff States' response to Defendants' motion for summary judgment, Plaintiff States are entitled to judgment as a matter of law. *See generally* ECF 102. Those arguments will not be repeated here.[1] Instead, this cross-motion will focus on the "relief sought" by the Plaintiff States (*see* LR 7-1(b)), and explain why the Court should vacate Defendants' unlawful agency actions, enjoin them from being implemented in their current form or by some other means, and issue a declaratory judgment that Defendants have no authority to prohibit the inclusion of curricula regarding transgender, gender diverse, or differences in sexual development (DSD) populations in PREP or SRAE programs.

Defendants are determined to ban all mention of transgender, gender diverse, and DSD students in comprehensive sexual health education. Defendants recently issued 2026 Notices of Award (NOAs) indicating that the enjoined Gender Conditions will not be applied so long as "the injunction remains in place." *See* Second Declaration of Lucy Wolf (Second Wolf Decl.), Ex. J at 2; *id.* Ex. K at 2. In addition, Defendants have twice violated the terms of the preliminary injunction as it currently stands. And, in their motion for summary judgment, they expressly ask for this Court's permission to conduct "case-by-case" reviews and determine whether Plaintiff States'

---

[1] On January 30, 2026, Defendants filed a Motion for Summary Judgment and Memorandum in Support. ECF 99. On February 20, 2026, Plaintiffs filed a Response [Opposition] to Defendants' Motion for Summary Judgment, ECF 102, and contemporaneously file the instant Cross-Motion for Summary Judgement. Plaintiffs submit the Opposition to Defendants' Motion for Summary Judgment as the Memorandum of Law in support of the Cross-Motion for Summary Judgment and incorporate all arguments in that Opposition herein.

PLAINTIFF STATES' CROSS-MOTION FOR SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

curricula are medically accurate and complete with an obvious eye toward imposing the same blanket prohibition already preliminarily enjoined by other means. Defendants have not cited to any statutory or regulatory provision showing their "authority to determine what is medically accurate or that grants [them] authority to 'defin[e] the limits of permissible [PREP or SRAE] content.'" ECF 81 at 36. But even assuming that Defendants have some oversight authority to ensure state curricula meet statutory requirements, they should not be permitted to impose substantially identical requirements in some other guise should they lose on the merits in this case. For these reasons, Plaintiffs respectfully request this Court grant summary judgment to the Plaintiff States, vacate the Gender Conditions as well as issue a permanent injunction and a declaratory judgment to prevent Defendants from imposing the Gender Conditions—or any materially similar terms—retroactively or in the future.

## II.    ADDITIONAL FACTS

Plaintiff States incorporate their statement of facts from their response to Defendants' motion for summary judgment, ECF 102, and provide this additional statement of facts regarding the numerous harms to Plaintiff States that flow directly from the Gender Conditions.

### A.    The Gender Conditions Inflict Irreparable Harm on Plaintiff States

Prior to this Court's preliminary injunction, Defendants' implementation of the Gender Conditions caused immediate harm. The Gender Conditions put Plaintiff States in the untenable situation of being forced to choose between losing federal funding for essential public health education programs or complying with unlawful funding conditions that undermine the central purpose of the programs and conflict with state and federal laws and policies. The loss of PREP and SRAE funding will significantly impair, or even prevent, Plaintiff States from providing essential sexual health education, especially to youth populations that need this education the most.

PLAINTIFF STATES' CROSS-
MOTION FOR SUMMARY
JUDGMENT
NO. 6:25-cv-01748-AA

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

Without a permanent injunction, Defendants will undoubtedly reissue the Gender Conditions and cause widespread harm throughout Plaintiff States.

PREP and SRAE sexual health education programming successfully reduces teen pregnancy and STIs and prepares youth for adulthood. *See, e.g.*, Sandra Anti Eyiah & Adrienne Duke-Marks, *Evaluating Associations of the Personal Responsibility and Education Program (PREP) with Adolescents' Sexual Health and Relationship Advocacy*, 20 Am. J. Sexuality Educ. 1 (2025). The termination of PREP and SRAE funding will cause an immediate loss of at least $35 million to the Plaintiff States. *See* ECF 7-22 at 6. Without federal funding, Plaintiffs' PREP and SRAE programs will be "significantly impaired [in their] ability to deliver medically accurate and complete and culturally appropriate sexual health education services to youth."[2] As a result, many schools and community programs will no longer be able to reliably provide sexual health education services to the youth populations that need them most, including youth in juvenile detention centers, youth in foster care, homeless youth, pregnant or parenting youth, transgender youth, gender diverse youth, and DSD youth.[3] In particular, gender and sexual minority youth (whom data shows tend to experience "increased sexual risk behaviors and adverse health

---

[2] ECF 81 at 68; *See also* ECF 9 at 12 ¶ 35; ECF 11 at 7 ¶ 18; ECF 14 at 6 ¶ 13; ECF 15 at 9 ¶ 21; ECF 16 at 10 ¶ 30; ECF 17 at 8 ¶ 19; ECF 18 at 6 ¶ 18; ECF 19 at 9 ¶ 20; ECF 21 at 7 ¶ 18; ECF 22 at 9 ¶ 27; ECF 23 at 8 ¶¶ 16-20; ECF 24 at 6 ¶ 17; ECF 25 at 7 ¶ 19; ECF 27 at 7 ¶¶ 19-20; ECF 28 at 7 ¶ 21; ECF 29 at 9 ¶ 26; ECF 32 at 16 ¶ 42-48; ECF 33 at 6 ¶ 18; ECF 35 at 8 ¶ 20; Suppl. Decl. Castillo at 3 ¶ 8; Decl. DeMartino at 6 ¶ 15; Decl. Tran at 5 ¶¶ 12-13.

