BRETT A. SHUMATE
Assistant Attorney General
MICHELLE BENNETT
Assistant Branch Director
JACQUELINE LAU, D.C. Bar # 90024952
Trial Attorney
Jacqueline.C.Lau@usdoj.gov
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Telephone: (202) 598-0914

*Counsel for Defendants*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## EUGENE DIVISION

|  |  |
|---|---|
| STATE OF WASHINGTON, *et al.*,<br><br>                              *Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br><br>                              *Defendants*. | Case No. 6:25-cv-01748-AA<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT** |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 1

I.      Plaintiffs Do Not Dispute PREP and SRAE's Statutory Scheme, Which Defeats
        Their Claims........................................................................................................ 1

II.     Plaintiffs' Extra-Record Evidence is Inadmissible ............................................. 5

III.    Because HHS's Decision was Lawful, Plaintiffs' APA and Constitutional Claims
        Fail ...................................................................................................................... 7

        A.      HHS's Decision Was Not Arbitrary and Capricious ................................. 9

        B.      No Constitutional Violation Exists ......................................................... 12

                1.      Plaintiffs' Spending Clause Claim Fails on the Merits..................... 12

                2.      Plaintiffs' Separation of Powers Claim is Equally Unavailing.......... 14

IV.     Any Relief Should be Appropriately Limited..................................................... 15

        A.      Complete Vacatur of the Gender Condition is Not an Appropriate
                Remedy .................................................................................................. 16

        B.      Any Injunctive or Declaratory Relief Should Not Impermissibly Restrain
                HHS Going Forward ................................................................................ 17

CONCLUSION............................................................................................................... 20

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
         JUDGMENT AND OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR
         SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Cases**

*Al Ghanim Combined Grp. Co. Gen. Trad. & Cont. W.L.L. v. United States,*
 56 Fed. Cl. 502 (2003) ............................................................................ 7

*Bennett v. Ky. Dep't of Educ.,*
 470 U.S. 656 (1985) ............................................................................ 13

*Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke,*
 889 F.3d 584 (9th Cir. 2018) .......................................................... 6, 7

*California v. Texas,*
 593 U.S. 659 (2021) ............................................................................ 17

*Camp v. Pitts,*
 411 U.S. 138 (1973) .............................................................................. 6

*Centro de Trabajadores Unidos v. Bessent,*
 No. 25-5181, --- F.4th ----, 2026 WL 503310 (D.C. Cir. Feb. 24, 2026) .............................. 8, 9

*Charles v. Verhagen,*
 348 F.3d 601 (7th Cir. 2003) .............................................................. 13

*Church of the Holy Light of the Queen v. Holder,*
 443 F. App'x 302 (9th Cir. 2011) ....................................................... 19

*Citizens to Pres. Overton Park Inc. v. Volpe,*
 401 U.S. 402 (1971),
  *abrogated by Califano v. Sanders*, 430 U.S. 99 (1977) ............................. 6

*City of Los Angeles v. Barr,*
 929 F.3d 1163 (9th Cir. 2019) ............................................................ 13

*Doran v. Salem Inn, Inc.,*
 422 U.S. 922 (1975) ............................................................................ 16

*FCC v. Fox Television Stations, Inc.,*
 556 U.S. 502 (2009) ............................................................................ 11

*Fence Creek Cattle Co. v. U.S. Forest Serv.,*
 602 F.3d 1125 (9th Cir. 2010) .......................................................... 6, 7

*Fla. Power & Light Co. v. Lorion,*
 470 U.S. 729 (1985) .............................................................................. 6

*Gill v. Whitford*,
  585 U.S. 48 (2018) ........................................................................................ 15

*Hartranft v. Encore Cap. Grp., Inc.*,
  543 F. Supp. 3d 893 (S.D. Cal. 2021) ........................................................... 8

*Jet Inv., Inc. v. Dep't of Army*,
  84 F.3d 1137 (9th Cir. 1996) ......................................................................... 6

*Loper Bright Enters. v. Raimondo*,
  603 U.S. 369 (2024) ....................................................................................... 9

*Madsen v. Women's Health Ctr., Inc.*,
  512 U.S. 753 (1994) ...................................................................................... 15

*Massachusetts v. United States*,
  435 U.S. 444 (1978) ...................................................................................... 13

*Mayweathers v. Newland*,
  314 F.3d 1062 (9th Cir. 2002) ...................................................................... 13

*Meinhold v. Dep't of Def.*,
  34 F.3d 1469 (9th Cir. 1994) ........................................................................ 19

*Monsanto Co. v. Geertson Seed Farms*,
  561 U.S. 139 (2010) ...................................................................................... 18

*Mont. Wildlife Fed'n v. Haaland*,
  127 F.4th 1 (9th Cir. 2025) ........................................................................... 16

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
  583 U.S. 109 (2018) ........................................................................................ 2

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
  524 F.3d 917 (9th Cir. 2008) ........................................................................ 18

*Nw. Env't Advocs. v. U.S. Fish & Wildlife Serv.*,
  No. 3:18-CV-01420-AC, 2019 WL 6977406 (D. Or. Dec. 20, 2019) ........... 6

*Pac. Dawn LLC v. Pritzker*,
  831 F.3d 1166 (9th Cir. 2016) ........................................................................ 8

*Rhode Island v. Massachusetts*,
  37 U.S. 657 (1838) ........................................................................................ 16

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
        JUDGMENT AND OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR
        SUMMARY JUDGMENT

*South Dakota v. Dole*,
   483 U.S. 203 (1987) ......................................................................................... 13, 14

