NICHOLAS W. BROWN
Attorney General for the State of Washington
Kelly Paradis
William McGinty
Deputy Solicitors General
Lucy Wolf
Molly Powell
Alexia Diorio
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744
lucy.wolf@atg.wa.gov
molly.powell@atg.wa.gov
alexia.diorio@atg.wa.gov
kelly.paradis@atg.wa.gov
william.mcginty@atg.wa.gov
*Counsel for Plaintiff State of Washington*

[Additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| STATE OF WASHINGTON, et al., | No. 6:25-cv-01748-AA |
| Plaintiffs, | PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT |
| v. | |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., | |
| Defendants. | |

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................................ 1

II.   ARGUMENT ................................................................................................................... 2

    A.    The Gender Conditions Conflict with Multiple Statutory Requirements, Including the Statutes' "Objectives Requirements" ................................................................ 2

        1.    The Gender Conditions conflict with Congress' intent to educate youth about pregnancy and STI prevention ...................................................................... 3

        2.    The Gender Conditions conflict with the enabling statutes' objectives to prepare youth for adulthood .............................................................................. 5

        3.    The Gender Conditions conflict with Congress' goal of reaching diverse youth populations ................................................................................................. 8

        4.    Defendants not only fail to justify the exclusion of individual curricula examples; they also fail to justify a categorical ban on *all* "gender ideology" content ........................... 9

    B.    Plaintiff States Properly Cited Extra-Record Materials to Show Glaring Deficiencies in HHS' Administrative Record .............................................................. 12

    C.    Defendants' Actions Violate the APA Several Times Over .............................................. 16

    D.    The Gender Conditions Also Violate the Constitution ...................................................... 21

    E.    Universal Vacatur Is Consistent with Well-Established Precedent ................................... 26

    F.    Defendants' Statements and Actions Following Entry of the Preliminary Injunction Demonstrate the Need for Injunctive and Declaratory Relief ..................................... 29

III.  CONCLUSION ................................................................................................................. 30

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

## TABLE OF AUTHORITIES

### Cases

*Animal Def. Council v. Hodel*,
840 F.2d 1432 (9th Cir. 1988)................................................................................. 13

*Ariz. Cattle Growers' Ass'n v. Cartwright*,
29 F. Supp. 2d 1100 (D. Ariz. 1998) ...................................................................... 14

*Basiente v. Glickman*,
242 F.3d 1137 (9th Cir. 2001) .................................................................................. 8

*Bennett v. Ky. Dep't of Educ.*,
470 U.S. 656 (1985)......................................................................................... 24, 25

*Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke*,
889 F.3d 584 (9th Cir. 2018)............................................................................. 13, 14

*California v. Dep't of Transp.*,
808 F. Supp. 3d 291 (D.R.I. 2025)......................................................................... 17

*California v. Texas*,
593 U.S. 659 (2021).................................................................................................. 27

*Charles v. Verhagen*,
348 F.3d 601 (2003).......................................................................................... 24, 25

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
603 U.S. 799 (2024)................................................................................................. 27

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020) ............................................................................................... 19, 20

*Doran v. Salem Inn, Inc.*,
422 U.S. 922 (1975)................................................................................................. 27

*Earth Island Inst. v. U.S. Forest Serv.*,
87 F.4th 1054 (9th Cir. 2023).................................................................................. 15

*FCC v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009)................................................................................................. 19

*Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*,
314 U.S. 95 (1941)..................................................................................................... 9

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

*Grayned v. City of Rockford,*
  408 U.S. 104 (1972) ................................................................................................. 25

*Griffin v. HM Fla.-ORL, LLC,*
  144 S. Ct. 1 (2023) ................................................................................................... 27

*King County v. Turner,*
  785 F. Supp. 3d 863 (W.D. Wash. 2025) .................................................................. 22

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,*
  591 U.S. 657 (2020) ................................................................................................. 17

*Loper Bright Enter. v. Raimondo,*
  603 U.S. 369 (2024) ................................................................................................. 12

*Mayweathers v. Newland,*
  314 F.3d 1062 (9th Cir. 2002) ........................................................................... 24, 25

*Michigan v. EPA,*
  576 U.S. 743 (2015) ................................................................................................. 19

*Mont. Wildlife Fed'n v. Haaland,*
  127 F.4th 1 (9th Cir. 2025) ....................................................................................... 26

*Motor Vehicles Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
  463 U.S. 29 (1983) ................................................................................................... 14

*Nat. Grocers v. Rollins,*
  157 F.4th 1143 (9th Cir. 2025) ................................................................................. 27

*Nat'l Audubon Soc. v. U.S. Forest Serv.,*
  46 F.3d 1437 (9th Cir. 1993) .................................................................................... 13

*Nat'l TPS All. v. Noem,*
  166 F.4th 739 (9th Cir. 2026) ................................................................................... 32

*Nw. Res. Info. Ctr., Inc. v. Nw. Power & Conservation Council,*
  730 F.3d 1008 (9th Cir. 2013) .................................................................................. 19

*Pennhurst State Sch. & Hosp. v. Halderman,*
  451 U.S. 1 (1981) ............................................................................................... 23, 25

*PFLAG, Inc. v. Trump,*
  769 F. Supp. 3d 405 (D. Md. 2025) .......................................................................... 22

*Pollinator Stewardship Council v. EPA*,
  806 F.3d 532 (9th Cir. 2015) .................................................................................. 26

*R.I. Coal. Against Domestic Violence v. Kennedy*,
  No. 25-cv-00342-MRD-PAS, 2025 WL 2988705 (D.R.I. Oct. 23, 2025) .............................. 23

*Rueda Vidal v. Dep't of Homeland Sec.*,
  536 F. Supp. 3d 604 (C.D. Cal. 2021) ........................................................................ 16

*San Luis & Delta-Mendota Water Auth. v. Locke*,
  776 F.3d 971 (9th Cir. 2014) ............................................................................... 14, 15

*South Dakota v. Dole*,
  483 U.S. 203 (1987) ............................................................................................. 26

*Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*,
  100 F.3d 1443 (9th Cir. 1996) ................................................................................ 13

*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025) ............................................................................................. 27

*United States v. Texas*,
  599 U.S. 670 (2023) ............................................................................................. 26

*United States v. Wyatt*,
  408 F.3d 1257 (9th Cir. 2005) ............................................................................ 9, 27

*Van Wyhe v. Reisch*,
  581 F.3d 639 (8th Cir. 2009) ............................................................................. 24, 25

*Washington v. Trump*,
  768 F. Supp. 3d 1239 (W.D. Wash. 2025) .................................................................. 22

*Xerces Soc'y for Invertebrate Conservation v. Shea*,
  682 F. Supp. 3d 948 (D. Or. 2023) ........................................................................... 15

**Statutes**

42 U.S.C. § 708 ........................................................................................................ 22

42 U.S.C. § 710 ................................................................................................. 3, 6, 21

42 U.S.C. § 713 ................................................................................ 3, 6, 8, 9, 11, 21

5 U.S.C. § 706 ................................................................................................... 29, 31

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

iv

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

## I.    INTRODUCTION

Defendants do not dispute that the Gender Conditions cause widespread irreparable harm. Nor do they dispute that they intend to reissue the conditions at the next opportunity, guaranteeing that these harms will continue absent permanent injunctive and declaratory relief. Defendants instead devote most of their brief to arguing that the Gender Conditions are consistent with the PREP and SRAE enabling statutes and thus cannot be contrary to law, cannot be arbitrary and capricious, and cannot violate the Spending Clause or the Separation of Powers. But nowhere in Defendants' brief do they explain how the Gender Conditions can *possibly* be consistent with the enabling statutes' objectives—to educate youth about pregnancy and STI prevention and prepare youth for adulthood—where the conditions demand the exclusion of content *directly* serving those purposes. Most glaringly, Defendants offer no justification for the prohibition of statements like, "People of all sexual orientations and gender identities need to know how to prevent pregnancy and STOs [sic], either for themselves or to help a friend." This content directly references pregnancy and STI prevention and falls within the scope of the enabling statutes.