[3] *See, e.g.*, ECF 18 at 6-7 ¶ 18 (Connecticut serves youth who are aging out of foster care, homeless youth, youth with HIV/AIDS, victims of human trafficking, pregnant or parenting youth who are under age 21, and youth who live in rural areas or areas with high teen birth rates; without PREP funding, Connecticut's state agency and its partners will not be as effective in administering and providing sexual health education); *see also* ECF 14 at 6 ¶ 13; ECF 15 at 9 ¶ 21; ECF 16 at 11-12 ¶ 30; ECF 17 at 7-8 ¶¶ 17, 19; ECF 19 at 9 ¶ 20; ECF 21 at 7 ¶ 18; ECF 24 at 6-7 ¶ 19; ECF 27 at 7 ¶ 19; ECF 34 at 8 ¶ 20; ECF 35 at 8 ¶ 20.

3

outcomes" compared to their heterosexual and cisgender peers)[4] are some of the students most at-risk for unplanned pregnancy and STIs who will not receive this critical education.[5]

Many Plaintiff States also fund state employee positions with PREP and SRAE grant money, and state agencies will be forced to terminate these positions should funding be cut.[6] Further, Plaintiff States and their PREP and SRAE program providers rely on access to vital training and technical support from subject matter experts—support that Plaintiffs will lose without proper funding.[7] State agencies already report that the Gender Conditions have created "immense confusion" and have "severely negatively impacted" their ability to plan for the future.[8]

Loss of federal funding for PREP and SRAE programming will result in "a significantly impaired ability to protect the public health," including an increase in long term costs through an inevitable increase in unplanned pregnancy, higher birth rates, and higher rates of HIV and other STIs among young people in vulnerable populations.[9] Moreover, a curriculum that includes

---

[4] Maureen Rabbitte, *Sex Education in School, are Gender and Sexual Minority Youth Included? A Decade in Review*, Am. J. Sexual Educ. 15(4) 530-42 (Oct 13, 2020). https://pmc.ncbi.nlm.nih.gov/articles/PMC7986966/.

[5] *See* ECF 7-23 at 2; ECF 7-24 at 2; ECF 12 at 6-7 ¶ 16 (services provided by PREP funding is "vital" and without them "youth in our school district, especially high-risk youth, will suffer"); ECF 13 at 6 ¶ 20; ECF 26 at 4-5 ¶ 13; ECF 29 at 9 ¶ 26; ECF 32 at 16-17 ¶ 42; ECF 33 at 6 ¶ 18.

[6] *See* ECF 9 at 9 ¶ 25 (three employees at risk); ECF 14 at 6 ¶ 12 (4.75 FTEs); ECF 15 at 8 ¶ 19 (2 employees); ECF 16 at 11 ¶ 28 (3 agency employees and 48 positions); ECF 17 at 7-8 ¶ 17 (7 employees); ECF 18 at 6 ¶ 16 (1.25 employees); ECF 21 at 6 ¶ 16 (1.5 employees); ECF 23 at 9 ¶ 17 (1.6 FTEs); ECF 27 at 6-7 ¶ 17 (1.3 FTEs).

[7] ECF 9 at 11 ¶ 33 (Cardea's training and technical assistance is "a crucially important part of fulfilling PREP program goals"); *see also* ECF 32 at 19 ¶ 52 (describing the "untenable position of terminating the eleven existing SRAE sub-grantee contracts and the funds already awarded therewith.").

[8] *See, e.g.*, ECF 11 at 6 ¶ 15; ECF 9 at 9 ¶ 25; ECF 25 at 7 ¶ 17.

[9] ECF 81 at 65, 68; ECF 7-11 at 12 ("Pregnancies and STIs pose negative consequences for both the teenagers who experience them and society, including billions of dollars in health care and taxpayer costs"); ECF 7-5 at 2 (noting that STIs cost the American healthcare system nearly $16 billion in healthcare costs); ECF 28 at 7 ¶ 22 ("[l]oss of PREP funding would threaten

---

PLAINTIFF STATES' CROSS-MOTION FOR SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

cisgender, transgender and gender diverse youth helps all youth better understand and assess the risks of sexual activity and reduces poor sexual health outcomes. ECF 8 at 12-13 ¶ 39 (describing potential pregnancy outcomes specific to transgender males, illustrating that "[i]f sexual education does not include a discussion of gender identity, adolescents cannot adequately understand their risk for pregnancy."). Defendants' action would further harm public health because studies show that "where inclusive sexual health information isn't provided to gender expansive youth, rates of suicidal ideation and suicide are higher."[10] And creating successful sexual health education programs necessarily requires collaboration across school districts, state agencies, and non-profit organizations. Without federal funding, the Plaintiff States will experience "a significant loss of public health infrastructure and capacity to reach youth, families, and communities." ECF 81 at 68.