*Trump v. Hawaii*,
   585 U.S. 667 (2018) ................................................................................................ 17

*TRW Inc. v. Andrews*,
   534 U.S. 19 (2001) ................................................................................................... 3

*United States v. Carter*,
   421 F.3d 909 (9th Cir. 2005) .................................................................................. 3

*United States v. Daas*,
   198 F.3d 1167  (9th Cir. 1999) ............................................................................... 2

*United States v. Texas*,
   599 U.S. 670 (2023) .......................................................................................... 16, 17

*Washington v. Trump*,
   766 F. Supp. 3d 1138 (W.D. Wash. 2025) ........................................................ 14, 15

*Wyhe v. Reisch*,
   581 F.3d 639 (8th Cir. 2009) ................................................................................ 13

*Xerces Soc'y for Invertebrate Conservation v. Shea*,
   682 F. Supp. 3d 948 (D. Or. 2023) ........................................................................ 6

## Statutes

5 U.S.C. § 706 ...................................................................................................... 5, 6

5 U.S.C. § 706(2) ................................................................................................... 16

42 U.S.C. § 708 ....................................................................................................... 9

42 U.S.C. § 708(a)(2) ............................................................................................ 10

42 U.S.C. § 710(a) ................................................................................................. 15

42 U.S.C. § 710(a)(1)(B) ....................................................................................... 10

42 U.S.C. § 710(b)(1) .................................................................................... 2, 4, 5, 14

42 U.S.C. § 710(b)(1-2) ....................................................................................... 2, 4

Page iv    REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
             JUDGMENT AND OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR
             SUMMARY JUDGMENT

42 U.S.C. § 713(a)(1) ................................................................................................................. 15

42 U.S.C. § 713(a)(1)(A)(3) ....................................................................................................... 10

42 U.S.C. § 713(a)(1)(C)(ii)(III) ............................................................................................ 3, 10

42 U.S.C. § 713(b)(1)-(2) ........................................................................................................ 2, 4

42 U.S.C. § 713(b)(1)-(2)(A) ....................................................................................................... 5

42 U.S.C. § 713(b)(2) ................................................................................................................. 14

42 U.S.C. § 713(b)(2)(A-B) .......................................................................................................... 2

42 U.S.C. § 713(e)(4) ............................................................................................................. 9, 10

**MEMORANDUM OF LAW**

**INTRODUCTION**

Plaintiff States, in their opposition brief, Pl. States' Resp. to Defs.' Mot. for Summ. J., ECF 102 ("Pls.' Opp."), do not dispute the central premise of this case: the plain language of the PREP and SRAE statutes authorizes—and indeed requires—HHS to exclude from federally funded programming content that is inconsistent with the statutes' Objectives Requirements. And HHS correctly determined that gender ideology content does not satisfy either statute's overarching Objectives Requirements. Instead of engaging the statutory text, Plaintiffs attempt to replace Congress's directives with their own policy preferences, relying heavily on extra-record materials, including a self-serving declaration. That approach is legally improper. Statutory interpretation begins—and where the text is clear, ends—with the statute itself. Under the Administrative Procedure Act, judicial review is confined to the administrative record before the agency at the time of its decision, not some new record made initially in the reviewing court. Plaintiffs' reliance on new materials created for litigation cannot expand or alter that record.

In short, Plaintiffs' opposition brief advances no new arguments demonstrating that HHS acted contrary to law, arbitrarily and capriciously, or in violation of the Constitution. Because the governing statutes are clear and HHS adhered to them, Plaintiffs' claims fail as a matter of law. For these reasons, and those set forth in HHS's opening brief, the Court should grant HHS's motion for summary judgment and deny Plaintiffs' cross motion.

**ARGUMENT**

**I. Plaintiffs Do Not Dispute PREP and SRAE's Statutory Scheme, Which Defeats Their Claims**

Plaintiffs do not dispute that the plain text of both the PREP and SRAE statutes provides

Page 1     REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
           JUDGMENT AND OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR
           SUMMARY JUDGMENT

an overarching "Objectives Requirement" and then subsequent "Content Requirements," the latter of which only come into play if proposed curricula satisfy the statute's Objectives Requirement. 42 U.S.C. § 713(b)(2)(A-B); *id.* § 710(b)(1-2). Nor do Plaintiffs dispute the plain text of the Objectives Requirements of PREP or SRAE. *Id.* § 713(b)(1)-(2) ("to enable the State . . . to carry out personal responsibility education programs" defined as a program designed to "educate adolescents on both (i) abstinence and contraception for the prevention of pregnancy and sexually transmitted infections, including HIV/AIDs . . . and (ii) at least 3 of the adulthood preparation subjects" described in the following subparagraph); *id.* § 710(b)(1) ("to enable the State . . . to implement education exclusively on sexual risk avoidance (meaning voluntarily refraining from sexual activity)"). Thus, it is uncontested that the statutes provide a two-step process for HHS to determine the permissibility of specific content.[1] And it is uncontested that HHS's challenged action addressed only the first step—whether certain content satisfies the statutory Objectives Requirements. Where, as here, the statutory text is clear, the Court's analysis of HHS's decision "begins with the statutory text"—and, "ends there as well." *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 127 (2018) (citation omitted). Courts "look no further," unless application of the text produces " unreasonable or impractical results." *United States v. Daas*, 198 F.3d 946, 951 (9th Cir. 1999).