Defendants do not—and cannot—justify the Gender Conditions based on the statutes' plain language. Nothing in the enabling statutes supports a ban on all "gender ideology" content, particularly one so sweeping that it prohibits statements recognizing the very *existence* of transgender, gender diverse, and DSD youth. On the contrary, the enabling statutes give states significant discretion to design their programs within broad statutory parameters, and Plaintiff States' decision to include content addressing the needs of transgender and gender-diverse youth is entirely consistent with the statutes' plain language and objectives. Consistent with this discretion, Plaintiff States do not ask this Court to hold that the authorizing statutes *require* such curricula, only that Defendants may not *categorically prohibit* it.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

1

As this Court has previously recognized, the Gender Conditions are unlawful and unconstitutional for multiple reasons. This Court should grant Plaintiff States' cross-motion for summary judgment, vacate the Gender Conditions, and order declaratory and injunctive relief.

## II.    ARGUMENT

### A.    The Gender Conditions Conflict with Multiple Statutory Requirements, Including the Statutes' "Objectives Requirements"

Defendants' sole defense against all claims is that HHS lawfully determined that "gender ideology" content falls outside the statutory requirements. But Defendants have conceded that HHS did not consider two of the enabling statutes' requirements—that PREP and SRAE programs be "culturally appropriate" and "medically accurate and complete." Because the prohibited content might satisfy those requirements (and the banned curricular material in the administrative record does, in fact, satisfy those requirements), the Gender Conditions' categorical prohibition on *all* "gender ideology" content is contrary to the enabling statutes.

Attempting to minimize the impact of their concession, Defendants cling to an interpretation of the statute that manufactures "a two-step process for HHS to determine the permissibility of specific content." ECF 108 at 8. But Defendants cite no authority to support an approach that separates the programs' objectives from the statutes' content requirements. The content requirements outlined by Congress are the means of *achieving* Congress' objectives. Indeed, requiring "medically accurate and complete" and "culturally appropriate" information is part and parcel with the statutory objective of reducing teenage pregnancy and STI rates, and the two components may not logically be isolated from one another.

Nonetheless, even if this court were to consider the statutory objectives in isolation, the Gender Conditions still conflict with the PREP and SRAE enabling statutes. Specifically, they

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

2

conflict with Congress' intent to educate youth about pregnancy and STI prevention, prepare youth for adulthood, and reach diverse youth populations. Defendants' arguments to the contrary not only fail to justify the exclusion of individual curricula examples but also fail to justify a categorical ban on *all* "gender ideology" content.

**1.    The Gender Conditions conflict with Congress' intent to educate youth about pregnancy and STI prevention**

PREP is broadly "designed to educate adolescents on . . . both abstinence and contraception for the prevention of pregnancy and sexually transmitted infections, including HIV/AIDS . . ." 42 U.S.C. § 713(b)(2)(A). Similarly, SRAE is designed to enable States "to implement education exclusively on sexual risk avoidance (meaning voluntarily refraining from sexual activity)" and provides that states may offer some education regarding contraception. *Id.* §§ 710(b)(1), (4)(B). The plain language of these provisions unambiguously demonstrates Congress' intent to allow content that educates adolescents on pregnancy and STI prevention.

Yet the Gender Conditions prohibit content that—on its face—does exactly that. Defendants completely ignore the examples cited in the States' brief, including HHS' command that States remove language that "[p]eople of all sexual orientations and gender identities need to know how to prevent pregnancy and STOs [sic], either for themselves or to help a friend." ECF 7-21 at 5. Defendants likewise fail to address HHS' command that States remove the following language from a youth program facilitator's introduction: "IN·clued is a program just for LGBTQ+ youth to learn about how to get the sexual health information and services they need and have the right to. We know that sometimes lesbian, gay, bisexual, transgender, and queer or questioning young people don't have access to information and services that is for them. That's

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

why we're here, to spend some time together talking about LGBTQ+ sexual healthcare in particular." ECF 16-7 at 3.

There are dozens of additional examples, including educator notes outlining best practices when teaching about sexuality. For example, HHS demanded the removal of an educator note related to an activity where students roleplay "sexual pressure situations" with classmates of both a different and the same gender. ECF 90-2 at 2. The note states that this roleplay "may be awkward for teens who are sensitive to the suggestion of same-sex romance, for teens who identify as gay or lesbian, or for teens who are transgender or gender nonconforming" and that it is "important to address this situation directly and proactively." *Id*. It also demanded removal of the following "facilitator tip" in a lesson about "defining sexuality": "Sexuality is complex and can be difficult to define. It is normal for participants to struggle to understand it broadly and to have differing views. Support participants in sharing and listening to one another, and make sure dialogue remains respectful and inclusive." ECF 90-2 at 19, 52, 66. It also demanded the removal of information explaining that it is considered "best practice" to use mixed-gender groups when discussing "sexuality-related issues" because single-gender groups "can cause trauma for transgender, gender non-conforming, and non-binary youth." ECF 90-2 at 2.

HHS also demanded the removal of educational content directly addressing sexual behaviors. In one example, HHS demanded the removal of the following information from a lesson about "Abstinence and Expressing Affection":

o When people think of sexuality, often just think of sex.
o However, sex is only one part of sexuality.
o Sexuality also includes [our] bodies and how we feel about them, our desires and attractions to others, our relationships, our beliefs and values about sexuality, how we show love and affection and how we identify and express our gender.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

    o   While some people choose to express their sexuality through sex, others choose to practice abstinence.

ECF 90-2 at 67. In yet another, HHS demanded the removal of education explaining the types of sexual intercourse:

> It's not because this is the only way to have sex or the right way to have sex. Sex is often defined this way because our society is heteronormative; meaning that heterosexual/cisgender is considered the norm. It doesn't usually acknowledge genderqueer, non-binary, intersex, or transgender identities. It also assumes that sex is only for reproduction and leaves out any conversation about pleasure. This biased perspective shapes the messages and information we get about sex in school, from the media, and even from our friends and family. And it often leads to incomplete and inaccurate information. But we know that 'sex' is so much more than penis-in-vagina intercourse, and we know there are many more identities out there than heterosexual and cisgender!

ECF 90-2 at 45.

Defendants have not provided any plausible argument that requiring *removal* of this content is consistent with the statutes' objectives to educate adolescents on pregnancy and STI prevention. These examples explicitly emphasize the importance of all students learning how to prevent pregnancy and STIs, inform educators about how to make education about "sexual pressure" effective for all students, and instruct teachers about how to foster discussion and understanding of human sexuality. They also ensure that educational content is attuned to the needs of students with diverse backgrounds. This content unquestionably falls within the scope of the enabling statutes.

**2.    The Gender Conditions conflict with the enabling statutes' objectives to prepare youth for adulthood**

The Gender Conditions also conflict with Congress' expressly stated purpose that the PREP program prepare youth for adulthood by teaching "adult preparation subjects" such as "[h]ealthy relationships, including marriage and family interactions"; "[a]dolescent development, such as the development of healthy attitudes and values about adolescent growth and development, body

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

5

image, racial and ethnic diversity, and other related subjects[;]" "[p]arent-child communication"; and "[h]ealthy life skills, such as goal-setting, decision making, negotiation, communication and interpersonal skills, and stress management." 42 U.S.C. § 713(b)(2)(C); *see also id.* §§ 710(b)(3)(A), (D) (SRAE similarly requires education on "[t]he holistic individual and societal benefits associated with personal responsibility, self-regulation, goal setting, healthy decisionmaking, and a focus on the future" and "[t]he foundational components of healthy relationships and their impact on the formation of healthy marriages and safe and stable families" among other subjects).

As a threshold matter, Defendants' own description of gender identity as "an area encompassing psychological, social, and ethical dimensions," ECF 99 at 35, demonstrates that such content falls within several of these categories. And closer examination of the "gender ideology" content flagged by HHS confirms its connection to multiple adult preparation subjects. Indeed, it is impossible to dispute that inclusivity and antidiscrimination are related to education about "healthy relationships," "racial and ethnic diversity," and "communication and interpersonal skills." 42 U.S.C. § 713(b)(2)(C), § 710(b). Yet much of the prohibited content addresses or advances those subjects.