Many States have enacted laws and policies prohibiting discrimination against transgender, gender diverse, and DSD youth or requiring gender-inclusive educational curricula.[11] The Gender Conditions may force Plaintiff States to "violate state anti-discrimination laws and policies." ECF 81 at 68. They also effectively prohibit Plaintiff States from effectuating state laws and policies promoting sexual health education that is comprehensive, medically and scientifically accurate,

---

Michigan's historic reductions in teen pregnancy, as the program is central to the state's prevention strategy").

[10] ECF 10 at 11-12 ¶ 27; *see also* Laura Baams, *Sexual and gender diversity in schools: The impact of restrictive education policies on LGBTQ+ adolescent development,* Child Development Perspectives, (January 28, 2026), https://doi.org/10.1093/cdpers/aadaf013. (An increase in inclusive school practices, including inclusive curricula, in the 2000s and 2010s led to LGBTQ+ youth feeling safer in school, less bullying-related victimization, and improved mental health. Recent restrictive education policies "represent a reversal of these gains, reintroducing systemic barriers that threaten the well-being of LGBTQ+ youth").

[11] *See, e.g.*, Wash. Rev. Code § 28A.300.475; Or. Rev. Stat. § 336.455(2)(j); Or. Admin. R. 581-022-2050(6)(q), (s); Colo. Rev. Stat. § 22-1-128; ECF 25 at 9 ¶ 21 (noting that to comply with Gender Conditions requires Maryland to violate state law).

PLAINTIFF STATES' CROSS-MOTION FOR SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

age-appropriate, and inclusive of all students, regardless of their protected class status. *Id.* at 66-68. The Gender Conditions undermine the States' sovereign interests in carrying out their own laws and policies that protect against discrimination, aim to foster an inclusive environment for all students, and strive to target underrepresented and at-risk populations including transgender, gender diverse, and DSD young people.

**B.    Defendants Have Twice Violated the Preliminary Injunction and Expressed Their Intent to Reimplement the Gender Conditions Should the Preliminary Injunction Ever Dissolve**

On January 9, 2026, the United States Department of Health and Human Services (HHS) sent PREP State Grantees an email seeking a Letter of Intent to request FY 2026 PREP funding, Second Wolf Decl. Ex. A, attaching 2025 Supplemental Terms and Conditions, that contained enjoined language per the Court's October 27, 2025 Order granting a Preliminary Injunction. *Id.* Ex. B at 2. When Plaintiffs' counsel emailed Defendants' counsel to inform them of Defendants' non-compliance with this Court's injunction and to request they ask Defendants to come into compliance, Second Wolf Decl. Ex. C at 2, Defendants' counsel responded that the inclusion of the enjoined language was an "oversight" and stated, "ACF plans to send an email to state grantees . . . reminding them of the PI, [and] clarifying that states are not bound by the gender ideology clause ***while the PI is in place***." Second Wolf Decl. Ex. D at 2 (emphasis added).

Then, on January 30, 2026, Defendants sent State Grantees 2026 PREP and SRAE NOAs that included the enjoined "gender ideology" language ("Recipients are prohibited from including gender ideology in any program or service that is funded with this award . . . "). Second Wolf Decl. Ex. E at 3; *id.* Ex. F at 3. The 2026 PREP and SRAE NOAs also linked to the 2025 PREP and SRAE Supplemental Terms and Conditions, which still included the enjoined language. Second Wolf Decl. Ex. B at 2-3; *id.* Ex. G at 3. Again, Plaintiffs' Counsel emailed Defendants' Counsel

PLAINTIFF STATES' CROSS-MOTION FOR SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

requesting Defendants withdraw and reissue the NOAs without the enjoined language and with links to the updated 2026 Terms and Conditions that did not include the enjoined language. Second Wolf Decl. Ex. H at 2. And again, Defendants' Counsel responded stating that the PREP and SRAE NOAs and Supplemental Terms and Conditions "inadvertently included the gender ideology condition." Second Wolf Decl. Ex. I at 2. They promised Defendants would remove the enjoined language from the PREP and SRAE NOAs and re-issue the NOAs, though they also noted that the 2026 Terms and Conditions are "still forthcoming" and would not include enjoined language. *Id.*

On February 10, 2026, Defendants re-issued the PREP and SRAE NOAs. Second Wolf Decl. Exs. J; *id.* Ex. K. Tellingly, the re-issued PREP and SRAE NOAs again qualified that the Supplemental Term and Condition prohibiting gender ideology "will not be applied to your program ***while the injunction remains in place.***" Second Wolf Decl. Exs. J at 2; *id.* Ex. K at 2 (emphasis added). Again, Defendants broadcast that the preliminary injunction is the only thing holding them back from prohibiting gender-inclusive sexual health education curriculum in PREP and SRAE programs.