Unable to locate support in the statutory language, Plaintiffs instead seek to supplant the plain language of the Objectives Requirements imposed by Congress with their own policy views

---

[1] This two-step process, explained in Defendants' motion for summary judgment, Defs.' Mot. For Summ. J. & Mem. in Supp., ECF 99, consists of the following structure: first, HHS assesses whether the content at issue aligns with the overarching Objectives Requirement for the relevant program. If it does, and only if it does, the second step is for HHS to determine whether the content meets the additional Content Requirements, such as the obligation the content be medically accurate and complete. *See id.* at 10-11.

about the proper uses of PREP and SRAE funding. To do so, they rely on extra-record evidence, including a self-serving declaration, which is improper for the reasons explained below. *See infra* Part II. Plaintiffs also do so by arguing that HHS's decision to remove gender ideology content "conflict[s] with Congress's expressly stated goal[s] [in PREP] to prepare youth for adulthood" and reach "high-risk, vulnerable, and under-represented youth." Pls.' Opp at 13, 15. But Plaintiffs make no showing that when Congress enacted the PREP program in 2010, the term "adolescent development" was understood to encompass gender ideology. Nor do Plaintiffs show that Congress's goal of reaching "high-risk, vulnerable, and under-represented youth" requires teaching on gender ideology. Indeed, Congress expressly listed the "youth populations that are the most high-risk or vulnerable for pregnancies" to which it was referring, and that list is devoid of any mention of gender identity. *See e.g.* 42 U.S.C. § 713(a)(1)(C)(ii)(III) ("A description of the State's plan for using the State allotments provided under this section to achieve such goals, especially among youth populations that are the most high-risk or vulnerable for pregnancies or otherwise have special circumstances, including youth in foster care, homeless youth, youth with HIV/AIDS, pregnant youth who are under 21 years of age, mothers who are under 21 years of age, and youth residing in areas with high birth rates for youth"). When Congress enumerates specific lists, examples, or exceptions, courts presume omission of others was intentional. *See TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001). Therefore, Plaintiffs' unsupported reliance on congressional intent falls flat. Because the relevant language is plain and unambiguous, the Court's task is complete. *United States v. Carter*, 421 F.3d 909, 911 (9th Cir. 2005).

Under the undisputed statutory text and scheme of PREP and SRAE, HHS lawfully determined that gender ideology content falls outside the Objectives Requirements. The Administrative Record reflects several lessons, programs, and curricula that demonstrate gender

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR
SUMMARY JUDGMENT

ideology content clearly unrelated to the Objectives Requirements enacted by Congress. For example, in Washington D.C.'s PREP materials, an entire module is dedicated to "Gender, Sexuality, and Allyship." AR Part 1, ECF 90-18 (Bates No. 0000339). One activity instructs students to color a map based on which states they think do not have laws against discrimination based on gender identity. *Id.* A "learning objective" in this module teaches students to "advocate" in support of social causes that include "LGBTQ+ social movements." *Id*. This material has nothing to do with "abstinence and contraception for the prevention of pregnancy and sexually transmitted infections, including HIV/AIDs," "sexual risk avoidance (meaning voluntarily refraining from sexual activity)[,]" or the specified "adulthood preparation subjects." 42 U.S.C. § 713(b)(1)-(2); *id*. § 710(b)(1). In their opening brief, Defendants provided additional examples, like this one, that show no connection between gender ideology content and the statutorily mandated objectives. *See* ECF 99.

Plaintiffs address only one of Defendants' examples and, in doing so, they prove HHS's position. Plaintiffs discuss the example of the Delaware PowerPoint slide that reads "Sometimes, a person's inner feelings about their gender doesn't match their body parts. For example, they have a penis, and know, 'I'm female.'" AR Part 1, ECF 90-2 at 17. Plaintiffs argue this excerpt "provides a concrete example of how pregnancy risk can arise for gender diverse youth, and it reinforces the risk-relevant lesson that pregnancy depends on anatomy[.]" Pls.' Opp. at 14. HHS agrees with Plaintiffs that "pregnancy depends on anatomy[.]" *Id*. That is why HHS determined that the PREP and SRAE statutes do "not authorize teaching students that gender identity is distinct from biological sex or boys can identify as girls and vice versa, or that there is a vast spectrum of genders that are disconnected from one's sex." AR Part 1, ECF 90-3 at 2. It is not necessary to teach gender ideology to "reinforce[] the risk-relevant lesson that pregnancy depends on anatomy[.]" Pls.' Opp.

at 14.

Notably absent from Plaintiffs' briefing are meaningful examples from the Administrative Record that necessitate inclusion of gender ideology content to educate adolescents on "abstinence and contraception for the prevention of pregnancy and sexually transmitted infections," specified "adulthood preparation subjects," and "sexual risk avoidance (meaning voluntarily refraining from sexual activity)." 42 U.S.C. § 713(b)(1)-(2)(A); *id.* § 710(b)(1). Because Plaintiffs do not meaningfully contest the statutory scheme that provides for lawful removal of gender ideology content, Plaintiffs' claims fail.

## II.    Plaintiffs' Extra-Record Evidence is Inadmissible

Plaintiffs' briefs rely heavily on extra-record materials, including a self-serving declaration created for this litigation. Under the APA, that evidence cannot be considered. Plaintiffs inaccurately argue that "Defendants do not contest any of this evidence and, in fact, concede that such content may be medically accurate and complete." Pls.' Opp. at 18. Defendants have made no such concession. It is undisputed that no medical accuracy review has taken place, nor has HHS assessed cultural appropriateness, and thus these issues are not before the Court. Moreover, Defendants do contest the extra-record evidence put forth by Plaintiffs, relating to medical accuracy or otherwise, because it is inadmissible under the APA.