For example, HHS demanded removal of statements that the "FLASH curriculum has been shown through rigorous evaluation to significantly reduce homophobia and transphobia among high school students" and that "[i]t is important for educators to routinely teach inclusively, as every classroom will likely have students who identify (or will later identify) as LGBTQ, as well as students with family and friends who identify as LGBTQ." ECF 90-2 at 51, 73. It likewise demanded that States remove content requiring educators to "[d]emonstrate acceptance and respect

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

for all participants, regardless of personal characteristics, including race, cultural background, religion, social class, sexual orientation or gender identity[,]" ECF 90-2 at 2, 7, 17, 56. HHS also prohibited a learning objective that students be able to "[d]emonstrate the respectful use of at least two gender-related terms while discussing student scenarios that illustrate gender diversity with peers and include respectful body language, words, and tone of voice." ECF 90-2 at 71. And it also banned content on a PowerPoint slide that defines an "ally" as "A person who fights for the rights of a disadvantage[d] group they are not a part of. For example, an ally can support: equal civil rights, gender equality, LGBTQ+ social movements, challenges homophobia, biphobia, and transphobia." ECF 90-2 at 12.

Defendants do not address the meaning or scope of any adult preparation subjects except "adolescent development," claiming that Plaintiff States fail to show "that when Congress enacted the PREP program in 2010, the term "adolescent development" was understood to encompass gender ideology." ECF 108 at 9. This selective reading begs the Court to ignore the full statutory text and is fatal to Defendants' argument. The statute expressly includes within this category "body image" and "other related subjects." 42 U.S.C. § 713(b)(2)(C). There has been no showing by Defendants that the terms "body image" and "other related subjects" are not sufficiently expansive and open-ended to encompass issues relating to gender identity, much less that the statute requires the exclusion of such subjects.

On the contrary, the broad statutory language establishes that a funding condition categorically prohibiting education about "gender ideology" conflicts with Congress' goal to educate youth about "adolescent development" and "related subjects." And "[i]f the intent of Congress is clear from the face of the statutory language, [the court] must give effect to the

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

unambiguously expressed Congressional intent." *Basiente v. Glickman*, 242 F.3d 1137, 1142 (9th Cir. 2001) (internal quotation marks omitted). The statute's plain language also negates Defendants' "explanation" that the "statute neither requires, supports nor authorizes teaching students that gender identity is distinct from biological sex or that boys can identify as girls and vice versa." ECF 90-2 at 4, 9, 13, 21, 25, 29, 34, 38, 42, 48, 53, 57, 63, 68, 74.

The administrative record shows that the prohibited content directly relates to this topic. For example, HHS prohibited statements that "In our society, we have stereotypes of what it means to be a man or a woman. Many people do not fit into this stereotype because we are all different, and that is okay." ECF 90-2 at 28, 47, 61. It banned content stating that "[g]ender is how people identify and express themselves." ECF 90-2 at 20, 41, 42, 47, 53, 67. And it required States to remove content explaining that "[o]ur identity, or how we see ourselves, includes many different things, such as our race/ethnicity, nationality, culture, religious affiliation, age, gender, sexuality, roles (Ex: athlete, big sister, etc.), personality traits and interests." ECF 90-2 at 20, 47, 52, 66. This content falls squarely within the enabling statutes.

### 3. The Gender Conditions conflict with Congress' goal of reaching diverse youth populations

Finally, the Gender Conditions conflict with Congress' goal of reaching "high-risk, vulnerable, and culturally under-represented youth populations." *See* 42 U.S.C. § 713(c)(1). The PREP statute even requires States to describe their plan for meeting their goals "especially among youth populations that are the most high-risk or vulnerable." *Id.* § 713(a)(1)(C)(ii)(II). This includes transgender, gender diverse, and DSD youth, as confirmed by HHS' own website, which specifically states that PREP programs target youth "from minority groups (including sexual minorities)." ECF 7-7 at 2. Indeed, as recently as 2024, HHS explicitly identified "youth who

8

identify as lesbian, gay, bisexual, transgender, and/or questioning (LGBTQ+)" as among youth populations that are "culturally underrepresented" and "vulnerable." ECF 7-8 at 12 ¶ 14 (c).

Defendants contend that Congress did not intend to reach gender diverse youth because the statute does not specifically list gender diverse youth populations. ECF 108 at 9. Yet this argument is unsupported and inconsistent with Congress' own plain funding language. And the statute on which Defendants rely does not purport to be an exhaustive list of targeted youth populations. It merely provides an illustrative list, as demonstrated by its use of the word "including." *See* 42 U.S.C. § 713(a)(1)(C)(ii)(III) ("*including* youth in foster care, homeless youth, youth with HIV/AIDS, pregnant youth who are under 21 years of age, mothers who are under 21 years of age, and youth residing in areas with high birth rates for youth") (emphasis added). "It is well-established that "the term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle." *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) And the Ninth Circuit has established that "[t]he use of the word "includes" suggests the list is non-exhaustive rather than exclusive." *United States v. Wyatt*, 408 F.3d 1257, 1261 (9th Cir. 2005). In short, the fact that the statute does not explicitly list gender diverse youth populations proves nothing.

4.    **Defendants not only fail to justify the exclusion of individual curricula examples; they also fail to justify a categorical ban on *all* "gender ideology" content**

Unable to explain why the examples identified by Plaintiff States are outside the scope of the enabling statutes, Defendants fall back on other curricula examples that they claim are problematic. But as a threshold matter, even if Defendants could justify the exclusion of some of the identified content, that in no way establishes that a *categorical ban* on *all* "gender ideology" content is permissible. Any claim to the contrary flips the analysis on its head. Plaintiff States'

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

9

demonstration of how *any* of prohibited content fits within the scope of the enabling statutes necessarily establishes that HHS' categorical ban on "gender ideology" content is improper.

In any event, the examples offered by Defendants are unavailing. Defendants again point to a Delaware PowerPoint slide that reads "Sometimes, a person's inner feelings about their gender doesn't match their body parts. For example, they have a penis, and know, 'I'm female.'" ECF 108 at 10 (citing ECF 90-2 at 17). Defendants claim that the States' acknowledgment that pregnancy depends on anatomy proves the supposed irrelevance of education about gender identity, stating "[i]t is not necessary to teach gender ideology to 'reinforce[] the risk-relevant lesson that pregnancy depends on anatomy[.]'" ECF 108 at 10. But Defendants' bald assertion completely misses the point. As this slide demonstrates, gender identity does not always align with reproductive anatomy. Accordingly, the slide provides a concrete example of how pregnancy risk can arise for gender diverse youth, and it demonstrates why sexual education that is not inclusive fails to equip adolescents with an accurate understanding of their actual risk of pregnancy.[1]

Defendants' reliance on the lesson in Washington, D.C.'s PREP materials called "Gender, Sexuality, and Allyship" is similarly unhelpful for them. Among the learning objectives of this lesson are that students will be able to "[n]ame the different kinds of discriminations and barriers in health care experienced by LGBTQIA+ youth", "[c]hallenge homophobia, biphobia and transphobia," and "[a]dvocate and become an ally to the LGBTQIA+ community." ECF 90-18 at 5. Defendants take specific issue with a five-minute activity entitled "Map Discussion," which prompts the instructor to "[m]ention that there are 20 states where there are no explicit laws against

---

[1] This example also demonstrates the interdependence of the "Objectives Requirements" and the "Content Requirements," and the unworkability of Defendants' manufactured "two-step process for HHS to determine the permissibility of specific content." ECF 108 at 8.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

10

discrimination based on sexual orientation or gender identity in state law. This means, for example, you can be fired if you are part of the LGBTQIA+ community." ECF 90-18 at 6-7. The lesson then transitions to a discussion of "discrimination conversation questions", which encourage students to consider discrimination related to sex, gender, race and ethnicity. *Id.* Students are then taught about allyship and instructed that allyship includes listening and being open minded, respecting privacy, and confronting your own prejudice and bias. *Id*. at 7-8. On its face, this lesson clearly relates to several adulthood preparation subjects, including "racial and ethnic diversity," "healthy relationships," and "communication and interpersonal skills." 42 U.S.C. § 713(b)(2)(C)(ii). It, too, is within the scope of the statute.