### III.     ARGUMENT

Plaintiffs challenge three distinct agency actions: (1) the Notices of Award that prohibit "gender ideology" in PREP and SRAE programs; (2) the Supplemental Terms and Conditions that do the same; and 3) the PREP Directive letters that commanded the Plaintiff States to remove "gender ideology" from their programs. ECF 2 at 23. Each of these are final agency actions and Defendants do not argue the contrary. *Id.*; *see also* ECF 99 at 13-14 (recounting each of these actions taken by HHS). Plaintiffs refer to these three actions collectively as the "Gender Conditions."

PLAINTIFF STATES' CROSS-
MOTION FOR SUMMARY
JUDGMENT
NO. 6:25-cv-01748-AA

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

As thoroughly explained in Plaintiffs States' Response to Defendants' Motion for Summary Judgment, ECF 102, the Gender Conditions are unlawful and unconstitutional. They must be vacated. Additionally, Defendants should be enjoined from reimplementing them or materially similar terms or conditions. Finally, the Court should enter a declaratory judgment that the PREP and SRAE statutes do not prohibit the inclusion of transgender, gender diverse, or DSD student inclusive curricula.

## A.    The Court Should Vacate the Gender Conditions

The APA authorizes a court to "hold unlawful and set aside agency action." 5 U.S.C. § 706(2). "The Federal Government and the federal courts have long understood § 706(2) to authorize vacatur" of an unlawful agency action. *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 826-27 (2024) (Kavanaugh, J., concurring); *see also Mont. Wildlife Fed'n v. Haaland*, 127 F.4th 1, 50 (9th Cir. 2025) (vacatur is the "default remedy under the APA"). "When a federal court sets aside an agency action, the federal court vacates that order in much the same way that an appellate court vacates the judgment of a trial court." *Corner Post, Inc.*, 603 U.S. at 830 (Kavanaugh, J., concurring). The vacated "agency action is treated as though it had never happened." *Griffin v. HM Fla.-ORL, LLC*, 144 S. Ct. 1, 2 n.1 (2023) (Kavanaugh, J., respecting denial of stay). This means the parts of the agency action held unlawful are vacated as a whole— "not that their application to the *individual* petitioners is proscribed." *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998); *see also Corner Post, Inc.*, 603 U.S. at 830-31 (Kavanaugh, J., concurring) (collecting cases affirming decisions that "vacated the

PLAINTIFF STATES' CROSS-MOTION FOR SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

challenged agency rules rather than merely providing injunctive relief . . . [for] the specific plaintiffs").[12] This traditional APA remedy is appropriate here.

While courts "retain[] equitable discretion in limited circumstances to remand a decision without vacatur while the agency corrects its errors," *Mont. Wildlife Fed'n*, 127 F.4th at 50, those "limited circumstances" are not met here. In deciding whether to deviate from the usual remedy of vacatur, courts consider two factors: (1) "how serious the agency's errors are," and (2) "the disruptive consequences of an interim change that may itself be changed." *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (quoting *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993)).

Here, the first factor supports vacatur. As this Court held at the preliminary injunction stage, and for the reasons argued in Plaintiff States' Response brief, ECF 102, the Gender Conditions violate the APA for multiple reasons. They are contrary to the purpose and plain language of the enabling statutes, they are arbitrary and capricious for at least four reasons, and they are contrary to Constitutional right. Defendants' error is not merely "a technical or procedural one" but instead demonstrates "fundamental flaws." *Nat. Grocers*, 157 F.4th at 1170 (quoting *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015)). Defendants cannot correct some small aspect of the Gender Conditions to render them lawful, constitutional, and no longer arbitrary and capricious—the only remedy here is vacatur.

_____

[12] *See also Trump v. CASA, Inc.*, 606 U.S. 831, 847 n.10 (2025) (stating that "[n]othing" in that decision "resolves the distinct question whether the Administrative Procedure Act authorizes federal courts to vacate federal agency action"); *Nat. Grocers v. Rollins*, 157 F.4th 1143, 1170 n.7 (9th Cir. Oct. 31, 2025) (holding Ninth Circuit precedent regarding vacatur of unlawful agency action is reconcilable with intervening Supreme Court precedent).

PLAINTIFF STATES' CROSS-
MOTION FOR SUMMARY
JUDGMENT
NO. 6:25-cv-01748-AA

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

As to the second factor, it is the Gender Conditions that cause disruptive consequences, not vacatur of them. As this Court has recognized, Defendants' imposition of the Gender Conditions is likely to cause numerous disruptive consequences to Plaintiff States, including: "(1) a significantly impaired ability to deliver medically accurate and complete and culturally appropriate sexual health education services to youth; (2) a significant loss of public health infrastructure and capacity to reach youth, families, and communities; and (3) a significantly impaired ability to protect the public health." ECF 81 at 68. Additionally, the Court held the Gender Conditions likely force Plaintiff States to "violate state anti-discrimination laws and policies" and States "will likely suffer an inability to protect the public health because the sex health education they provide will be medically inaccurate and culturally inappropriate and will harm youth." *Id.* This Court has already preliminarily enjoined the Gender Conditions as to Plaintiff States, returning the PREP and SRAE programs to the status quo with few disruptive consequences. *See generally* ECF 81. Since Defendants acknowledge the prior administration "previously approved" the at-issue curricula, (*see e.g.*, AR ECF 90-2 at 4), maintaining the status quo through a permanent injunction will likewise be far less disruptive than imposing the Gender Conditions. As such, there is no basis to except the Gender Conditions from the "default remedy" under the APA. *Mont. Wildlife Fed'n*, 127 F.4th at 51-52.