When evaluating claims under the APA, courts are only to consider the Administrative Record compiled by the agency, subject to narrow exceptions. Section 706 lists the bases on which courts may set aside agency action found to be unlawful, and then provides that, "[i]n making the foregoing determinations [regarding the lawfulness of agency action], the court shall review the whole record . . . ." 5 U.S.C. § 706. And the Supreme Court long ago held that the whole record means "the full administrative record that was before the Secretary at the time he made his

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

decision." *Citizens to Pres. Overton Park Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated by Califano v. Sanders*, 430 U.S. 99 (1977). The Supreme Court has reiterated this conclusion in subsequent decisions. In *Camp v. Pitts*, for example, the Court explained that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." 411 U.S. 138, 142 (1973). And in *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985), the Court stated that "[t]he task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." Ninth Circuit decisions reflect the same principle. *See, e.g.*, *Jet Inv., Inc. v. Dep't of Army*, 84 F.3d 1137, 1139 (9th Cir. 1996).

The Ninth Circuit "allows for a court to review material outside of the administrative record" only in "four narrow circumstances[.]" *Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke*, 889 F.3d 584, 600 (9th Cir. 2018). Under Ninth Circuit precedent, "the party seeking to admit extra-record evidence must bear a heavy burden in demonstrating such actions are necessary to effectively review the agency's decision." *Nw. Env't Advocs. v. U.S. Fish & Wildlife Serv.*, No. 3:18-CV-01420-AC, 2019 WL 6977406, at *3 (D. Or. Dec. 20, 2019) (citing *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010)). District courts in the Ninth Circuit routinely apply the "clear evidence" standard when considering requests to complete an administrative record. *See id.* at *4 ("[S]everal district courts in the Ninth Circuit, including the District of Oregon, have utilized the 'clear evidence' standard to evaluate requests to complete an administrative record."). And a party cannot simply invoke extra-record evidence without first moving to supplement or complete the administrative record. *See Xerces Soc'y for Invertebrate Conservation v. Shea*, 682 F. Supp. 3d 948, 953, 955 (D. Or. 2023) ("A party who moves to supplement or 'complete' the record must "show that the additional materials sought are

Page 6    REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR
SUMMARY JUDGMENT

necessary to adequately review the [agency's] decision" (quoting *Fence Creek Cattle Co.*, 602 F.3d at 1131)); *Al Ghanim Combined Grp. Co. Gen. Trad. & Cont. W.L.L. v. United States*, 56 Fed. Cl. 502, 511-512 (2003) ("Although plaintiff does not move to supplement the administrative record . . . plaintiff purports to rely on [two declarations]. To the extent that plaintiff seeks to introduce evidence outside the record through [] declarations, it cannot do so.").

Here, Defendants produced the Administrative Record on January 16, 2026. Plaintiffs have not moved to supplement or complete the Administrative Record. Nor did Plaintiffs make any effort to show that their extra-record evidence fits within any of the narrow exceptions to the rule that APA review is limited to the administrative record. They have thus forfeited any ability to do so. Accordingly, the Court should disregard Plaintiffs' extra-record evidence.

Moreover, even if Plaintiffs had moved to supplement the administrative record and made the requisite showing (which they have not), the "exceptions to the normal rule regarding consideration of extra-record materials only apply to information available at the time [of the agency's decision], not post-decisional information." *Zinke*, 889 F.3d at 600 (citation omitted). Therefore, because the declaration of Dr. Millington submitted by Plaintiffs was created after the decision by HHS was made, it should not be considered by the Court for this additional reason. *See id.* (rejecting use of declaration created after decision). As a result, the Court should base its review on the Administrative Record compiled by the agency and filed on the Docket at ECF 90-98 and 101, not Plaintiffs' self-proposed, extra-record evidence.

## III.    Because HHS's Decision was Lawful, Plaintiffs' APA and Constitutional Claims Fail

In their opposition briefing, Plaintiffs largely repackage their arguments from the preliminary injunction stage, rather than responding to Defendants' arguments at summary judgment. *See generally*, Pls.' Opp. Plaintiffs have waived any argument they did not make in their

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

opposition. *Hartranft v. Encore Cap. Grp., Inc.*, 543 F. Supp. 3d 893, 913–14 (S.D. Cal. 2021) ("First, where a non-moving party fails to address an argument raised by the moving party in the opposition brief, the Court may consider any arguments unaddressed by the non-moving party as waived."); *See also Pac. Dawn LLC v. Pritzker*, 831 F.3d 1166, 1178 n.7 (9th Cir. 2016) ("[P]laintiffs did not raise that argument to the district court in their . . . opposition to the defendants' motion for summary judgment, so the argument was waived."). In any event, Plaintiffs' claims fail for the (largely unaddressed) reasons explained in Defendants' motion for summary judgment.

For the reasons explained above, *see supra* Part I, and in Defendants' opening brief, HHS correctly determined gender ideology content is contrary to the Objectives Requirements of PREP and SRAE based on a plain reading of the authorizing statutes. Plaintiffs' contrary to law claim thus fails. Moreover, because, by definition, it cannot be arbitrary and capricious to adhere to the PREP and SRAE authorizing statutes and follow Congress's instructions, HHS's actions are not subject to arbitrary and capricious review.