The same is true of the other examples cited in Defendants' prior briefing. *See* ECF 99 at 18-20 (citing ECF 96-4 at 11-18, ECF 90-2 at 28, ECF 90-2 at 17, ECF 92-16 at 2, ECF 93-1 at 105, ECF 96-3 at 39-46). Many examples discuss gender identity as part of self-image, thus falling squarely within the topics of adolescent development, body image, and related subjects. *See* ECF 96-4 at 11-18 (express purpose of "Gender Jamboree!" lesson is to "lead[] participants through an exploration of gender as it relates to their own identity and the world around them"); ECF 90-2 at 27-28 (describing "gender identity" as "your inner sense of your gender" and stating it "often" but "not always" matches a person's body); ECF 92-16 at 2 (defining "gender identity" as "one's internal sense of being male, female, neither of these, both, or another gender(s)").

Other examples fall into multiple adult preparation subjects, including the "Wonder Years" lesson, which is relevant not only to adolescent development but also to "healthy relationships" and "communication and interpersonal skills." In this lesson, students learn that "gender identity" is "inside feelings, thoughts" and that "respect" involves "being polite and kind" and having

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

"regards for the feelings, wishes, rights, or traditions of others"; they also "practice [their] skills or respectful communication and gender." ECF 96-3 at 39-55. Another example relevant to multiple adult preparation subjects, including adolescent development and healthy decisionmaking, is a lesson on "Human Development" from the "Rights. Respect. Responsibility" curriculum. ECF 93-1 at 101-05. It teaches participants about hormones and informs them that young people "need[] to talk with parent/caregiver/guardian and medical professional before starting" puberty blockers. *Id* at 105. All are consistent with the plain language of the statute.

Simply put, the Gender Conditions violate multiple statutory requirements, including the enabling statutes' objectives. Defendants not only fail to justify the exclusion of individual curricula examples but also fail to explain how the statutes even remotely support a categorical ban on *all* "gender ideology" content. This Court has a duty "to determine the best reading of" the PREP and SRAE statutes. *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 400 (2024). And under the best reading of those statutes, the Gender Conditions are plainly unlawful.

## B.    Plaintiff States Properly Cited Extra-Record Materials to Show Glaring Deficiencies in HHS' Administrative Record

HHS' reckless decision to categorically ban "gender ideology" with no reasoning or factual support is further shown by the dramatic deficiency of the administrative record. Contrary to any suggestion from Defendants, Plaintiff States are not seeking to supplement or complete the administrative record by including extra-record evidence. Rather, Plaintiff States provided extra-record data and peer-reviewed analysis, some contained in an expert declaration, that were publicly and readily available at the time HHS made its decision but that HHS failed to consider. This Court can properly consider this information.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

A court may look to extra-record evidence when a "failure to explain agency action effectively frustrates judicial review." *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988). The Ninth Circuit permits this evidence when, for example, it is "necessary to determine whether the agency has considered all relevant factors and has explained its decision." *Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke*, 889 F.3d 584, 601 (9th Cir. 2018) (quoting *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1451 (9th Cir. 1996).

Here, HHS admits that it failed to consider *any* medical, pedagogical, social or other factual information prior to making its decision to exclude all mention of "gender ideology" from PREP and SRAE grant funded programs. ECF 108 at 8-10 (arguing that consideration of the PREP and SRAE statutory schemes are all that was required). The administrative record consists only of "lessons, programs, and curricula that demonstrate gender ideology content" which Defendants claim is "clearly unrelated to the Objectives Requirements." ECF 108 at 10. But this puts the cart before the horse. The administrative record consists only of material that was banned, and nothing to explain why HHS banned it.

Plaintiff States submit relevant extra-record evidence to show that HHS failed to consider the relevance of gender identity to the statutory objectives, which is an entire area of general subject matter. *Nat'l Audubon Soc. v. U.S. Forest Serv.*, 46 F.3d 1437, 1447-48 (9th Cir. 1993) (affirming district court's proper consideration of plaintiff's expert's affidavit because the Forest Service "completely ignored" the environmental consequences raised in the affidavit). This is precisely the situation where a court may consider extra-record evidence: when the administrative record is silent about the agency's consideration of relevant factors. *Id.* at 1448. Refusing to consider—beyond an uninformed, blanket decision with no evidence whatsoever—whether gender

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

is relevant to the statutory requirements is quintessentially arbitrary and capricious. *Motor Vehicles Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (agency action is arbitrary where the agency "*entirely* failed to consider an important aspect of the problem"). The Court can, and should, consider extra-record evidence for this purpose. *See Ariz. Cattle Growers' Ass'n v. Cartwright*, 29 F. Supp. 2d 1100, 1105 (D. Ariz. 1998) (considering extra-record declarations "for the limited purpose of considering whether the agency considered all relevant factors and explained its decision").

A court may not use extra-record evidence to substitute its own judgment for the agency's—but that is not the aim here. *See San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 993 (9th Cir. 2014). Instead, Plaintiff States submit extra-record evidence to "develop a background against which it can evaluate the integrity of the agency's analysis[.]" *Id.* By contrast, courts refusing to consider extra-record evidence have done so when the agency did evaluate the subject matter of that evidence in some form. *See Zinke*, 889 F.3d at 600 (refusing to allow extra-record evidence related to the economic effects on other tribes' casinos when the agency had previously considered related evidence). Given that HHS made no findings as to whether the targeted material falls within the scope of PREP and SRAE, this Court is well within its bounds to consider Plaintiff States' extra-record evidence on this point.

Defendants fail to note that Plaintiff States' evidence *was* in existence at the time of HHS' decision. Unlike in *Zinke*, where a declaration drafted after the agency's decision contained study data from two years after the decision, Dr. Millington's declaration here includes numerous data findings and peer-reviewed studies that existed before the decision to ban the prohibited content. *See* ECF 8 ¶¶ 25, 26, 27, 29, 30, 31, 32, 33, 34, 36, 37, 39, 41, 44, 47. Furthermore, Plaintiff States

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

are not arguing that HHS should have somehow adopted Dr. Millington's declaration into the administrative record. *San Luis*, 776 F.3d at 993. The crucial point is that Dr. Millington's declaration shows that HHS ignored an entire category of information—information that was available at the time of its decision—such that imposition of the Gender Conditions was arbitrary and capricious.

Defendants confuse this Court's ability to consider extra-record evidence with a request to supplement or complete the administrative record. It makes sense to complete the record when an agency considered material but did not produce it. *Xerces Soc'y for Invertebrate Conservation v. Shea*, 682 F. Supp. 3d 948, 953 (D. Or. 2023). Because judicial review must be based on the entire record, supplementation may be appropriate in that situation. But that's not the case here, as HHS repeatedly confirms. *See*, *e.g.*, ECF 108 at 12. On the contrary, HHS simply did not consider any relevant evidence at all when it made its determination that "gender ideology" is entirely irrelevant to the goals of PREP and SRAE.

Defendants' argument that Plaintiff States forfeited their ability to submit extra-record evidence is equally unavailing. Plaintiff States met their burden by showing how the administrative record was entirely devoid of any reasoned explanation for the decision to impose the Gender Conditions. *See, e.g.*, ECF 102 at 22-23 (noting that Defendants "fail to submit *any* evidence in support" of their argument that gender identity content does not fit within the Objectives Requirements of PREP and SRAE). A plaintiff may forfeit its ability to submit evidence if it fails to do so during the notice and comment period, *see Earth Island Inst. v. U.S. Forest Serv.*, 87 F.4th 1054, 1064-65 (9th Cir. 2023), but there was no such period here.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

Even setting aside all the relevant information that HHS failed to consider, and looking only at the administrative record, it is apparent that Defendants' decision to unilaterally remove so-called "gender ideology" *based solely on the curricula* violated the APA.[2] By submitting a bare bones administrative record, HHS effectively concedes it has no factual basis for its conclusion that topics related to transgender and gender-diverse youth fail to meet the congressional objectives of the PREP and SRAE statutes. As discussed below, that makes its decision arbitrary and capricious.