For these reasons, the Court should vacate the Gender Conditions, including the August 26, 2025, PREP Directive Letters and the "gender ideology" language in the Notices of Award and Supplemental T&Cs.

PLAINTIFF STATES' CROSS-
MOTION FOR SUMMARY
JUDGMENT
NO. 6:25-cv-01748-AA

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

**B.    The Court Should Permanently Enjoin Defendants From Imposing or Enforcing the Gender Conditions and Any Materially Similar Terms Against Plaintiffs**

As described above, vacatur only voids Defendants' unlawful actions—it does not prevent Defendants from reimplementing the Gender Conditions through new notices of award, terms and conditions, or other mechanisms. For that reason, the Court should also issue a permanent injunction.

A permanent injunction is warranted when Plaintiffs show (1) they have "suffered an irreparable injury;" (2) "remedies available at law, such as monetary damages, are inadequate;" (3) "considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted;" and (4) "the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). "The scope of an injunction is within the broad discretion of the district court." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 829 (9th Cir. 2011).

**1.    Prohibiting inclusive PREP and SRAE curricula inflicts irreparable harm upon Plaintiff States**

Just as Plaintiff States showed "likely" irreparable harm sufficient to meet the preliminary injunction standard, so, too, do Plaintiff States adequately show "actual" irreparable harm to meet the permanent injunction standard. *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013) (standard for preliminary injunction "is essentially the same as for a permanent injunction except that 'likelihood of' is replaced with 'actual'") (quoting *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987)).

As this Court correctly recognized, Plaintiffs will suffer irreparable harm whether they comply with the Gender Conditions or reject them (or similar conditions imposed in the future)

11

and lose PREP and SRAE funding. ECF 81 at 71. This Court found that without PREP and SRAE funding, Plaintiffs will likely suffer (1) a significantly impaired ability to deliver medically accurate and complete and culturally appropriate sexual health education services to youth; (2) a significant loss of public health infrastructure and capacity to reach youth, families, and communities; and (3) a significantly impaired ability to protect the public health. *Id.* at 68. It also found that if Plaintiff States accept their PREP and SRAE awards with the attached Gender Conditions, they will violate state anti-discrimination laws and policies and will be hampered in their ability to protect public health. *Id*. Much of this harm will occur absent a permanent injunction.

The termination of PREP and SRAE funding will cause an immediate loss of at least $35 million to the Plaintiff States. ECF 7-22 at 6; *Cmty. Legal Servs. in E. Palo Alto v. Dep't of Health & Hum. Servs.*, 780 F. Supp. 3d 897, 925 (N.D. Cal. 2025) (finding irreparable harm satisfied by ongoing harms to organizational mission including "the non-speculative loss of substantial funding") (quoting *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013)). Without federal funding, Plaintiff States' PREP and SRAE sexual health education programming will be "significantly impaired [in its] ability to deliver medically accurate and complete and culturally appropriate sexual health education services to youth."[13] Further, the students most at-risk of unplanned pregnancy and STIs will not receive this critical education.[14]

Many Plaintiff States have employees funded with PREP and SRAE grant money, and many state agencies will be forced to terminate these positions should funding be cut.[15] *See King*

---

[13] *See supra,* note 2.
[14] *See supra,* note 5.
[15] *See supra,* note 6.

PLAINTIFF STATES' CROSS-
MOTION FOR SUMMARY
JUDGMENT
NO. 6:25-cv-01748-AA

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*County v. Turner*, 785 F. Supp. 3d 863, 890 (W.D. Wash. 2025) (the "injury of acute budgetary uncertainty is irreparable"). In some States, PREP and SRAE providers will lose access to vital training and technical support from subject matter experts.[16] State agencies also report that the Gender Conditions have created "immense confusion" and have "severely negatively impacted" their ability to plan for the future.[17] *See Planned Parenthood of Greater Wash. & N. Idaho v. Dep't of Health & Hum. Servs.*, 328 F. Supp. 3d 1133, 1150 (E.D. Wash. 2018) (finding irreparable harm three months before grant termination became effective because "Plaintiffs based their programs, budgeting, staffing, and partnerships with communities on th[e] understanding" of grant's five-year term). The disruption to ongoing programming would be all the more severe given that this change would come in the middle of school year when States have already set school year budgets. *See*, *e.g.*, ECF 32 at 8, 18 ¶¶ 19, 48.