Nor is adherence to statutory text arbitrary and capricious. The D.C. Circuit recently held as much in *Centro de Trabajadores Unidos v. Bessent*, No. 25-5181, --- F.4th ----, 2026 WL 503310 (D.C. Cir. Feb. 24, 2026). There, the court rejected a challenge to the Internal Revenue Service's disclosure of the addresses of some taxpayers to immigration officials under a provision of the Tax Reform Act. *Id.*, at *4. The agency had previously interpreted that statute to prohibit the use of tax information to aid immigration enforcement. *Id.* at *3. The court first held that the Tax Reform Act authorized the agency to disclose the addresses. *Id.* at *6. The court then rejected the plaintiffs' arbitrary-and-capricious challenge rooted, as relevant here, in the agency's change of position. *Id.* at *5. The court held that, when an agency's action is mandated by statute, "there is no reason to

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

seek an agency's explanation as to why it may have changed its view on the meaning of the statute." *Id*. at *12 (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024)). The court explained that, under *Chevron*, interpreting an ambiguous statute required an agency to make policy choices and thus demanded a reasoned explanation. *Id*. at *13. But "[a]s applied to agency changes in the interpretation of statutory text, *Loper Bright* upended this foundation for change-of-position challenges." *Id*. at *14. In a post-*Chevron* world, the question is not whether an agency adequately explained its change in position but solely what constitutes "the best reading of a statute[.]" *Id*.

Here, the decision made by HHS represents lawful adherence to the plain text of the PREP and SRAE statutes. HHS thus need not supply the same sort of detailed explanation for its action mandated by statute as it would for a policy decision.

### A. HHS's Decision Was Not Arbitrary and Capricious

Even if HHS's statutorily mandated decision is subject to arbitrary and capricious review, Plaintiffs' claim fails. In their arbitrary and capricious claim, Plaintiffs put forth the same four arguments that Defendants refuted in their motion for summary judgment. Specifically, Plaintiffs continue to renew their meritless argument that HHS failed to consider significant reliance interests because Plaintiff States "relied upon the longstanding policy that LGBTQ+ youth should be included in . . . PREP and SRAE programming." Pls.' Opp. at 22, 24. HHS has not changed position on this issue. All youth (defined in the statutes as "an individual who has attained age 10 but has not attained age 20") may participate in and benefit from PREP and SRAE programming. 42 U.S.C. § 713(e)(4). Plaintiffs continue to argue that HHS's decision to remove gender ideology content is arbitrary and capricious because it violates 42 U.S.C. § 708, which provides that "[n]o person shall on the ground of sex or religion be excluded from participation in, be denied the

Page 9    REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR
SUMMARY JUDGMENT

benefits of, or be subjected to discrimination under" any federally funded program. *Id*. § 708(a)(2). HHS is categorical that any youth (defined in the statutes as "an individual who has attained age 10 but has not attained age 20") may participate and benefit from PREP and SRAE programming. *Id.* § 713(e)(4). Plaintiffs themselves note the statutory provisions that allocate specific funding for PREP and SRAE based on state youth population percentage (and, for SRAE, the percentage of low-income children relative to all children in the state). Notably, these provisions do not consider any additional demographics. *See id.* § 713(a)(1)(A)(3); *id.* § 710(a)(1)(B). Indeed, states must ensure that they serve certain populations listed in the statute. *Id.* § 713(a)(1)(C)(ii)(III) (allocating funding for "youth populations that are the most high-risk or vulnerable for pregnancies or otherwise have special circumstances, including youth in foster care, homeless youth, youth with HIV/AIDS, pregnant youth who are under 21 years of age, mothers who are under 21 years of age, and youth residing in areas with high birth rates for youth"). Thus, it remains true that all youth are equally eligible to participate in and receive PREP and SRAE programming.

Plaintiffs' attempt to discredit the Responsible Fatherhood program referenced in Defendants' motion for summary judgment is also without merit. Pls.' Opp. at 26-27. Prohibiting extraneous subject matter from federally funded curricula does not reduce benefits for any recipients. Just as all parents (fathers and mothers alike) are able to attend services and benefit from the Responsible Fatherhood Program, all youths are able to participate in and benefit from PREP and SRAE funded programming.

To the extent Plaintiffs argue that HHS changed position on whether gender ideology content is permitted under the statutes, that characterization is incorrect because the agency previously erred in identifying the issue of whether gender ideology content is authorized and consequently did not adopt a position addressing the topic. Even assuming for the sake of argument

that there was a change in position, there would have been nothing improper about such a change. Agencies are free to change their existing policies as long as they "show that there are good reasons for the new policy." *FCC v. Fox Television Stations, Inc*., 556 U.S. 502, 515 (2009). Agencies "need not demonstrate to a court's satisfaction that the reasons for the new policy are better than the reasons for the old one; it suffices that the new policy is permissible under the statute, that there are good reasons for it, and that the agency believes it to be better, which the conscious change of course adequately indicates." *Id.* HHS satisfied this requirement by explaining that it made the change to come into compliance with the PREP and SRAE statutes. Plaintiffs argue that the fact that non-Plaintiff states[2] do not include gender ideology in their PREP and SRAE programming is "of no consequence." Pls.' Opp. at 14. Yet, the fact that non-Plaintiff states successfully provide educational programming under PREP and SRAE without gender ideology teaching undermines Plaintiffs' premise that gender ideology is "integral" to sexual health education pursuant to PREP and SRAE. *Id.* at 12. And, as to reliance interest, Plaintiffs have provided no evidence that Plaintiff States lack appropriated state funds to teach separate areas of programming on gender ideology, if they desire. But Plaintiff States have no reliance interests in using federal funds to provide educational programming that falls outside the Objectives Requirements of the statutes.