## C.    Defendants' Actions Violate the APA Several Times Over

Relying on their bare assertions that the Gender Conditions adhere to the plain language of the PREP and SRAE enabling statutes, Defendants claim that the conditions cannot be contrary to law. Those arguments fail for reasons already addressed. Nothing in the plain language of the statutory scheme supports the exclusion of content squarely aimed at reducing teen pregnancy and STIs and at preparing youth for adulthood, much less a categorical exclusion of all content the agency has subjectively deemed to contain "gender ideology."

Additionally, the Gender Conditions are arbitrary and capricious for at least four reasons, and Defendants fail to show otherwise. First, Defendants failed to engage in reasoned decision making when they demanded that Plaintiff States remove all references to "gender ideology" even when such content falls within the purpose and scope of the enabling statutes. Defendants' only

---

[2] Even if not considered for Plaintiff States' APA claims, extra-record evidence would still be relevant for other purposes, including Plaintiff States' constitutional claims. *Rueda Vidal v. Dep't of Homeland Sec.*, 536 F. Supp. 3d 604, 612 (C.D. Cal. 2021) ("where 'plaintiffs have a constitutional claim that exists outside of the APA, then the APA's administrative record requirement does not govern the availability of discovery,' and, by extension, to consideration of other extra-record evidence").

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

16

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

response to this argument is their bald declaration that "HHS'[] decision to remove mentions of gender ideology was rational and reasonably explained to Plaintiff States in multiple letters." ECF 108 at 18 (citing ECF 90-1, 90-2.).

In support of this proposition, Defendants cite only the April 14, 2025, letter to States requesting the submission of PREP program materials for a "medical accuracy review" and the August 26, 2025, letters containing the PREP Directive. The former contains absolutely no explanation for the prohibition of "gender ideology" content, because the Gender Conditions had not yet been imposed. *See* ECF 90-1. The only explanation offered in the PREP Directive is a statement that the enabling statute "includes no mention of gender ideology, which is both irrelevant to teaching abstinence and contraception and unrelated to any of the adult preparation subjects described in section 713(b)(2)(C)" and that "[t]he statute neither requires, supports nor authorizes teaching students that gender identity is distinct from biological sex or that boys can identify as girls and vice versa." ECF 90-2 at 4, 9, 13, 17, 21, 25, 29, 38, 42, 48, 53, 57, 63, 68, 74, 79. Neither letter addresses the SRAE program or statute, and Defendants effectively concede that there is no explanation regarding that program. *See* ECF 90-1, 90-2.

These two conclusory sentences in the PREP Directive fall far short of the reasoned decision making required by the APA. Defendants' bare citation to the statute—without any analysis whatsoever of the statute's plain language, meaning, or scope—is grossly insufficient. *See California v. Dep't of Transp.*, 808 F. Supp. 3d 291, 309 (D.R.I. 2025) ("it is arbitrary and capricious for an agency to neither 'look to' nor 'discuss' statutory requirements." (quoting *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 682 (2020)). The letter's conclusory assertion that "gender ideology" content is "irrelevant" to the statute's

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

17

objectives is likewise insufficient, and Defendants do not point to any evidence in the administrative record or otherwise to support this contention. Further, as discussed earlier, the content HHS flagged as objectionable plainly relates to the statute's goals of educating youth about pregnancy and STIs and preparing them for adulthood, easily establishing its relevance. *See, e.g.*, ECF 7-21 at 5 ("[p]eople of all sexual orientations and gender identities need to know how to prevent pregnancy and STOs [sic], either for themselves or to help a friend."); *see also supra* § II.A.

Second, Defendants' actions are arbitrary and capricious because Defendants failed to provide a reasoned explanation for the change in position and ignored the impact of the decision on grantees' reliance interests. Defendants wrongly claim that HHS previously "did not adopt a position" on whether "gender ideology" content should be included in PREP and SRAE programming. ECF 108 at 16-17. This is patently false. In fact, HHS previously stated that PREP targets young people who are "[f]rom minority groups (including sexual minorities)." ECF 7-7 at 2. And as recently as 2024, HHS expressly required States to "ensure that SRAE projects are inclusive of youth who identify as lesbian, gay, bisexual, transgender, and/or questioning, intersex, asexual, and two-spirit (LGBTQIA2S+)", ECF 7-9 at 7, and provide PREP programs to "youth who identify as lesbian, gay, bisexual, transgender, and/or questioning (LGBTQ+), and other vulnerable or underserved youth populations." ECF 7-8 at 12. Being "inclusive" of such youth necessarily requires recognition of their very existence. Defendants' policy—which now prohibits inclusivity for LGBTQ+ youth—clearly constitutes a change in position. *See* ECF 90-2.

As a fall back, Defendants claim that agencies "are free to change their existing policies as long as they 'show that there are good reasons for the new policy.'" ECF 108 at 17 (quoting *FCC*

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

18

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)). But Defendants have *not* shown good reasons for the new policy, as their interpretation of the statute as categorically prohibiting *all* "gender ideology content"—including content directly related to pregnancy and STI prevention, adolescent development, body image, racial and ethnic diversity, communication and interpersonal skills—is erroneous.

Defendants also assert that non-Plaintiff states "successfully provide educational programming under PREP and SRAE without gender ideology teaching." ECF 108 at 17. But Defendants provide no evidence establishing the success of these programs[3] or even describing their curricula or the populations they serve. This argument is thus unhelpful, as Congress plainly intended for PREP and SRAE programs to be appropriately tailored to the specific populations they serve, and Defendants do not dispute that Plaintiff States' programs serve transgender, gender diverse, and DSD youth populations. And, regardless, even if some programs could meet statutory objectives without referencing transgender or gender diverse students, that does not at all justify a categorical prohibition on curricula that does. Both PREP and SRAE give states significant discretion to design their programs within broad statutory parameters. *See* 42 U.S.C. §§ 710, 713. It is not surprising, and well-within Congress' design, that states approach curricula differently. For example, PREP curricula must contain "at least 3 of the adulthood preparation subjects," of

---

[3] Defendants rely on developments in a handful of states that post-date their decision to impose the Gender Conditions. ECF 108 at 17 n. 2. "It is a foundational principle of administrative law that judicial review of agency action is limited to the grounds that the agency invoked when it took the action." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 20 (2020) (quoting *Michigan v. EPA*, 576 U.S. 743, 758 (2015)) (citation modified). Defendants cannot now rely on a post-hoc rationale to back into their categorical prohibition on gender inclusive curricula. *See Nw. Res. Info. Ctr., Inc. v. Nw. Power & Conservation Council*, 730 F.3d 1008, 1019 (9th Cir. 2013).

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

19

which there are six. *Id.* § 713(b)(2). Similarly, the SRAE statute anticipates that programs may, but need not, educate students regarding contraception. *Id.* § 710(b)(4). Defendants have wholly failed to justify their limitation on Plaintiff States' freedom to design PREP and SRAE curricula. Simply pointing to some programs that have adopted curricula more to Defendants liking does not solve that problem.

Defendants also completely minimize Plaintiff States' reliance interests by dismissively asserting that "Plaintiffs have provided no evidence that Plaintiff States lack appropriated state funds to teach separate areas of programming on gender ideology, if they desire." ECF 108 at 17. Defendants completely misunderstand their burden when undertaking agency action. Prior to implementing the curricula prohibition challenged here, Defendants were "required to assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy concerns." *Regents of the Univ. of Cal.*, 591 U.S. at 33. But Defendants are unable to point to where in the administrative record it shows they did any of that. ECF 108 at 17. And, as detailed extensively in prior briefing, Plaintiff States' reliance interests include the fact that schools, grantees, and sub-grantees typically develop their curricula far ahead of time and cannot change their curricula immediately as HHS now demands, particularly during the school year where programming is already underway. ECF 32 at 8 ¶ 19. In addition, school districts, especially smaller ones, lack the expertise to fill the gap created by a loss of federal funding. *See, e.g.*, ECF 10 at 10-11 ¶ 24, ECF 19 at 9 ¶ 21, ECF 22 at 9-10 ¶¶ 27-29, ECF 32 at 18-20 ¶¶ 48-53, ECF 34 at 7 ¶ 18. Many of these programs have been in place for over fifteen years and have become an embedded part of school districts' efforts to provide sexual health education services and reduce teen pregnancy and STIs for all youth.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

20

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

Third, Defendants' actions are arbitrary and capricious because they contradict HHS' own position on discrimination. *See* 42 U.S.C. § 708 (prohibiting discrimination on the basis of sex under any grant funded program), 45 C.F.R. § 75.300(e)(8) (interpreting sex discrimination to include gender identity). Defendants dismiss this argument by asserting that "all youth are equally eligible to participate in and receive PREP and SRAE programming." ECF 108 at 16. In doing so, they completely fail to recognize that the Gender Conditions bar transgender, gender diverse, and DSD youth from meaningful participation. The conditions not only prohibit these youth from receiving medically accurate information necessary for them to make responsible decisions, but they prohibit PREP and SRAE programs and educators from acknowledging that these youth populations even exist.