The inability to fund PREP and SRAE programming will also result in long term costs through an inevitable increase in unplanned pregnancy, higher birth rates, and higher rates of HIV and other STIs among young people in vulnerable populations.[18] *See State v. Bureau of Land Mgmt.*, 286 F. Supp. 3d 1054, 1074 (N.D. Cal. 2018) (finding irreparable harm from agency rule that "will have irreparable consequences for public health") (citation omitted); *Sierra Club v. Dep't of Agric., Rural Utils. Serv.*, 841 F. Supp. 2d 349, 358 (D.D.C. 2012) (threats to public health establish irreparable harm).

In order to maintain federal funding (and abide by the Gender Conditions), Plaintiff States would be forced to act in contravention of Congress' stated goal of providing sexual health

---

[16] *See supra,* note 7.
[17] *See supra,* note 8.
[18] *See supra,* note 9.

PLAINTIFF STATES' CROSS-MOTION FOR SUMMARY JUDGMENT
NO. 6:25-cv-01748-AA

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

programs in a culturally appropriate manner. Indeed, in places "where inclusive sexual health information isn't provided to gender expansive youth, rates of suicidal ideation and suicide are higher."[19]

Moreover, censorship in sexual health education effectively prohibits Plaintiff States from effectuating state laws and policies promoting sexual health education that is comprehensive, medically and scientifically accurate, age-appropriate, and inclusive of all students, regardless of their protected class status.[20] This undermines the States' sovereign interests in carrying out their own laws and policies that protect against discrimination, aim to foster an inclusive environment for all students, and strive to target underrepresented and at-risk populations including transgender, gender diverse, and DSD young people. ECF 81 at 67-68.

## 2.    Legal remedies, including vacatur, are inadequate

Defendants have made clear that this Court's preliminary injunction is the only thing preventing them from implementing future terms or conditions materially similar to the challenged Gender Conditions. In their eagerness to do so, Defendants have twice violated the terms of the preliminary injunction as it currently stands. Second Wolf Decl. Exs. A, B, C, E, F, G, H, I. And, as this Court has already found, Defendants will readily create pretext as a means "to implement the administration's policy objectives as set out in E.O. 14,168." ECF 81 at 49; *see also id.* (holding that "[t]he 'medical accuracy review' was mere pretext" and when "HHS discovered that curricula materials that reference gender identity would survive a medical accuracy review, it then invented

---

[19] *See supra,* note 10.
[20] *See supra,* note 11.

PLAINTIFF STATES' CROSS-
MOTION FOR SUMMARY
JUDGMENT
NO. 6:25-cv-01748-AA

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

a second pretext"). Vacatur alone will not prevent Defendants from inventing new pretextual reasons to re-create the Gender Conditions in the future.

Plaintiff States need protection through a permanent injunction because Defendants have also repeatedly made clear they are not enforcing the Gender Conditions only while the preliminary injunction remains in place. Second Wolf Decl. Ex. J at 2; *id.* Ex. K at 2 (re-issued PREP and SRAE NOAs state the Supplemental Term and Condition prohibiting gender ideology "will not be applied to your program *while the injunction remains in place*") (emphasis added); Second Wolf Decl. Ex. D at 2 (states are not bound by the gender ideology clause *while the PI is in place*") (emphasis added). By including this qualification, Defendants have shown their intention to prohibit "gender ideology" and impose language materially similar to the Gender Conditions in the future. Further, if the preliminary injunction is lifted and no permanent injunction replaces it, vacatur alone is not a sufficient remedy to stop Defendants from applying a new, materially similar version of the Gender Conditions both prospectively and retroactively.

In order to protect Plaintiffs from Defendants' clear intent to impose materially similar terms or conditions in new agency actions, the Court should permanently enjoin Defendants from (1) imposing or enforcing the Gender Conditions and any "materially similar terms" that "require Plaintiff States to remove 'gender ideology' from their PREP and SRAE curricula" or that "require Plaintiff States to remove gender identity references from that curricula" against Plaintiffs retroactively or in the future; (2) "rescinding, withholding, cancelling, or otherwise not processing any PREP or SRAE Agreements," or "pausing, freezing, impeding, blocking, cancelling, terminating, delaying, withholding, or conditioning PREP or SRAE funds, based on such terms or conditions;" and (3) "requiring Plaintiff States to make any 'certification' or other representation related to compliance with such terms or conditions." ECF 81 at 76-77.

PLAINTIFF STATES' CROSS-
MOTION FOR SUMMARY
JUDGMENT
NO. 6:25-cv-01748-AA

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

3.    **The balance of equities and the public interest weigh in Plaintiff States' favor**

The balance of the equities and the public interest factors, which merge when the government is a party, *Aubin v. Bonta*, 665 F. Supp. 3d 1097, 1106 (N.D. Cal. 2023), tips in Plaintiff States' favor. ECF 81 at 74. Because Plaintiff States greatly depend on federal funding to carry out the Congressional purpose of the PREP and SRAE grants, the harm the Gender Conditions causes outweighs any potential hardship to Defendants. The public interest is likewise served by agencies complying with federal law. *See California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018); *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). Rejecting the unlawful Gender Conditions will cause Plaintiff States to lose funding for comprehensive sexual health education, and youth will abruptly lose access to ongoing programming providing essential information necessary to keep them safe. *See Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1181 (9th Cir. 2021) (promoting the health and safety of students constitutes a public interest). And the threat to these programs far outweighs Defendants' interest in censoring or terminating sexual health education. *See Planned Parenthood of Greater Wash. & N. Idaho*, at 1153 (finding that public interest weighs in favor of Plaintiff as it would prevent harm to the community and prevent loss of data regarding effectiveness of teen pregnancy prevention). The balance of equities and public interest factors therefore support a permanent injunction.