---

[2] In Defendants' motion for summary judgment, ECF 99, Defendants stated that Arkansas, Utah, Georgia, and Wyoming do not include gender ideology in their PREP or SRAE programs. To clarify, the medical accuracy review that HHS initiated when sending states the April 14, 2025, request for curricula concerned the PREP program but not SRAE. AR Part 1, ECF 90-1. Arkansas did not include gender ideology content in any of the PREP materials that the state provided to HHS in response to that request. Utah, Georgia, and Wyoming did include gender ideology content in the materials that those states submitted to HHS, but those states subsequently sent letters of attestation to the agency expressing their intent or describing actions they had completed to remove gender ideology content in response to the agency's August 26, 2025, request to do so. These three states, along with Iowa, Kentucky, Nebraska, Ohio, South Dakota, Tennessee, West Virginia, Palau, and Guam, and are in the final stages of obtaining HHS approval for statutory compliance as of March 6, 2026.

Finally, HHS's decision to remove mentions of gender ideology was rational and reasonably explained to Plaintiff States in multiple letters. AR Part 1, ECF 90-1, 90-2. The decision was an exercise of HHS's authority to align federally funded curricula with statutory objectives and is grounded in application of law – not a pretextual attempt to implement policy objectives. The Court should reject Plaintiffs' arbitrary and capricious claim.

### B.  No Constitutional Violation Exists

HHS's lawful decision to remove gender ideology content consistent with a plain reading of the statutes does not violate the Constitution.

### 1.  Plaintiffs' Spending Clause Claim Fails on the Merits

Plaintiffs' contentions that Defendants violated the Spending Clause remain without merit. First, Plaintiffs criticize Defendants for not providing additional language in support of the assertion that the gender condition only applies prospectively, despite Defendants' repeated assurances at the preliminary injunction and summary judgement stage that the condition is not retrospective.  Plaintiffs point only to the subject line of the directive letter to their support their contention that the condition applies retroactively. Pls.' Opp. at 30 (citing ECF 90-2 ("RE: State Personal Responsibility Education Program grants for Fiscal Years 2023 (#2301WAPREP), 2024 (#2301WAPREP), and 2025 (#2501WAPREP)")). But the NOAs themselves make clear that the condition is prospective only because the "Federal Award Date" is prospective. *See* Defs.' Opp'n to Pls.' Mot. for Prelim. Inj., at 26, ECF 70; ECF 90-3; ECF 99 at 25-26. Further, HHS has not attempted to impose any disallowance of funds already spent on gender ideology content. HHS's directive also gave grant recipients a future date—60 days—to modify their materials for future use. AR Part 1, ECF 90-2.  The condition simply does not apply retroactively.

Second, the condition is not vague or ambiguous. Plaintiffs argue that the term "gender

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

ideology" is "an unscientific and 'likely undefinable' term that HHS wields as a catch-all" and that Plaintiff States cannot discern what material must be removed under HHS's directive. Pls.' Opp at 32. But, HHS explained the condition, provided specific examples of violative content, and gave grant recipients the opportunity to seek further clarification. *See Bennett v. Ky. Dep't of Educ.*, 470 U.S. 656 (1985). The Spending Clause requires no more. *See, e.g.*, *Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002) (The Spending Clause is satisfied where a "statute's intention to impose a condition is expressed clearly[,]" even though the operation of a funding condition "is perhaps unpredictable." (emphasis omitted)); *Charles v. Verhagen*, 348 F.3d 601, 607–08 (7th Cir. 2003) ("[T]he exact nature of the conditions may be 'largely indeterminate,' provided that the existence of the conditions is clear[] . . . ."); *Wyhe v. Reisch*, 581 F.3d 639, 650–51 (8th Cir. 2009) ("[S]etting forth every conceivable variation in the statute is neither feasible nor required."). Indeed, the following states and territories have been able to achieve full compliance with HHS's directive, demonstrating that it provides sufficiently clear notice: Georgia, Iowa, Kentucky, Nebraska, Ohio, South Dakota, Tennessee, Utah, West Virginia, Wyoming, Palau, and Guam.

Finally, Plaintiffs' new contention that the gender condition violates the Spending Clause because it is "unrelated to the programs Congress created," Pls.' Opp. at 33, is similarly unavailing. The "relatedness requirement," set forth in *South Dakota v. Dole*, 483 U.S. 203, 207 (1987), provides that "conditions on federal grants might be illegitimate if they are unrelated 'to the federal interest in particular national projects or programs.'" *Id.* (quoting *Massachusetts v. United States*, 435 U.S. 444, 461 (1978) (plurality opinion)). Courts, including the Ninth Circuit, agree that the relatedness standard "is not demanding[.]" *City of Los Angeles v. Barr*, 929 F.3d 1163, 1175 (9th Cir. 2019). Any condition "need only bear some relationship to the purpose of the federal spending." *Id.* (quoting *Mayweathers*, 314 F.3d at 1067 (citation omitted)).

Page 13     REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

For example, in *Dole*, the court upheld conditioning state receipt of federal highway funds on state adoption of the minimum drinking age of twenty-one. *Dole*, 483 U.S. at 203-08. The *Dole* court found the funding condition to satisfy the relatedness requirement because there was some relationship between a minimum drinking age and payment of federal highway funds – safe interstate travel. *Id.* at 208. Here, the grant condition is not only related, but central, to the purpose of the federal spending because it addresses the content of curricula permitted in funding programs designed to educate youth on preventing pregnancy and sexually transmitted infections. HHS's decision to appropriately tailor federally funded content relates directly to (and furthers) the purposes and Objectives Requirements for PREP and SRAE, which mandate teachings on "both abstinence and contraception" along with the enumerated "adulthood preparation subjects," and "implement[ing] education exclusively on sexual risk avoidance." 42 U.S.C. § 713(b)(2); *id.* § 710(b). Because the condition satisfies the low bar of the relatedness requirement, Plaintiffs' Spending Clause claim fails.