Fourth, Defendants' imposition of the Gender Conditions is arbitrary and capricious because it is an impermissible pretextual justification for the predetermined goal of erasing transgender, gender diverse, and DSD individuals. Defendants all but ignore this claim, stating only that the imposition of the Gender Conditions "is grounded in application of law – not a pretextual attempt to implement policy objectives." ECF 108 at 18. But this naked assertion does nothing to dispel the inference of pretext arising from Plaintiff States' showing. HHS' incendiary statements describing gender diverse youth in inflammatory terms and threatening punitive action, coupled with its complete disregard of the statutory language and objectives, confirm that HHS' proffered justification is contrived. Defendants' actions violate the APA.

## D.    The Gender Conditions Also Violate the Constitution

Defendants' sole defense against the Separation of Powers claim is that HHS is complying with the statutory requirements of a funding statute. *See* ECF 108 at 20-21. Not so. As explained,

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

21

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

the Gender Conditions directly conflict with the enabling statutes' plain language, statutory objectives, and Congress' intent. Because Congress has not authorized the Gender Conditions, the Executive's attempts to impose an extra-statutory funding condition violates the separation of powers, just as they did when the Executive attempted in other cases to impose extra-statutory funding conditions via executive order. *See, e.g.*, *Washington v. Trump*, 768 F. Supp. 3d 1239, 1261-63 (W.D. Wash. 2025); *King County v. Turner*, 785 F. Supp. 3d 863, 885-88 (W.D. Wash. 2025); *PFLAG, Inc. v. Trump*, 769 F. Supp. 3d 405, 431-43 (D. Md. 2025).

Defendants' arguments that the Gender Conditions pass muster under the Spending Clause are also meritless. Defendants once again rely on assurances made in briefing—not in formal documentation from HHS—to argue that the Gender Conditions are not impermissibly retroactive. ECF 108 at 18. But these assurances offer little comfort, particularly considering Defendants' repeated violations of the preliminary injunction, *see* ECF 104, and their quick reversal of longstanding policy related to PREP and SRAE programming. More importantly, these hollow promises do not overcome the language of the PREP Directive, which Defendants acknowledge references grants from prior award periods. *See* ECF 108 at 18. As the subject line of that letter indicates, the PREP Directive expressly concerns grants from fiscal years 2023, 2024, and 2025. ECF 90-2. And it demands that States modify curricula and programs that are already being implemented and that Defendants had previously approved. *See id.* Defendants attempt to distract from the glaring retroactivity of the PREP Directive by pointing to the "Federal Award Date" of 2025 NOAs, which is August 6, 2025. ECF 108 at 18 (citing ECF 90-3). But nothing in these NOAs limits the scope of the PREP Directive, which expressly applies to grants from more than one award period. ECF 90-2. Thus, even if the 2025 NOAs only impose a prospective condition,

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

22

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

they in no way limit the scope of the PREP Directive, which is unquestionably retroactive in violation of the Spending Clause.[4] *See Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17, 25 (1981).

Defendants' assurances that the Gender Conditions are not vague or ambiguous are likewise unavailing. Defendants conclusively assert that "HHS explained the condition, provided specific examples of violative content, and gave grant recipients the opportunity to seek further clarification" and that the Spending Clause "requires no more." ECF 108 at 19. But this superficial analysis fails to address any of the questions raised by Plaintiff States about the meaning and scope of the Gender Conditions. Defendants have now had multiple opportunities to define the term "gender ideology" and have yet to attempt to do so. Nor do they attempt to answer any of the questions about what States can and cannot say in their curricula or in their classrooms. *See* ECF 102 at 41 ("Is the word 'transgender' banned? Must gender diverse instructors or program administrators conceal their identities when performing grant-related activities? Are states banned from allowing students to speak about their own experiences? Are teachers banned from offering LGBTQ+ crisis and support resources to at-risk youth?"); *see also R.I. Coal. Against Domestic Violence v. Kennedy*, No. 25-cv-00342-MRD-PAS, 2025 WL 2988705, at *9 (D.R.I. Oct. 23, 2025) (concluding plaintiffs facing similar gender ideology prohibitions were "left unsure whether . . . using preferred pronouns to refer to a non-binary person would 'promote' 'gender ideology.'").

---

[4] Defendants feebly note that they have not, as of yet, attempted to impose any disallowance of funds already spent by the Plaintiffs States (ECF 108 at 18), but make no assurances that they will not do based on the clear language of the Prep Directive itself. *See* ECF 90-2. And, of course, they ignore that they have been under a preliminary injunction that would prevent that from happening since October 28, 2025. ECF 81.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

23

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

Additionally, although Defendants assert that "HHS explained the condition[,]" Defendants offer no response to Plaintiff States' assertion that the government has demanded the exclusion of content that goes far beyond that which falls within the scope of the proffered "explanation." *See* ECF 102 at 31-32. Indeed, the PREP Directive is egregiously broad, even demanding that States remove content instructing facilitators to create respectful educational environments and offering teachers resources about how to support transgender and non-binary youth. *E.g.*, ECF 7-21 at 4; ECF 19-4 at 4. Defendants do not—and cannot—justify the exclusion of such content on the basis that the enabling statute "does not authorize teaching students that gender identity is distinct from biological sex or boys can identify as girls and vice versa, or that there is a vast spectrum of genders that are disconnected from one's sex." *E.g.*, ECF 90-3. This proffered explanation not only fails to provide clarity, it underscores the vague and ambiguous nature of the Gender Conditions.

The cases cited by Defendants further support Plaintiff States' argument. Each of those cases reaffirmed that funding conditions must be clear and unambiguous. *See Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002) ("Congress must, however, make the existence of the condition itself—in exchange for the receipt of federal funds—explicitly obvious."); *Charles v. Verhagen*, 348 F.3d 601, 607 (2003) (same); *Van Wyhe v. Reisch*, 581 F.3d 639, 650 (8th Cir. 2009) ( "[C]onditions on the receipt of federal funds [must] be set forth unambiguously"); *Bennett v. Ky. Dep't of Educ.*, 470 U.S. 656, 665-66 (1985) ("Congress must express clearly its intent to impose conditions on the grant of federal funds so that the States can knowingly decide whether or not to accept those funds.") (internal quotation marks omitted). And in each of those cases, the court held that the funding condition at issue satisfied that standard. *See Mayweathers*, 314 F.3d at

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

24

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

1067; *Van Wyhe*, 581 F.3d at 650–51; *Charles*, 348 F.3d at 607; *Bennett*, 470 U.S. at 666. Here, in contrast, the Gender Conditions are vague and ambiguous and thus fail to provide Plaintiff States with clear notice.

Defendants' also assert that the conditions must not be vague or ambiguous because other states have allegedly complied with them. ECF 108 at 19. But clarity must come from the text of the funding condition itself—not from post hoc claims that some parties have been able to comply with it. *See Pennhurst*, 451 U.S. at 17 ("There can, of course, be no knowing acceptance if a State is unaware of the conditions or is unable to ascertain what is expected of it"). Moreover, reliance on other States' claims of compliance proves little. Indeed, other States may have simply guessed the government's preferred interpretation or chosen to comply with HHS' demands out of caution or to minimize risk. Defendants cite no authority that a condition can be rendered unambiguous simply because some parties claim to have complied with it; in fact, case law from another context suggests the opposite. *See, e.g.*, *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) (recognizing that vague laws and "uncertain meanings inevitably lead citizens to 'steer far wider of the unlawful zone[.]'").