C.    **The Court Should Issue a Declaratory Judgment**

In addition to a permanent injunction, the Court should issue a declaratory judgment that the PREP and SRAE statutes do not prohibit the inclusion of transgender, gender diverse, or DSD student inclusive curricula. Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."

PLAINTIFF STATES' CROSS-
MOTION FOR SUMMARY
JUDGMENT
NO. 6:25-cv-01748-AA

16

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984). "The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57; *see* 28 U.S.C. § 2201(a); 5 U.S.C. §§ 702-03.

Defendants maintain that they should be permitted to "evaluate compliance" of the States' curricula on a "case-by-case" basis and to conduct their previously aborted medical accuracy review. ECF 99 at 34-35, 37. But Defendants still have not provided any statutory or regulatory provision showing their "authority to determine what is medically accurate or that grants [them] authority to 'defin[e] the limits of permissible [PREP or SRAE] content.'" ECF 81 at 36. But assuming that Defendants have some authority to oversee states' curricula or determine medical accuracy and cultural appropriateness, the parties dispute whether the statutes prohibit all curricula acknowledging, referencing, or instructing about transgender, gender diverse, or DSD sexual and developmental health as a matter of law. As argued in the Plaintiff States' Response brief, ECF 102 at 8, 17, 33, 35, the statutes impose no such prohibition. But as described above, Defendants have made their intent plain, through their course of dealings with Plaintiffs and in their briefing on summary judgment, that they intend to implement their incorrect understanding of the PREP and SRAE statutes in future reviews of Plaintiff States' curricula. Plaintiff States need the protection of the Court to ensure that Defendants fulfill their responsibilities under PREP and SRAE in accordance with the law.

## IV.     CONCLUSION

For the reasons stated here, and in Plaintiff States' Response to Defendants' Motion for Summary Judgment, ECF 102, the Court should vacate the Gender Conditions, enjoin Defendants from implementing materially similar terms or conditions, and declare that curricula that includes

PLAINTIFF STATES' CROSS-
MOTION FOR SUMMARY
JUDGMENT
NO. 6:25-cv-01748-AA

17

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

content related to transgender, gender diverse, or DSD sexual health and development is not prohibited by the PREP and SRAE authorizing statutes.

DATED this 20th day of February 2026.

DAN RAYFIELD
Attorney General
State of Oregon

*s/ Brian S. Marshall*
BRIAN SIMMONDS MARSHALL #196129
LEANNE HARTMANN #T25070201, Mass. BBO #667852
Senior Assistants Attorney General
CARTER BRACE #243828
100 SW Market Street
Portland, OR 97201
971-673-1880
Brian.S.Marshall@doj.oregon.gov
Leanne.Hartmann@doj.oregon.gov
Carter.Brace@doj.oregon.gov
*Counsel for Plaintiff State of Oregon*

NICHOLAS W. BROWN
Attorney General
State of Washington

*s/ William McGinty*
WILLIAM MCGINTY
KELLY PARADIS
Deputy Solicitors General
LUCY WOLF
MOLLY POWELL
ALEXIA DIORIO
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744
kelly.paradis@atg.wa.gov
william.mcginty@atg.wa.gov
lucy.wolf@atg.wa.gov
molly.powell@atg.wa.gov
alexia.diorio@atg.wa.gov
*Counsel for Plaintiff State of Washington*

KEITH ELLISON
Attorney General
State of Minnesota

*s/ Lindsey E. Middlecamp*
LINDSEY E. MIDDLECAMP
Special Counsel, Rule of Law
Office of the Minnesota Attorney General
445 Minnesota St., Suite 600
St. Paul, MN 55101
651-300-0711
lindsey.middlecamp@ag.state.mn.us
*Counsel for Plaintiff State of Minnesota*

PHILIP J. WEISER
Attorney General
State of Colorado

*s/ Kevin G. Webster*
KEVIN G. WEBSTER
Assistant Attorney General
1300 Broadway, 10th Floor
Denver, CO 80203
720-508-6086
kevin.webster@coag.gov
*Counsel for Plaintiff State of Colorado*