### 2. Plaintiffs' Separation of Powers Claim is Equally Unavailing

Plaintiffs' separation of powers claim also fails because HHS did not, and cannot, violate the separation of powers by complying with statutory requirements of a funding statute. Plaintiffs' reliance on caselaw where conditions were implemented by Executive Order are inapplicable here. Plaintiffs state that "Defendants fail to cite any authority that the mechanism by which the Executive attempts to impose extra-statutory funding conditions alters the constitutional analysis[,]" but the cases cited by Plaintiffs highlight the distinction that forecloses Plaintiffs' separation of powers claim. Pls.' Opp. at 36. In each of these cases, the gender conditions were imposed by Executive Order and the courts held that Defendants did not have authority from Congress to impose such conditions. *See also Washington v. Trump*, 766 F. Supp. 3d 1138, 1154

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

(W.D. Wash. 2025) ("Defendants have not shown that Congress has delegated authority to the [Executive] to condition federal research grants[.]"). Here, Congress granted HHS express authority to administer the PREP and SRAE grants in accordance with the statutes, and the statutes specify the Objectives Requirements that must be met. *See* 42 U.S.C. § 713(a)(1); *id.* § 710(a). Therefore, HHS's decision to exclude extraneous subject matter from PREP and SRAE programming does not violate the separation of powers doctrine, but rather represents adherence to the plain meaning of the statutes in accordance with authority prescribed by Congress.

## IV.     Any Relief Should be Appropriately Limited

No relief is warranted in this case because Plaintiffs have failed to establish that the decision to restrict gender ideology content in PREP and SRAE funded programming was contrary to law, arbitrary or capricious, or contrary to constitutional right. In all events, however, if the Court disagrees with Defendants' merits arguments, any relief should be no broader than necessary to remedy the demonstrated harms of Plaintiff States from the agency action challenged here. "A plaintiff's remedy must be tailored to redress the plaintiff's particular injury," *Gill v. Whitford*, 585 U.S. 48, 73 (2018), and "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs[,]" *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citation omitted). Plaintiffs request that the Court (1) vacate various documents implementing the gender condition, (2) enter a permanent injunction against imposing or enforcing the gender condition and any materially similar terms against Plaintiffs, and (3) enter a declaratory judgment that the PREP and SRAE statutes do not prohibit the inclusion of gender ideology curricula, Pl. States' Cross-Mot. for Summ. J., at 8, ECF 103 ("Pls.' Cross Mot."). This request is overbroad for the reasons discussed below and should thus be rejected.

### A.  Complete Vacatur of the Gender Condition is Not an Appropriate Remedy

Plaintiffs seek complete vacatur of three distinct agency actions: (1) the Notices of Award that prohibit gender ideology teaching in PREP and SRAE programming, (2) the corresponding Supplemental Terms and Conditions that do the same, and (3) the PREP Directive letters that require Plaintiff States to remove gender ideology curricula from PREP and SRAE programming. *Id.* at 7. This remedy is not appropriate to the extent it affects nonparties, such as non-plaintiff states. If the court's remedial order affects nonparties, it may only do so incidentally. Universal vacatur affecting nonparty states would exceed the Court's Article III authority. *See United States v. Texas*, 599 U.S. 670, 693 (2023) (Gorsuch, J., concurring); *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) ("[N]either declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs."). "This tracks the founding-era understanding that courts 'render a judgment or decree upon the rights of the litigant[s].'" *Texas*, 599 U.S. at 693 (Gorsuch, J., concurring) (quoting *Rhode Island v. Massachusetts*, 37 U.S. 657 (1838)). This notion "ensures that federal courts respect the limits of their Article III authority to decide cases and controversies and avoid trenching on the power of the elected branches to shape legal rights and duties more broadly." *Id.* at 693-94 (Gorsuch, J., concurring).

Even if the APA could be read to authorize vacatur of agency action,[3] "a district court should think twice—and perhaps twice again—before granting such sweeping relief." *Id.* at 702

---

[3] Defendants acknowledge that the Ninth Circuit has held that vacatur is an available remedy under the APA. *See, e.g.*, *Mont. Wildlife Fed'n v. Haaland*, 127 F.4th 1, 50 (9th Cir. 2025). Defendants here preserve the argument that 5 U.S.C. § 706(2) does not authorize any particular form of relief; it merely directs a reviewing court to disregard "agency action, findings, and conclusions" that it finds unlawful when resolving an individual APA challenge. *See Texas*, 599 U.S. at 693–703 (Gorsuch, J., joined by Thomas and Barrett, JJ., concurring in the judgment) (citation omitted).

Page 16    REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

(citation omitted). Indeed, bedrock principles of equity are counter to awarding the sweeping relief of universal vacatur. *See Trump v. Hawaii*, 585 U.S. 667, 717 (2018) (Thomas, J., concurring) (explaining that English and early American "courts of equity" typically "did not provide relief beyond the parties to the case").

Accordingly, any equitable remedy applied in the nature of vacatur should apply only to the named Plaintiffs in this case. *See California v. Texas*, 593 U.S. 659, 672 (2021) (remedies "ordinarily operate with respect to specific parties" rather than "on legal rules in the abstract") (citations omitted). Indeed, as previously discussed, 12 non-plaintiff states and territories have already accepted the challenged grant condition, worked with HHS to adjust their curricula accordingly, and are operating under the funding provided by the Notice of Award. The Court should not intervene with operation of the grant condition as to those nonparties. Any relief should not disturb those arrangements.