Finally, Defendants' assertion that the Gender Conditions are "not only related, but central, to the purpose of the federal spending" is equally meritless.[5] ECF 108 at 19-20. Defendants offer no explanation for how prohibiting teachers from creating respectful educational environments is "central" to PREP and SRAE programs. Nor do they explain how requiring *removal* of a statement like "[p]eople of all sexual orientations and gender identities need to know how to prevent

---

[5] Defendants characterize this argument as a "new contention." ECF 108 at 19. But Plaintiff States included this argument in their Complaint, their Motion for Preliminary Injunction, and their Reply. *See* ECF 1 at 42; ECF 2 at 26, ECF 76 at 26, 28-29.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

25

pregnancy and STOs[sic]" is central to sexual risk avoidance education. This case is thus easily distinguishable from *South Dakota v. Dole*, 483 U.S. 203, 208 (1987), where the plaintiffs did not dispute that the grant condition at issue (adoption of minimum drinking age of 21) was "directly related to one of the main purposes for which highway funds are expended—safe interstate travel." The relatedness of the condition in *Dole* was readily apparent from congressional findings and conclusions by a Presidential commission on drunk driving directly linking the lack of uniformity in the states' drinking ages to "an incentive to drink and drive." *Id.* at 209-09. In a stark contrast to *Dole*, Defendants offer no analysis or evidence explaining how the removal of "gender ideology" content—including content directly related to pregnancy and STI prevention and preparing youth for adulthood—is related to the statutory objectives. The Gender Conditions simply cannot satisfy the Spending Clause's "relatedness" requirement—even if the bar is low.

## E.       Universal Vacatur Is Consistent with Well-Established Precedent

Defendants concede that vacatur is an available remedy under the APA. ECF 108 at 22 n. 3 (citing *Mont. Wildlife Fed'n v. Haaland*, 127 F.4th 1, 50 (9th Cir. 2025). More than this, it is the "default remedy," and remand without vacatur should be ordered only in "limited circumstances." *Mont. Wildlife Fed'n*, 127 F.4th at 50 (quoting *Pollinator Stewardship Council v. EPA*, 806 F.3d 532 (9th Cir. 2015) (internal quotation marks omitted)). Nonetheless, Defendants assert vacatur is not appropriate to the extent it affects non-plaintiff states, because universal vacatur affecting nonparty states would exceed this Court's Article III authority. For this proposition, they cite to a concurrence in *United States v. Texas*, 599 U.S. 670, 693 (2023) (Gorsuch, J., concurring). But nothing in that case prohibits vacatur, i.e. the power granted by Congress to the federal courts to "set aside" unlawful agency action. *See* 5 U.S.C. § 706(2); *see also Griffin v. HM Fla.-ORL, LLC*,

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

26

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

144 S. Ct. 1, 2 n.1 (2023) (Kavanaugh, J., respecting denial of stay) ("When a federal court sets aside an agency action, the federal court vacates that order in much the same way that an appellate court vacates the judgment of a trial court."). Instead, Justice Gorsuch discusses in dicta whether § 706(2) authorizes vacatur of agency action *at all*, noting "thoughtful arguments and scholarship exist on both sides of the debate." *Texas*, 599 U.S. at 701. But this debate has never amounted to anything more than musings in dicta, scholarly arguments in law review articles, and the consistently rejected position of the Department of Justice. *See Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 826-27 (2024) (Kavanaugh, J., concurring) (noting that while "[r]ecently, the Government has advanced a far-reaching argument that the APA does not allow vacatur" this argument is inconsistent with what "[t]he Federal Government and the federal courts have long understood"). Instead, binding law in the Ninth Circuit is that vacatur of unlawful agency action is the usual remedy and good reasons must be present to deviate from it. *Nat. Grocers v. Rollins*, 157 F.4th 1143, 1170-72 (9th Cir. 2025) (reversing district court's decision to deny vacatur of unlawful agency action).[6]

Nor does *California v. Texas*, 593 U.S. 659, 672 (2021) support Defendants' argument that remedies "ordinarily operate with respect to specific parties" rather than "on legal rules in the abstract" (citations omitted). ECF 108 at 23. In *California*, the Court held that the litigants were seeking remedies even though they did not have standing to do so. The issue was not that non-

---

[6] Defendants' reliance on *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) is also inapposite. *Doran* was not an APA case, and did not involve application of 5 U.S.C. § 706. Instead, it involved the proper scope of equitable declaratory and injunctive relief. *Id.* But where a district court's inherent equitable powers require it to grant relief only to the extent necessary to remedy the parties' injuries, the same limitation does not apply to the court's powers under § 706. *Trump v. CASA, Inc.*, 606 U.S. 831, 847 n.10 (2025); *Nat. Grocers*, 157 F.4th at 1170.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

27

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

parties might have been impacted by the remedy, it was that there was no appropriate party with standing to seek the remedy in the first place. Here, Plaintiff States have established that they have experienced harm and will continue to experience harm if the Gender Conditions are not set aside.

And setting aside the Gender Conditions will not cause non-party states to become caught up unnecessarily in the scope of the relief sought by Plaintiff States. As Defendants have noted, some states have already complied or are in the process of complying with the Gender Conditions. ECF 108 at 23. But vacatur of the Gender Conditions does not require any action from non-party states; they can choose to operate their programs without referencing transgender or gender diverse students. And vacatur does not require HHS to take any action toward the non-party states that have already removed "gender ideology" from their PREP or SRAE curricula. Plaintiff States do not ask this court to hold that the statutes *require* PREP and SRAE curricula to include such content or to enforce any such requirement against non-parties to this litigation. Plaintiff States ask only that HHS' unlawful agency actions to *prohibit* that content be "[held] unlawful and set aside" under the APA. *See* 5 U.S.C. § 706(2); *see also* ECF 103 at 13-15.

This Court should vacate the agency actions challenged here. The injuries Plaintiff States complain of are "injuries for which it is all but impossible for courts to craft relief that is complete *and* benefits only the named plaintiffs." *Nat'l TPS All. v. Noem*, 166 F.4th 739, 767 (9th Cir. 2026). Relief should not be limited to Plaintiff States because Plaintiff States "do not simply challenge the application of the [Gender Conditions] to them, they challenge [Defendants'] very authority to act." *Id.* Because HHS "lacked authority to act in the manner that [it] did, the proper remedy under APA § 706(2) is to set aside [its] actions and restore the status quo." *Id.*

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

28

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

**F.      Defendants' Statements and Actions Following Entry of the Preliminary Injunction Demonstrate the Need for Injunctive and Declaratory Relief**

Defendants do not dispute that Plaintiff States have satisfied the factors for injunctive relief. Nor do they dispute the irreparable harm that will result if the Gender Conditions are reimplemented. Instead, Defendants downplay their two violations of this Court's preliminary injunction order, claiming that those instances were inadvertent and do not warrant entry of a permanent injunction. ECF 108 at 23-24. But Plaintiff States' request for injunctive relief is not premised solely on the fact that Defendants twice violated the preliminary injunction by issuing Supplemental Terms and Conditions containing the enjoined language. Rather, the request for an injunction was also based on Defendants' repeated use of qualifying language when discussing the enjoined conditions. *See* ECF 103 at 15. Specifically, Defendants asserted that States are not bound by Supplemental Terms and Conditions prohibiting gender ideology "*while the injunction remains in place.*" ECF 104-10 at 2; ECF 104-11 at 2 (emphasis added). This qualification—coupled with Defendants' eagerness to reimpose the enjoined language—confirms that the preliminary injunction is the only thing holding Defendants back from prohibiting gender-inclusive sexual health education curriculum in PREP and SRAE programs. Defendants do not disclaim this intent in their response brief. *See* ECF 108. Plaintiff States need the protection of a permanent injunction.

Defendants ask this Court to narrow any injunctive relief so as "to not preclude HHS from making case-by-case determinations regarding whether particular gender identity content satisfies the Objectives Requirements of the statutes and evaluating the Content Requirements through methods such as conducting a medical accuracy review." ECF 108 at 24. In doing so, they represent that Plaintiff States "do not contest that Defendants have the longstanding authority to oversee

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

29

compliance with PREP and SRAE's Objectives Requirements and Content Requirements." ECF 108 at 25 (citing ECF 103 at 17). This is a significant misrepresentation of Plaintiff States' brief.