WILLIAM TONG
Attorney General
State of Connecticut

KATHLEEN JENNINGS
Attorney General
State of Delaware

18

| | |
|---|---|
| *s/ Andrew M. Ammirati* | *s/ Ian R. Liston* |
| ANDREW M. AMMIRATI | IAN R. LISTON |
| Assistant Attorney General | Director of Impact Litigation |
| 165 Capitol Ave | VANESSA L. KASSAB |
| Hartford, CT 06106 | Deputy Attorney General |
| 860-808-5090 | ROSE GIBSON |
| Andrew.Ammirati@ct.gov | Assistant Attorney General |
| *Counsel for Plaintiff State of Connecticut* | Delaware Department of Justice |
| | 820 N. French Street |
| | Wilmington, DE 19801 |
| | 302-683-8899 |
| | ian.liston@delaware.gov |
| | vanessa.kassab@delaware.gov |
| | rose.gibson@delaware.gov |
| | *Counsel for Plaintiff State of Delaware* |
| | |
| BRIAN L. SCHWALB | ANNE E. LOPEZ |
| Attorney General | Attorney General |
| District of Columbia | State of Hawaiʻi |
| | |
| *s/ Jess E. Feinberg* | *s/ Kalikoʻonālani D. Fernandes* |
| JESS E. FEINBERG | DAVID D. DAY |
| Assistant Attorney General | Special Assistant to the Attorney General |
| 400 6th Street, NW, Suite 10100 | KALIKOʻONĀLANI D. FERNANDES |
| Washington, D.C. 20001 | Solicitor General |
| 202-735-6637 | 425 Queen Street |
| jess.feinberg@dc.gov | Honolulu, HI 96813 |
| *Counsel for Plaintiff District of Columbia* | 808-586-1360 |
| | kaliko.d.fernandes@hawaii.gov |
| | *Counsel for Plaintiff State of Hawaiʻi* |
| | |
| KWAME RAOUL | AARON M. FREY |
| Attorney General | Attorney General |
| State of Illinois | State of Maine |
| | |
| *s/ Cara Hendrickson* | *s/ Kevin J. Beal* |
| CARA HENDRICKSON | KEVIN J. BEAL |
| Executive Deputy Attorney General | Assistant Attorney General |
| ELIZABETH MORRIS | 111 Sewall Street, 6th Floor |
| Deputy Chief, Special Litigation Bureau | 6 State House Station |
| 115 S. LaSalle Street | Augusta, ME 04333-0006 |
| Chicago, IL 60603 | 207-626-8800 |
| 312-814-3000 | kevin.beal@maine.gov |
| cara.hendrickson@ilag.gov | *Counsel for Plaintiff State of Maine* |

PLAINTIFF STATES' CROSS-
MOTION FOR SUMMARY
JUDGMENT
NO. 6:25-cv-01748-AA

19

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

elizabeth.morris@ilag.gov
*Counsel for Plaintiff State of Illinois*

ANTHONY G. BROWN
Attorney General
State of Maryland

*s/ Lauren Gorodetsky*
LAUREN GORODETSKY
Assistant Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202
410-576-7057
lgorodetsky@oag.state.md.us
*Counsel for Plaintiff State of Maryland*

ANDREA JOY CAMPBELL
Attorney General
Commonwealth of Massachusetts

*s/ Allyson Slater*
ALLYSON SLATER
Director, Reproductive Justice Unit
MORGAN CARMEN
Assistant Attorney General
One Ashburton Place
Boston, MA 02108
617-727-2200
allyson.slater@mass.gov
morgan.carmen@mass.gov
*Counsel for Plaintiff Commonwealth of Massachusetts*

DANA NESSEL
Attorney General
Michigan

*s/ Neil Giovanatti*
NEIL GIOVANATTI
DANIEL PING
*Assistant Attorneys General*
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
517-335-7603
GiovanattiN@michigan.gov
PingD@michigan.gov
*Counsel for Plaintiff State of Michigan*

JENNIFER DAVENPORT
Acting Attorney General
State of New Jersey

*s/ Farng-Yi Foo*
FARNG-YI FOO
GEOFFREY MCGEE
*Deputy Attorneys General*
124 Halsey Street, 5th Floor
Newark, NJ 07101
609-696-5279
Farng-Yi.Foo@law.njoag.gov
Geoffrey.McGee@law.njoag.gov
*Counsel for Plaintiff State of New Jersey*

LETITIA JAMES
Attorney General
State of New York

*s/ Galen Leigh Sherwin*
GALEN LEIGH SHERWIN
Special Counsel for Reproductive Justice
28 Liberty Street
New York, NY 10005

PETER F. NERONHA
Attorney General
State of Rhode Island

*s/ Riley M. O'Brien*
RILEY M. O'BRIEN
*Special Assistant Attorney General*
150 South Main Street
Providence, RI 02903

PLAINTIFF STATES' CROSS-
MOTION FOR SUMMARY
JUDGMENT
NO. 6:25-cv-01748-AA

20

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

212-426-5667
galen.sherwin@ag.ny.gov
*Counsel for Plaintiff State of New York*

401-274-4400
robrien@riag.ri.gov
*Counsel for Plaintiff State of Rhode Island*

JOSHUA L. KAUL
Attorney General of Wisconsin

*s/ Aaron J. Bibb*
AARON J. BIBB
Assistant Attorney General
Wisconsin Department of Justice
PO Box 7857
Madison, WI 53707-7857
608-266-0810
aaron.bibb@wisdoj.gov
*Counsel for Plaintiff State of Wisconsin*

PLAINTIFF STATES' CROSS-
MOTION FOR SUMMARY
JUDGMENT
NO. 6:25-cv-01748-AA

21

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744