### B. Any Injunctive or Declaratory Relief Should Not Impermissibly Restrain HHS Going Forward

If the Court vacates the challenged agency actions as to Plaintiffs, there is no need for any additional relief, whether injunctive or declaratory. In support of their request for further relief, Plaintiffs reference two unintentional preliminary injunction violations, which had no actual impact on Plaintiffs' programs and were swiftly resolved. On January 11, 2026, and on February 6, 2026, counsel for Plaintiffs notified counsel for Defendants of non-compliance with the preliminary injunction. By the next business day, January 12, 2026, and February 9, 2026, respectively, Defendants had investigated the inadvertent non-compliance and proposed solutions. Plaintiff States were then notified of the oversight and the error was corrected. Plaintiffs' counsel did not take issue with either solution. Plaintiffs do not dispute that both incidents were inadvertent and quickly resolved. These instances did not warrant entry of a permanent injunction if the Court

Page 17    REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

rules against Defendants on the merits.

In any event, Plaintiffs' requests for injunctive and declaratory relief are inappropriately overbroad to the extent they would prohibit HHS from evaluating individual program content submissions on a case-by-case basis. Plaintiffs seek a permanent injunction that would enjoin HHS from enforcing not only the challenged gender condition but also any "materially similar terms" that require Plaintiff States to remove "gender ideology" or "gender identity references" from PREP or SRAE curricula. Pls.' Cross Mot. at 15. Plaintiffs also argue that "[i]n addition to a permanent injunction, the Court should issue a declaratory judgment that the PREP and SRAE statutes do not prohibit the inclusion of transgender, gender diverse, or DSD student inclusive curricula." *Id.* at 16.

If the Court decides to grant injunctive or declaratory relief, any such relief should be narrowly tailored so as to not preclude HHS from making case-by-case determinations regarding whether particular gender identity content satisfies the Objectives Requirements of the statutes and evaluating the Content Requirements through methods such as conducting a medical accuracy review. When a court determines that an agency action is unlawful, the proper remedy is to afford plaintiffs relief from the challenged agency action without placing an "impermissible substantive restraint" on what the agency does going forward. *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 524 F.3d 917, 937-38 (9th Cir. 2008). When a court invalidates "a particular agency order[,]" what comes next is "for the agency to decide." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 159-60 (2010) (citation omitted). If an aggrieved party believes those next steps are unlawful, it may "bring a separate suit under the [Administrative Procedure Act] to challenge" whatever new action the agency takes. *Id.* But "[u]ntil such time as the agency decides whether and how to exercise its regulatory authority" in the wake of an adverse decision, "courts have no cause to

Page 18     REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
            JUDGMENT AND OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR
            SUMMARY JUDGMENT

intervene" by entering "broad injunction[s]" that "essentially pre-empt[]" its decision on how best to exercise "the authority vested in [it] by law." *Id*. at 160, 164.

Notably, Plaintiffs do not contest that Defendants have the longstanding authority to oversee compliance with PREP and SRAE's Objectives Requirements and Content Requirements. Pls.' Cross Mot. at 17. The Court thus should not, through any relief, restrain this authority to evaluate individual program content submissions. Even if the Court were to find fault with Defendants' categorical determination that gender ideology is outside of the statutory scope, it cannot be the case that *any* teaching on gender ideology is permissible under PREP and SRAE. For example, HHS should still be afforded the ability to determine that the Washington, D.C. lesson on state gender discrimination laws, ECF 90-18 (Bates No. 0000339), should not be funded under PREP and SRAE grants because it does not satisfy the statutes' Objectives Requirements. Likewise, HHS should be permitted to conduct medical accuracy reviews on program curricula, which, as noted above, it has not yet done here. Thus, any relief should preserve HHS's authority to make content-specific determinations about whether curricular components, including those addressing gender ideology, are consistent with the PREP and SRAE statutes, just as HHS does with respect to all other instructional content. *See Church of the Holy Light of the Queen v. Holder*, 443 F. App'x 302, 303 (9th Cir. 2011) (vacating injunction against enforcement of generally-applicable controlled substances regulations that swept beyond the particular "outright prohibition" that the plaintiff had challenged as burden on religious observance); *Meinhold v. Dep't of Def.*, 34 F.3d 1469, 1480 (9th Cir. 1994) (vacating injunction to the extent it went beyond ordering that the Navy reinstate an unlawfully discharged sailor and not discharge him on same ground in the future). If the Court decides to grant injunctive relief, any injunction should be narrowly tailored to enjoin only the gender condition challenged here and any determination that

the PREP and SRAE statutes do not categorically prohibit teachings on gender ideology. Similarly, the most the Court should declare is that the PREP and SRAE statutes do not categorically prohibit teachings on gender ideology, but preserve HHS's authority to evaluate curricular content consistent with the statutes.

**CONCLUSION**

For all the reasons discussed herein, the Court should grant Defendants' motion, deny Plaintiffs' cross motion, and enter summary judgment in Defendants' favor.

Dated: March 13, 2026                    Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

MICHELLE BENNETT
Assistant Branch Director
Federal Programs Branch

/s/ *Jacqueline C. Lau*
JACQUELINE C. LAU
(DC Bar # 90024952)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Telephone: (202) 598-0914
Email: Jacqueline.C.Lau@usdoj.gov

*Counsel for Defendants*