At the cited page, Plaintiff States pointed out that "Defendants still have not provided any statutory or regulatory provision showing their 'authority to determine what is medically accurate or that grants [them] authority to 'defin[e] the limits of permissible [PREP or SRAE] content.'" ECF 103 at 22 (quoting ECF 81 at 36). This is far from a concession. And notably, Defendants still have yet to cite any authority giving them permission to conduct a "case-by-case" review.

Nonetheless, Plaintiff States ask only for an injunction that enjoins Defendants from imposing blanket prohibitions on the inclusion of "gender ideology" content in PREP and SRAE curricula. Similarly, Plaintiff States ask only that the Court declare that the PREP and SRAE statutes do not categorically prohibit teachings on "gender ideology." Defendants should be enjoined from re-implementing the Gender Conditions by enacting a policy to defund Plaintiff States' PREP and SRAE programs for including such content because, as shown above and elsewhere (*supra* §§ II.A, II.D; ECF 102), the Gender Conditions are contrary to statute and the U.S. Constitution.

### III.    CONCLUSION

This Court should grant Plaintiff States' motion for summary judgment, vacate the Gender Conditions, enjoin Defendants from imposing blanket prohibitions on the inclusion of "gender ideology" content in PREP and SRAE curricula, and declare that the PREP and SRAE statutes do not categorically prohibit teachings on gender ideology.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

30

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

DATED this 27th day of March 2026.

DAN RAYFIELD
Attorney General
State of Oregon

s/ Brian S. Marshall
BRIAN SIMMONDS MARSHALL #196129
LEANNE HARTMANN #T25070201, Mass.
BBO #667852
Senior Assistants Attorney General
CARTER BRACE #243828
Assistant Attorney General
100 SW Market Street
Portland, OR 97201
971-673-1880
Brian.S.Marshall@doj.oregon.gov
Leanne.Hartmann@doj.oregon.gov
Carter.Brace@doj.oregon.gov
Counsel for Plaintiff State of Oregon

NICHOLAS W. BROWN
Attorney General
State of Washington

s/ Kelly Paradis
KELLY PARADIS
WILLIAM MCGINTY
Deputy Solicitors General
LUCY WOLF
MOLLY POWELL
ALEXIA DIORIO
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744
lucy.wolf@atg.wa.gov
molly.powell@atg.wa.gov
alexia.diorio@atg.wa.gov
kelly.paradis@atg.wa.gov
william.mcginty@atg.wa.gov
Counsel for Plaintiff State of Washington

KEITH ELLISON
Attorney General
State of Minnesota

s/ Lindsey E. Middlecamp
LINDSEY E. MIDDLECAMP
Special Counsel, Rule of Law
Office of the Minnesota Attorney General
445 Minnesota St., Suite 600
St. Paul, MN 55101
651-300-0711
lindsey.middlecamp@ag.state.mn.us
Counsel for Plaintiff State of Minnesota

PHILIP J. WEISER
Attorney General
State of Colorado

s/ Kevin G. Webster
KEVIN G. WEBSTER
Assistant Attorney General
1300 Broadway, 10th Floor
Denver, CO 80203
720-508-6086
kevin.webster@coag.gov
Counsel for Plaintiff State of Colorado

WILLIAM TONG
Attorney General
State of Connecticut

s/ Andrew M. Ammirati
ANDREW M. AMMIRATI

KATHLEEN JENNINGS
Attorney General
State of Delaware

s/ Ian R. Liston
IAN R. LISTON

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

31

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

Assistant Attorney General
165 Capitol Ave
Hartford, CT 06106
860-808-5090
Andrew.Ammirati@ct.gov
*Counsel for Plaintiff State of Connecticut*

Director of Impact Litigation
VANESSA L. KASSAB
Deputy Attorney General
ROSE GIBSON*
Assistant Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
302-683-8899
ian.liston@delaware.gov
vanessa.kassab@delaware.gov
rose.gibson@delaware.gov
*Counsel for Plaintiff State of Delaware*

BRIAN L. SCHWALB
Attorney General
District of Columbia

ANNE E. LOPEZ
Attorney General
State of Hawai'i

*s/ Jess E. Feinberg*
JESS E. FEINBERG
Assistant Attorney General
400 6th Street, NW, Suite 10100
Washington, D.C. 20001
202-735-6637
jess.feinberg@dc.gov
*Counsel for Plaintiff District of Columbia*

*s/ Kaliko'onālani D. Fernandes*
DAVID D. DAY
Special Assistant to the Attorney General
KALIKO'ONĀLANI D. FERNANDES
Solicitor General
425 Queen Street
Honolulu, HI 96813
808-586-1360
kaliko.d.fernandes@hawaii.gov
*Counsel for Plaintiff State of Hawai'i*

KWAME RAOUL
Attorney General
State of Illinois

AARON M. FREY
Attorney General
State of Maine

*s/ Cara Hendrickson*
CARA HENDRICKSON
Executive Deputy Attorney General
ELIZABETH MORRIS
Deputy Chief, Special Litigation Bureau
115 S. LaSalle Street
Chicago, IL 60603
312-814-3000
cara.hendrickson@ilag.gov
elizabeth.morris@ilag.gov
*Counsel for Plaintiff State of Illinois*

*s/ Kevin J. Beal*
KEVIN J. BEAL
Assistant Attorney General
111 Sewall Street, 6th Floor
6 State House Station
Augusta, ME 04333-0006
207-626-8800
kevin.beal@maine.gov
*Counsel for Plaintiff State of Maine*

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

32

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

ANTHONY G. BROWN
Attorney General
State of Maryland


s/ Lauren Gorodetsky
LAUREN GORODETSKY
Assistant Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202
410-576-7057
lgorodetsky@oag.state.md.us
Counsel for Plaintiff State of Maryland

ANDREA JOY CAMPBELL
Attorney General
Commonwealth of Massachusetts


s/ Allyson Slater
ALLYSON SLATER
Director, Reproductive Justice Unit
MORGAN CARMEN
Assistant Attorney General
One Ashburton Place
Boston, MA 02108
617-727-2200
allyson.slater@mass.gov
morgan.carmen@mass.gov
Counsel for Plaintiff Commonwealth of
Massachusetts


DANA NESSEL
Attorney General
Michigan


s/ Neil Giovanatti
NEIL GIOVANATTI
DANIEL PING
Assistant Attorneys General
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
517-335-7603
GiovanattiN@michigan.gov
PingD@michigan.gov
Counsel for Plaintiff State of Michigan

JENNIFER DAVENPORT
Attorney General
State of New Jersey


s/ Farng-Yi Foo
FARNG-YI FOO
GEOFFREY MCGEE
Deputy Attorneys General
124 Halsey Street, 5th Floor
Newark, NJ 07101
609-696-5279
Farng-Yi.Foo@law.njoag.gov
Geoffrey.McGee@law.njoag.gov
Counsel for Plaintiff State of New Jersey


LETITIA JAMES
Attorney General
State of New York


s/ Galen Leigh Sherwin
GALEN LEIGH SHERWIN
Special Counsel for Reproductive Justice
28 Liberty Street
New York, NY 10005
212-426-5667

PETER F. NERONHA
Attorney General
State of Rhode Island


s/ Riley M. O'Brien
RILEY M. O'BRIEN
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
401-274-4400

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

33

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

galen.sherwin@ag.ny.gov
*Counsel for Plaintiff State of New York*

robrien@riag.ri.gov
*Counsel for Plaintiff State of Rhode Island*

JOSHUA L. KAUL
Attorney General of Wisconsin

*s/ Aaron J. Bibb*
AARON J. BIBB
Assistant Attorney General
Wisconsin Department of Justice
PO Box 7857
Madison, WI 53707-7857
608-266-0810
aaron.bibb@wisdoj.gov
*Counsel for Plaintiff State of Wisconsin*

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT –
NO. 6:25-cv-01748-AA

34

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744